UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTOR RESTIS and ENTERPRISES SHIPPING AND TRADING, S.A.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　　Against<br><br>AMERICAN COALITION AGAINST NUCLEAR IRAN, INC., a/k/a UNITED AGAINST NUCLEAR IRAN, MARK D. WALLACE, DAVID IBSEN, NATHAN CARLETON, and DOES 1-10,<br><br>　　　　　　　　　　Defendants. | No. 13-cv-5032 (ER)(KNF)<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL THE DEPOSITION OF VICTOR RESTIS**

> BOIES, SCHILLER & FLEXNER LLP
> 575 Lexington Avenue
> New York, New York 10022
>
> 5301 Wisconsin Avenue, NW
> Washington, District of Columbia 20015
>
> 300 South Fourth St.
> Suite 800
> Las Vegas, Nevada 89101
>
> STACK FERNANDEZ ANDERSON & HARRIS, P.A.
> Brickell Bay Office Tower
> 1001 Brickell Bay Drive, Suite 2650
> Miami, Florida  33131-4940
>
> *Attorneys for Defendants, American Coalition Against Nuclear Iran, Inc. a/k/a United Against Nuclear Iran, Mark D. Wallace, David Ibsen, and Nathan Carleton*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND ...................................................................................................... 2

    A.   Plaintiffs Tried to Silence UANI in the Media, through Direct Threats, and by Filing this Defamation Suit. ...................................................................................................... 3

    B.   Plaintiffs Public Claims Are False and Were False When Made. .................................... 4

    C.   Restis is Jailed in Connection with Money Laundering and Embezzlement Charges. .... 4

    D.   Plaintiffs Tried to Buy UANI's Silence. .......................................................................... 5

    E.   Plaintiffs Adopted a Strategy of Deliberate Delay to Avoid Disclosing Their Business Dealings in and with Iran............................................................................................................ 6

    F.   The Failure of EST and Restis to Appear for their Depositions Was Part of Plaintiffs' Strategy of Deliberate Delay. ....................................................................................................... 8

ARGUMENT ............................................................................................................................... 10

    I.   Absent a Protective Order, Plaintiffs Were Required to Appear For their Duly Noticed Depositions ................................................................................................................... 10

    II.   Restis Must Submit to Deposition in this District Where He Chose to File This Lawsuit........................................................................................................................................ 11

    III. Defendants Are Entitled to Attorneys' Fees and Costs Arising From Plaintiffs' Failure to Appear for Their Depositions. .................................................................................... 15

CONCLUSION ............................................................................................................................ 16

# **TABLE OF AUTHORITIES**

**Cases**

*Aztec Energy Partners, Inc. v. Sensor Switch, Inc.*,
   No. 07-cv-775, 2008 WL 747660 (D. Conn. Mar. 17, 2008) ................................................... 12

*Baltimore Line Handling Co. v. Brophy*,
   771 F.Supp.2d 531 (D. Md. 2011) ........................................................................................... 10

*Barnes v. Madison*,
   79 Fed. Appx. 691 (5th Cir. 2003) ........................................................................................... 10

*Chevron Corp. v. Salazar*,
   275 F.R.D. 422 (S.D.N.Y. 2011) .............................................................................................. 10

*Clem v. Allied Van Lines Int'l Corp.*,
   102 F.R.D. 938 (S.D.N.Y. 1984) .............................................................................................. 11

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*,
   54 F.R.D. 280 (S.D.N.Y. 1971) ................................................................................................ 12

*Novel v. Garrison*,
   42 F.R.D. 234 (E.D. La. 1967) ................................................................................................. 13

*Schindler Elevator Corp. v. Otis Elevator Co.*,
   No. 06-cv-5377, 2007 WL 1771509 (S.D.N.Y. June 18, 2007) ............................................... 11

*Visor v. Sprint/United Mgmt. Co.*,
   No. 96-cv-1730, 1997 WL 567923 (D. Colo. Aug. 18, 1997) ................................................. 13

**Other Authorities**

8A Charles Alan Wright et al.,
   *Federal Practice & Procedure* § 2106 (3d ed. 2011) ............................................................... 10

8A Charles Alan Wright et al.,
   *Federal Practice & Procedure* § 2112 (3d ed. 2013) ............................................................... 11

**PRELIMINARY STATEMENT**

Plaintiffs in this case are a Liberian shipping corporation and the Greek national (an alleged money launderer and embezzler) who controls it.  They elected to file a defamation suit against an American not-for-profit organization and its principals in the Southern District of New York.  Since filing suit, Plaintiffs have adopted a strategy of deliberate delay in order to avoid disclosing now-admitted facts fatal to their case.  Plaintiffs' delay tactics make clear that this litigation is not designed to restore supposedly damaged reputations, but is instead a "crusade to silence" the American non-governmental organization that called attention to their business dealings in and with Iran.  Aaron Kelley, *Restis Refutes Allegations*, TradeWinds News, Feb. 11, 2014 (Wolosky Decl.[1] Ex. 1).

In their most recent tactical ploy, Plaintiffs created deliberate delay when Plaintiff Enterprises Shipping & Trading S.A.'s ("EST") Rule 30(b)(6) witness and Plaintiff Victor Restis ("Restis") failed to appear for their duly noticed depositions on February 10 and 11, 2014, respectively.  Even though Plaintiffs had not obtained a protective order, Plaintiffs did not notify Defendants that neither EST nor Restis would appear until the Friday before the scheduled Monday and Tuesday depositions.  Moreover, even though notices of the depositions had been served 30 days earlier, Plaintiffs waited until shortly before midnight that same Friday to send Judge Ramos a pre-motion letter requesting a conference to seek leave to file a motion for a protective order.

During a February 14, 2014 conference, Judge Ramos ordered Plaintiffs to produce EST's Rule 30(b)(6) witness for deposition in New York.  In addition, Judge Ramos expressly authorized Defendants to file a motion to compel the depositions of Restis and other individual

---

[1] "Wolosky Decl." refers to the Declaration of Lee S. Wolosky filed concurrently with this Memorandum of Law.

1

witnesses as necessary. February 14, 2014 Hearing Transcript ("Feb. 14 Tr.") at 46 (Wolosky Decl. Ex. 2).

Accordingly, as authorized by Judge Ramos, Defendants move pursuant to Fed. R. Civ. P. 30 and 37 for an order compelling Plaintiffs to make Victor Restis available for deposition in this District. In addition, Defendants ask the Court to award them the costs and attorneys' fees incurred as a result of Plaintiffs' failure to appear at their duly noticed depositions, as well as the costs and attorney's fees associated with filing this motion to compel.

## FACTUAL BACKGROUND

Defendant American Coalition Against Nuclear Iran, Inc. ("UANI") is an American not-for-profit corporation dedicated to preventing the Iranian regime from obtaining nuclear capabilities. United Against Nuclear Iran, *About Us*, http://www.unitedagainstnucleariran.com/about (accessed Feb. 24, 2014) (Wolosky Decl. Ex. 3). UANI's founders and leadership consist of a bipartisan, international panel of senior-level diplomatic and intelligence officials, including, among others, President Obama's former chief nuclear counter-proliferation advisor, a former United States Ambassador to the United Nations under President Bush, a Director of Central Intelligence and former intelligence directors of Israel, Germany and the United Kingdom. United Against Nuclear Iran, *Leadership*, http://www.unitedagainstnucleariran.com/about/leadership (accessed Feb. 24, 2014) (Wolosky Decl. Ex. 4).

In May 2013, UANI publically disclosed evidence that Restis, EST and First Business Bank ("FBB")[2] were engaged in business dealings in and with the Islamic Republic of Iran

---

[2] FBB was a Greek bank owned by Restis which was taken over by the National Bank of Greece in May 2013. It is

2

("Iran"), with Iran's instrumentalities, and with sanctioned persons or entities designated by the United States Government acting on behalf of Iran.  *See* Am. Compl. Ex. A.

### A. Plaintiffs Tried to Silence UANI in the Media, through Direct Threats, and by Filing this Defamation Suit.

Plaintiffs immediately embarked on a campaign to silence and discredit UANI.  Through the media, Restis asserted that he and his companies have "never had dealings with the Iranian government, ministry or any Iranian people, period."  Aaron Kelley, *Restis Torpedoes Allegations*, TradeWinds News, May 15, 2013 (Wolosky Decl. Ex. 5) (hereinafter "*Restis Torpedoes Allegations*"); *see also Victor Restis v. UANI*, New Europe, July 17, 2013, http://www.neurope.eu/article/victor-restis-vs-uani ("Do you have or did you ever have any business or other relation with Iran?" "No, absolutely not.") (Wolosky Decl. Ex. 6).  Restis also instructed his attorneys to threaten UANI and Ambassador Wallace with litigation, claiming that UANI's revelations were "libel per se" because "Mr. Restis does not do business with Iran nor does he sanction those who do."  Letter from T. Margolis to M. Wallace, May 16, 2013 (Wolosky Decl. Ex. 7); Compl. ¶¶ 15, 79; Am. Compl. ¶¶ 15, 78.  Plaintiffs even invoked Restis' Jewish religion and the legacy of the Holocaust as evidence that they have never done, and would never condone doing, business in or with Iran.  Compl. ¶¶ 10-11; Am. Compl. ¶¶ 10-11; *Restis Torpedoes Allegations*.

When their pre-suit efforts to silence public debate of their business relationships with Iran failed, Plaintiffs filed this Complaint for defamation based on the categorical allegation that "Mr. Restis does not do business with Iran nor does he sanction others who do."  Compl. ¶¶ 15, 79; Am. Compl. ¶¶ 15, 78.

---

no longer a party to this lawsuit.

3

### B. Plaintiffs Public Claims Are False and Were False When Made.

Mr. Restis' statements to the worldwide media and in Plaintiffs' pleadings before the Court were, and remain, untrue. In fact, on the very day Plaintiffs filed their defamation lawsuit denying they do business with Iran, the *Elbe Max*, a large cargo vessel owned and operated by EST, was making a port of call at Bandar Imam Khomeini ("BIK"). Letter from L. Wolosky to Judge Ramos at 2 n.1, Feb. 6, 2014, ECF No. 51 (Wolosky Decl. Ex. 8) ("Feb. 6 Letter"). BIK is an Iranian port with terminals that are operated by Tidewater Middle East Co. ("Tidewater"). Fact Sheet: Treasury Sanctions Major Iranian Commercial Entities (June 23, 2011), http://www.treasury.gov/press-center/press-releases/Pages/tg1217.aspx (Wolosky Decl. Ex. 9). Tidewater is owned by Iran's Islamic Revolutionary Guard Corps ("IRGC") and has been "used by the IRGC for illicit shipments," including the shipment of weapons. *Id.* Both the United States and the European Union have imposed sanctions on Tidewater under sanctions regimes "aimed at freezing the assets of proliferators of weapons of mass destruction." *Id.*; Council Decision 2012/35/CFSP at Annex I L 19/27 (Jan. 23, 2012), *available at* http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2012:019:0022:0030:EN:PDF (Wolosky Decl. Ex. 10).

Despite repeated denials in the media and contrary to their assertions in their pleadings, Plaintiffs now admit that a number of EST-owned and –managed ships have made ports of call in Iran over the last three years. *See* Email from L. Wolosky to A. Lagadianos, Feb. 7, 2014 (Wolosky Decl. Ex. 11).

### C. Restis is Jailed in Connection with Money Laundering and Embezzlement Charges.

Days after he filed this lawsuit and before it was ever served on the Defendants, Greek criminal authorities arrested and jailed Restis in connection with embezzlement and money

4

laundering charges. Renee Maltezou, *Greek shipowner jailed pending money laundering trial*, Reuters (July 26, 2013), http://www.reuters.com/article/2013/07/26/us-greece-shipping-idUSBRE96P0WK20130726 (Wolosky Decl. Ex. 12). At the time of his arrest, Greek authorities discovered an arsenal of weaponry, including military assault weapons, some of it registered to EST. *Targeted by the USA for Business in Iran*, Ethnos (July 28, 2013), www.ethnos.grarticle.asp?catid=22768&subid=2&pubid=63864726 (Wolosky Decl. Ex. 13). Restis was imprisoned for almost five months, and recent media reports indicate he was released after Greek authorities determined he was no longer a flight risk, although the Greek criminal investigation is ongoing. *Anti-Iran Lobby Group: Greek Shipowner Victor Restis Broke Sanctions Again, Lied About it, Then Tried to Pay Off Our CEO*, The Press Project (Feb. 11, 2014), http://www.thepressproject.net/article/56163/UANI-Greek-shipowner-Victor-Restis-broke-Iran-sanctions-again-lied-about-it-then-tried-to-pay-off-UANI-CEO (Wolosky Decl. Ex. 14). Plaintiffs never responded to Defendants' October 2013 request for information concerning the nature and circumstances of the criminal investigation and Restis' incarceration. Email from L. Wolosky to K. Campbell, Oct. 4, 2013 (Wolosky Decl. Ex. 15). Indeed, to this day, Plaintiffs have not provided Defendants or the Court any official records relating to Restis' criminal proceedings, including the scopes of the crimes he is accused of, or status.

### D. Plaintiffs Tried to Buy UANI's Silence.

Knowing that discovery would eventually reveal the nature and extent of their business dealings in and with Iran, Plaintiffs have used every method available to avoid discovery and to delay adjudication of their claims. For example, within weeks of serving their Complaint, Plaintiffs undertook extraordinary efforts to settle their lawsuit so that discovery would never reveal their dealings in and with Iran. A wave of emissaries, including a former National

Security Advisor to President Obama, approached UANI, each making settlement overtures on behalf of Plaintiffs. Feb. 6 Letter (Wolosky Decl. Ex. 8). Just four weeks after filing suit, EST's president, George Sarris, even traveled to the United States in a unilateral attempt to engage in settlement discussions. *See* Email from K. Campbell to L. Wolosky, Aug. 21, 2013 (Wolosky Decl. Ex. 16).

Among other settlement inducements offered to Defendants, Plaintiffs expressly represented that they had in place, and agreed to adhere to, "a comprehensive written compliance policy which strictly prohibits them from *doing any business in or with the Islamic Republic of Iran or its agents and instrumentalities*." Draft Settlement Agreement Sent by Counsel to Restis, EST and Golden Energy Marine Corp. to UANI, Jan. 23, 2014 (Wolosky Decl. Ex. 17) (emphasis added). By mid-December (before they had produced even a single document), Plaintiffs agreed to settle the case by *paying Defendants* $400,000 and by mid-January Plaintiffs "sweetened" their offer by promising to give Ambassador Wallace a paid position on the board of Golden Energy Marine Corp, a company controlled by Restis and EST. *See generally* Feb. 6 Letter (Wolosky Decl. Ex. 8).

Defendants ultimately walked away from the negotiations when it became apparent that Plaintiffs, despite their representation, had no intention of ceasing doing business in or with Iran, but were instead simply trying to buy UANI's silence and seal of approval by requiring UANI to sign off on false representations about their business dealings in Iran as a condition to settlement. *Id.*

### E. Plaintiffs Adopted a Strategy of Deliberate Delay to Avoid Disclosing Their Business Dealings in and with Iran.

Plaintiffs have also repeatedly and deliberately tried to delay discovery into their business dealings in and with Iran. They first proposed a discovery schedule that would extend into 2015.

6

Letter from K. Campbell to Judge Ramos, Oct. 2, 2013 (Wolosky Decl. Ex. 18). After Judge Ramos rejected their request, Plaintiffs created deliberate delays to prevent Defendants from conducting discovery. Among other things, Plaintiffs initially failed to produce a single document in response to Defendants' First Request for Production of Documents, including readily available documents like those expressly referenced in the Complaint and those reviewed when drafting the Compliant. The Plaintiffs followed a similar pattern by failing to produce *any* documents in response to Defendants Second Request for Production of Documents, or Defendants Third Request for Production of Documents. Although it has now been seven months since they filed their Complaint, Plaintiffs have produced only 124 pages of documents and agreed to produce 13 additional pages of documents after entering into a protective order – a protective order they have not yet executed.

Plaintiffs' strategy of deliberate delay extended beyond their refusal to produce documents. Plaintiffs also prevented Defendants from noticing any depositions by intentionally refraining from serving any document requests of their own until literally the very last minutes permitted under the Scheduling Order. *Compare* Paragraph 7(a) of Scheduling Order (Oct. 10, 2013), ECF No. 20, which defers depositions until after "*all parties have responded* to any first requests for production of documents," *and* Paragraph 6, which allowed the Plaintiffs to wait until December 15, 2013 to serve their first discovery requests *with* Email from M. Bhargava to L. Wolosky, Dec. 15, 2013 11:53 pm (Wolosky Decl. Ex. 19) (serving the Plaintiffs' first and only document request seven minutes before the deadline set in the Scheduling Order). As a result, Plaintiffs prevented Defendants from noticing any depositions until mid-January.

7

### F. The Failure of EST and Restis to Appear for their Depositions Was Part of Plaintiffs' Strategy of Deliberate Delay.

On January 9, 2014, as soon as permitted under Judge Ramos' Scheduling Order, Defendants duly noticed the Rule 30(b)(6) deposition of EST ("EST Deposition") and the individual deposition of Restis ("Restis Deposition") for February 10 and 11, respectively. *See* Notice of Deposition of EST (Wolosky Decl. Ex. 20); Notice of Deposition of Victor Restis (Wolosky Decl. Ex. 21). Thereafter, on February 6, 2014 Defendants served a notice of deposition of George Sarris, president of EST ("Sarris Deposition"). *See* Notice of Deposition of George Sarris (Wolosky Decl. Ex. 22). The Sarris Deposition was noticed for February 19, 2014. *Id.*

Phone calls placed to Plaintiffs' counsel on the date that notices for the EST Deposition and Restis Deposition were served and in the week prior to those depositions went unanswered. See Email from M. Bhargava to B. Stack, Jan. 9, 2014 (Wolosky Decl. Ex. 23); Email from L. Wolosky to M. Bhargava, Feb. 7, 2014 (Wolosky Decl. Ex. 24). Plaintiffs never raised any objections or logistical or scheduling concerns about either the EST or Restis Depositions. Plaintiffs did not respond to a request for the names of any individuals who would be attending the Depositions so they could be added to the building security list. Email from S. Hsu to M. Bhargava, Feb. 6, 2014 (Wolosky Decl. Ex. 25).

Instead, even though they had not procured a protective order, Plaintiffs told Defendants on the business day preceding the EST Deposition that neither EST's Rule 30(b)(6) witness nor Restis would appear for their depositions, and only because Defendants asked. Email from L. Wolosky to M. Bhargava, Feb. 7, 2014 (Wolosky Decl. Ex. 26).[3] Even though notices

---

[3] These emails and phone calls reflect Defendants' unsuccessful effort to meet and confer in good faith with

8

scheduling the depositions had been served four weeks earlier, Plaintiffs did not even seek a protective order until shortly before midnight that same evening – the business day before the Rule 30(b)(6) deposition -- when Plaintiffs wrote to Judge Ramos requesting a pre-motion conference to seek leave to file a motion for a protective order. Letter from M. Bhargava to Judge Ramos, Feb. 7, 2014 (Wolosky Decl. Ex. 27).

Even more remarkably, on the following day, Saturday, February 8, 2014, Plaintiffs went so far as to engage in an *ex parte* attempt to cancel the court reporter scheduled to transcribe the EST and Restis Depositions. Email from M. Bhargava to S. Kotraba, Feb. 8, 2014 (Wolosky Decl. Ex. 28). Plaintiffs did not appear for the EST Deposition or the Restis Deposition. *See* Statement on the Record (Feb. 10, 2014) at 3-6 (Wolosky Decl. Ex. 29) *and* Statement on the Record (Feb. 11, 2014) at 3-6 (Wolosky Decl. Ex. 30). Moreover, Plaintiffs also informed Defendants that Mr. Sarris would not appear for his deposition on February 19.

On February 14, 2014, Judge Ramos held a conference to address, among other things, Plaintiffs' request for a protective order. At the conference, Judge Ramos ordered Plaintiffs to designate an individual to testify on behalf of EST, overruling Plaintiffs' objections that the depositions should not go forward before Defendants produce additional documents (some of which may be subject to privileges held by the United States of America). Feb. 14 Tr. at 46. Judge Ramos also gave Defendants leave to file this motion to compel the Restis Deposition.[4] *Id.*

---

Plaintiffs in an attempt to resolve a number of discovery disputes in accordance with Fed. R. Civ. P. 37(a)(1).

[4] Because the parties were unable to resolve the dispute at the conference conducted before Judge Ramos this motion may be heard pursuant to Local Rule 37.2. Moreover, at the February 14, 2014 conference, Judge Ramos authorized Defendants to file this motion.

**ARGUMENT**

I.  **Absent a Protective Order, Plaintiffs Were Required to Appear For their Duly Noticed Depositions**

Because Restis is a party to this action, he can be "required to appear in an appropriate location for deposition in [this] action by the simple expedient of serving a notice of deposition on [him]" or his counsel. *Chevron Corp. v. Salazar*, 275 F.R.D. 422, 424-25 (S.D.N.Y. 2011) (citing 8A Charles Alan Wright et al., *Federal Practice & Procedure* § 2106 (3d ed. 2011)). By serving their notice of deposition 30 days in advance, Defendants provided more than adequate written notice of their intent to depose Restis. Restis did not object.

If Restis objected to sitting for his deposition at the time and place that had been set for his deposition in this District, he could have availed himself of the procedural devices in the Federal Rules. "After first attempting in good faith to resolve the dispute without court action, the named deponent has several options: she may file a motion for a protective order; move to quash the subpoena; or move to terminate or limit the deposition." *Baltimore Line Handling Co. v. Brophy*, 771 F.Supp.2d 531, 548 (D. Md. 2011) (internal citations omitted). Restis did none of these things. Restis did not lodge any objections to the notice. Restis did not seek to meet and confer (and affirmatively ignored repeated phone calls from Defendants' counsel). Instead, Restis waited until the business day before the depositions were scheduled to begin to contact Defendants to discuss avoiding the depositions. Restis did not even seek a protective order until close to midnight on the Friday prior to the scheduled Monday deposition of EST, when Plaintiffs faxed a letter to Judge Ramos requesting a conference to discuss a motion for a protective order preventing the duly noticed depositions. None of these eleventh hour tactics excuse Restis' failure to appear. *Barnes v. Madison*, 79 Fed. Appx. 691, 707 (5th Cir. 2003) (party who filed a combined motion to quash and motion for a protective order on Friday in

advance of Monday deposition was obliged to appear in the absence of a court's ruling on that motion and would be sanctioned for non-appearance); *see also* 8A Charles Alan Wright et al., *Federal Practice & Procedure* ) § 2112 (3d ed. 2013) (motion for order changing the noticed location "must be seasonably made and a party or witness who fails to attend at the time and place stated may not subsequently move to change the place of examination").

Consequently, Restis should be compelled to appear for his deposition in this District without further delay.

## II. Restis Must Submit to Deposition in this District Where He Chose to File This Lawsuit

Plaintiffs seek to justify Restis' failure to appear for his deposition in this District by arguing that Greek authorities have restricted Restis from traveling outside Greece pending a criminal investigation for money laundering and embezzlement. Plaintiffs rely exclusively on media reports. Letter from M. Bhargava to Judge Ramos, Feb. 7, 2014 (Wolosky Decl. Ex. 27). Accordingly, on the basis of those media reports, Restis contends that his deposition must be relocated to Greece. *Id*. Even if it were willing to entertain Restis' untimely objection to his deposition, the Court still must reject his request to reschedule and relocate the deposition to Greece.

This Court's well-established policy requires "a non-resident plaintiff who chooses this district as his forum to appear for deposition in this forum absent compelling circumstances." *Clem v. Allied Van Lines Int'l Corp.*, 102 F.R.D. 938, 939 (S.D.N.Y. 1984); *Schindler Elevator Corp. v. Otis Elevator Co.,* No. 06-cv-5377, 2007 WL 1771509, at *8 (S.D.N.Y. June 18, 2007) (collecting cases). More specifically, a plaintiff who chooses to bring suit in this forum "cannot impose upon defendant the extraordinary expense and burden of traveling to a foreign country to conduct a deposition except on a showing of burden and hardship to the plaintiff." *Grotrian,*

11

*Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 54 F.R.D. 280, 281 (S.D.N.Y. 1971). Because Plaintiffs cannot establish compelling circumstances to justify forcing Defendants to travel to Greece, the Court must compel Restis to appear for his deposition in New York for at least four reasons:

First, Plaintiffs have not provided either Defendants or the Court with any evidence that government-imposed travel restrictions prevent Restis from appearing in this District for his deposition. Nor have Plaintiffs provided proof that Restis sought approval to travel to the United States, or elsewhere in the European Union, for the limited purpose of sitting for this deposition. Instead of submitting an authenticated order of a Greek court, Plaintiffs have relied on articles from news sources that Plaintiffs, themselves, previously called "tabloid[s]," Feb. 14 Tr. at 25, and argued were unreliable because they contained "rank hearsay." Pl.'s Opp. to Mot. to Dismiss at 2 (Jan. 8, 2014), ECF No. 40. In order to establish compelling circumstances, however, Plaintiffs must present a meticulous and verified showing of hardship; conclusory assertions based on hearsay and news articles do not suffice. *See Aztec Energy Partners, Inc. v. Sensor Switch, Inc.*, No. 07-cv-775, 2008 WL 747660, at *2 (D. Conn. Mar. 17, 2008) (noting vague statements are insufficient to establish good cause). Plaintiffs, in other words, have not proffered any acceptable evidence establishing compelling circumstances to justify taking Restis' deposition anywhere other than this District.[5]

Second, Plaintiffs' present assertion that Greece's criminal investigation into Restis' misconduct prevents him from participating in the litigation is contrary to their former representations to Judge Ramos. At an October 3, 2013 discovery conference Judge Ramos

---

[5] Counsel's representations to the Court at the February 14, 2014 hearing concerning Restis' criminal status were vague and uninformed. Counsel did not know whether Restis will be informed if travel restrictions are lifted, Feb. 14 Tr. at 27, and did not know for certain whether there was documentation confirming these travel restrictions. *Id.*

asked Plaintiffs' counsel whether they needed "complete access" to Mr. Restis in "order to otherwise prosecute [their] claims." Oct. 3, 2013 Hearing Transcript at 27 ("Oct. 3 Tr.") (Wolosky Decl. Ex. 31). Counsel for Plaintiffs assured the Court there were "systems in place so we can manage and respond and prosecute the case diligently." *Id.* Now, however, Plaintiffs are telling a different story: Plaintiffs contend they cannot prosecute his case if that means Restis must sit for a deposition in New York – a deposition to which Defendants are entitled as of right.

Third, the law is clear that a plaintiff/deponent's criminal circumstances do not establish the good cause necessary to excuse or relocate the deposition to a different jurisdiction from the one in which the deponent chose to file suit as a plaintiff. *See Novel v. Garrison*, 42 F.R.D. 234, 235 (E.D. La. 1967) (Ohioan plaintiff in libel action in Louisiana could not relocate deposition outside of Louisiana even though he was under criminal indictment in Louisiana).

Fourth, owing to circumstances of Restis' own creation, Defendants cannot travel to Greece to depose Restis there. That is because in the summer of 2013, Plaintiffs filed criminal complaints against both UANI and Ambassador Wallace with the Athens District Attorney's Office. *See* Capitol Allies Press Release, July 17, 2013 (Wolosky Decl. Ex. 32). By doing so, Plaintiffs have made it impossible for Defendants to travel to Greece without the fear of arrest. As a result, Defendants would be denied their "presumptive right to participate in pretrial depositions." *Visor v. Sprint/United Mgmt. Co.*, No. 96-cv-1730, 1997 WL 567923, at *2 (D. Colo. Aug. 18, 1997). Restis is not an ordinary witness. He is both a Plaintiff and also Plaintiffs' primary witness in support of their allegations against Defendants. Indeed, using the media and their multi-billion defamation lawsuit, Restis and EST, the company he controls, are seeking Defendants' financial and reputational ruin. Restis has stated that Defendants are "crooks" and connected to "organized crime." *Restis Torpedoes Allegations* (Wolosky Decl. Ex.

13

5). They have accused Wallace of lying about being an Ambassador to the United Nations. Am. Compl. ¶¶ 3, 26. Allowing Restis to relocate his deposition to Greece even though he chose to file suit in this District and even after he made it impossible for Defendants to appear in Greece would improperly deprive Defendants of their right to confront their principal accuser face-to-face during his deposition.

In addition, safety concerns create an undue hardship on Defendants. News reports concerning Restis' arrest state that Greek police found a substantial cache of weapons, including assault weapons and machine guns, in Restis' home and office. *Targeted by the USA for Business in Iran*, Ethnos (July 28, 2013), www.ethnos.grarticle.asp?catid=22768&subid=2&pubid=63864726 (Wolosky Decl. Ex. 13). Given the obvious safety concerns, Defendants' counsel is unwilling to depose Restis in Greece surrounded by heavy artillery or otherwise under threat from his private, armed militia.

Restis should be compelled to sit for his deposition in New York City, where he chose to file suit as plaintiff. If Restis is not prepared to move forward with this lawsuit – and sworn testimony in New York – then he should dismiss his claims until he is able. His legal troubles provide no justification or cover to escape his discovery obligations the Defendants. It would be a perverse result, especially since they were foreseeable at the time he filed this lawsuit. *Ύποπτα δάνεια από την FBBank του Βίκτωρα Ρέστη* [Suspicious Loans from FBBank to Victor Restis], Directnews.gr, Nov. 6, 2012, http://directnews.gr/greece/19808-upopta-daneia-apo-thn-fbbank-tou-viktora-resth.html (Wolosky Decl. Ex. 33); *Πρόστιμο-μαμούθ 31,6 εκατ. για Ρέστη* [Huge 31.6 million fine for Restis], E-net Gr., Jan. 31, 2013, http://www.enet.gr/?i=news.el.ellada&id=340171&lang=en&lang=en (Wolosky Decl. Ex. 34).

### III. Defendants Are Entitled to Attorneys' Fees and Costs Arising From Plaintiffs' Failure to Appear for Their Depositions.

Plaintiffs indisputably failed to appear for either the EST Deposition or the Restis Deposition, both of which had been noticed 30 days earlier. Moreover, the Court must now compel the Restis Deposition. As a consequence, Defendants are entitled to "the reasonable expenses, including attorney's fees, caused by" their failure to appear, Fed. Rule Civ. P. 37(d)(3), as well as the "reasonable expenses incurred in making [this] motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

**CONCLUSION**

Plaintiffs failed to timely raise any concerns about the timing or location of these depositions, either formally or informally.  Plaintiffs have subsequently failed to present any evidence establishing good cause to relocate the Restis Deposition outside the forum of this lawsuit.  Accordingly, Defendants respectfully request this Court grant their motion to (1) compel the deposition of Victor Restis in New York, NY on a date mutually convenient to the parties within the next two weeks; (2) award costs and fees related to EST and Restis' failure to appear at their duly noticed depositions; and (3) award costs and fees related to this motion.

DATED:      February 24, 2014

BOIES, SCHILLER & FLEXNER LLP

By:      /s/Lee S. Wolosky
Lee S. Wolosky
575 Lexington Ave.
New York, NY 10022
Tel: (212) 446-2300
Email: lwolosky@bsfllp.com

Amy L. Neuhardt
5301 Wisconsin Ave, N.W.
Washington, D.C. 20015
Tel: (202) 237-2727
Email: aneuhardt@bsfllp.com

Douglass A. Mitchell
300 South Fourth St.
Suite 800
Las Vegas, NV 89101
Tel: (702) 382-7300
Email: dmitchell@bsfllp.com


STACK FERNANDEZ ANDERSON & HARRIS, P.A.
Brian J. Stack, Esq.
E-mail:  bstack@stackfernandez.com
Brickell Bay Office Tower
1001 Brickell Bay Drive, Suite 2650

                Miami, Florida  33131-4940
                Tel. 305-371-0001
                Fax. 305-371-0002

*Attorneys for Defendants American Coalition Against Nuclear Iran, Inc. a/k/a United Against Nuclear Iran, Mark D. Wallace, David Ibsen, and Nathan Carleton*