**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| VICTOR RESTIS and ENTERPRISES SHIPPING AND TRADING S.A. <br><br> Plaintiffs, <br><br> - v. - <br><br> AMERICAN COALITION AGAINST NUCLEAR IRAN, INC. a/k/a UNITED AGAINST NUCLEAR IRAN, MARK D. WALLACE, DAVID IBSEN, NATHAN CARLETON, and DOES 1-10, <br><br> Defendants. | Civil Action No. 13-cv-05032-ER-KNF <br><br> **ORAL ARGUMENT REQUESTED** |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     ARGUMENT........................................................................................................5

        A.      Parties Must Produce All Relevant Information......................................5

        B.      Defendants Must Produce Documents Responsive to Plaintiffs'
                RFPs..........................................................................................................5

        C.      Defendants May Not Refuse to Produce Documents By Asserting
                an Unidentified Privilege on Behalf of a Third Party............................15

III.    CONCLUSION...................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashland Management v. Janien,*
  82 N.Y.2d 395 (N.Y. 1993) ................................................................................12

*Celle v. Filipino Reporter Enterprises Inc.,*
  209 F.3d 163 (2d Cir. 2000)..........................................................................10, 13

*Culligan v. Yamaha Motor Corp., USA,*
  110 F.R.D. 122 (S.D.N.Y. 1986) ......................................................................12

*Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine,*
  951 F.2d 1357 (2d Cir. 1991)..............................................................................5

*EarthWeb, Inc. v. Schlack,*
  71 F. Supp. 2d 299 (S.D.N.Y. 1999)..................................................................12

*Ellsberg v. Mitchell,*
  709 F.2d 51 (D.C. Cir. 1983) ............................................................................18

*Hudson River Sloop v. Dep't of Navy,*
  1989 WL 50794 (E.D.N.Y. May 4, 1989) .........................................................17

*Hyundai Merchant Marine v. United States,*
  No. 89-2025, 1992 WL 168281 (S.D.N.Y. June 30, 1992) ...........................18, 19

*Morse/Diesel, Inc. v. Fid. & Deposit Co. of Maryland,*
  122 F.R.D. 447 (S.D.N.Y. 1988) ........................................................................5

*N.S.N. Int'l Indus. v. E.I. Dupont,*
  140 F.R.D. 275 (S.D.N.Y. 1991) ......................................................................17

*Nat'l Lawyers Guild v. Att'y Gen.,*
  96 F.R.D. 390 (S.D.N.Y. 1982) ...................................................................17, 18

*Oppenheimer Fund, Inc. v. Sanders,*
  437 U.S. 340 (1978)..............................................................................................5

*Roviaro v. United States,*
  353 U.S. 53 (1957)..............................................................................................18

*U.S. Sec. & Exch. Comm'n v. Cymaticolor Corp.,*
  106 F.R.D. 545 (S.D.N.Y. 1985) ......................................................................11

3

*United States v. Reynolds*,
   345 U.S. 1 (1953)....................................................................................................17

*Zuckerbraun v. General Dynamics Corp., et al.*,
   935 F.2d 544 (2d Cir. 1991)...................................................................................17

**Statutes**

Federal Rule of Civil Procedure 26 .........................................................................5, 16, 18

Federal Rule of Civil Procedure 37 .................................................................................1

Local Civil Rule 26.2..................................................................................................19

Local Civil Rule 46(e) ................................................................................................19

Plaintiffs Victor Restis and Enterprises Shipping and Trading S.A. (collectively, "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 37 and this Court's Order of April 1, 2014, submit this Memorandum in Support of their Motion to Compel Production of Documents Responsive to Plaintiffs' First Set of Requests for Production of Documents ("RFPs").  Because Defendant American Coalition Against a Nuclear Iran, Inc. a/k/a United Against a Nuclear Iran ("UANI") has failed to provide documents responsive to the majority of Plaintiffs' twenty-eight RFPs, and has produced only a minimal number of documents in response to Plaintiffs' remaining requests, its claim to have "substantially completed" its required production rings hollow.  Its 2000-page production of largely repetitive emails sheds little light on the critical questions at the heart of this suit: Defendants' false allegations.  And UANI's refusal to even discuss the documents that it is currently withholding – including the number of such documents, the nature of the documents, or their subject matter – has severely hamstrung Plaintiffs' ability to conduct discovery.  As a result, Plaintiffs respectfully move the Court to a) compel production of all responsive documents over which no privilege has been asserted; and b) provide a detailed privilege log listing all responsive documents that UANI is currently withholding.

## I.     **INTRODUCTION**

In May 2013, Defendants launched what they call a "name and shame" campaign alleging that Plaintiffs – a Greek shipowner and his shipping management company – had illegally accepted billions of dollars in Iranian investments and had shipped Iranian oil in violation of international sanctions.  Specifically, on May 13, 2013, Defendants alleged in a public letter and press release distributed worldwide that Plaintiffs are "front-men" for the Iranian regime and are engaged in "illicit," "unethical," and "indeed illegal" business "schemes" in "flagrant contravention of the international sanctions regime."  *See* Amended Complaint, Dkt.

34, ¶ 7.  Because Plaintiffs are well-respected shippers who only carry cargoes on behalf of major international (largely American-based) businesses, these false allegations seriously damaged Plaintiffs' business standing and caused massive economic damages.  Plaintiffs soon learned through a journalist to whom Defendants had spread these false allegations that Defendants were relying on two patently fraudulent documents whose authenticity or credibility Defendants have never attempted to defend, despite ample opportunity to do so.  Nevertheless, in an effort to bolster its false allegations, Defendants repeatedly and publicly claimed that these statements were based on "numerous documents and statements," "highly credible confidential sources," as well as "valid research, credible documents, distinguished relationships, and preeminent sourcing."  *Id*. ¶ 56(d).  Defendants have also represented that they have "extensive additional documents" supporting their allegations.  As this Memorandum will demonstrate, despite these claims of evidence, Defendants have steadfastly refused to produce any of this research, sources or documents, if they even exist.  *Id*. ¶ 56(c).

In July 2013, because Defendants continued their defamation campaign while refusing to produce a shred of evidence to support it, Plaintiffs were forced to bring this lawsuit for defamation and other torts.  Plaintiffs have sought discovery from UANI (e.g., regarding Defendants' allegedly "valid research" and "credible documents") to determine on what possible basis these defamatory statements were made, but UANI has refused to comply.  Nine months later, Defendants have now finally produced the two facially fraudulent documents, but nothing else, to support their defamatory statements.  Instead, Defendants have run away from their original accusations and now try to pretend that they never accused Plaintiffs of being "front-men" for a terrorist regime in violation of international sanctions.  Defendants now claim that they only alleged that Plaintiffs "did business in Iran," and, as proof of their initial allegations,

2

they point to the legal and appropriate delivery of humanitarian foodstuffs to Iran by major American food distributors on Plaintiffs' vessels. Even Defendants' newly phrased charge is not true, since Plaintiffs have studiously avoided any financial transactions with any Iranian entity, but Defendants' attempts to change the narrative of this case is itself telling.  Moreover, Plaintiffs now have learned that through their defamatory statements and this litigation, Defendants have been promoting the agenda of foreign third parties, whose existence Defendants refuse to even discuss.  (*See* Bhargava Decl. ¶ 12).

Plaintiffs' RFPs to UANI request twenty-eight separate, narrowly targeted categories of documents.[1]  *See* Ex. A.  They are straightforward and seek to address three central questions: (1) on what basis did Defendants make their defamatory statements; (2) who provided Defendants with the false information they published, and why; and (3) did Defendants make any effort to corroborate these false statements either before or after their publication?  The answers to these questions are fundamental to the claims in this lawsuit.  Defendants have produced no documents whatsoever in response to at least fifteen of Plaintiffs' requests.  They have made more than a token production of documents in response to, at best, six of these categories, although even these productions appear seriously inadequate.  And in response to Plaintiffs' seven remaining requests seeking the basis of Defendants' allegations, Defendants have produced precisely two documents: the facially fraudulent documents that they do not even attempt to defend as authentic.  If these are the only documents on which Defendants based their false allegations –

---

[1]  Plaintiffs have also propounded many of the same requests for production to Defendants Mark Wallace, David Ibsen, and Nathan Carleton, as well as additional requests to UANI.  The response date for those requests has not yet elapsed.

despite their public claims to have "extensive additional documents" in support – then Defendants should admit this, and admit that they had no credible basis to make their original defamatory claims. However, Defendants seek to have it both ways by refusing to either confirm or deny whether they are withholding any additional documents in support of their allegations, and they will not discuss their purported basis for withholding them.

Furthermore, Defendants attempt to hide behind a still-unnamed third-party privilege that the U.S. Government may assert. Notably, the Government has not yet invoked any privilege preventing the disclosure of these documents, nor have they indicated whether they will do so in the future. *See* Dkt. 94 (filing from Assistant U.S. Attorney Michael Byars indicating that the Government may have "a potential interest in discovery issues" but that it needed additional time "to continue its internal discussions" regarding this matter). As a result, if Defendants are withholding any documents based on a potential privilege that may or may not ever be invoked, they must, at a minimum, (1) state what this potential privilege is; and (2) describe the documents they are withholding and to which requests these documents are responsive. As a minimal step, Plaintiffs have asked for Defendants to at least quantify the number of documents they are withholding on the basis of this as-yet-unasserted privilege, but they refuse to do even that.

Defendants' deliberate refusal to comply with its discovery obligations has seriously prejudiced Plaintiffs' ability to prosecute this case. For example, Plaintiffs have been unable to notice any depositions, since they lack any of the basic documents required to prepare for any such depositions. In addition, they cannot notice any depositions while Defendants continue to hide behind an unnamed privilege that may or may not be asserted in the future by a non-party to this case. Plaintiffs cannot even be certain what topics of deposition questioning would be the

4

target of objections by Defendants, since Defendants refuse to even discuss the areas in which the purported privilege may apply.   Nor can Plaintiffs propound follow-up requests for production of documents, since they still await basic responses to requests that were first propounded in December 2013.   As a result, Plaintiffs are hamstrung in their ability to conduct discovery.

This Court should therefore compel Defendants to produce all documents responsive to Plaintiffs' RFPs for which no privilege has been asserted and to produce a privilege log explaining the nature of any privilege asserted and the documents they are withholding.

## II.   ARGUMENT

### A.   Parties Must Produce All Relevant Information

Federal discovery rules are very broad and allow discovery into "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "This obviously broad rule is liberally construed." *Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991).   Federal Rule of Civil Procedure 26 provides that parties must produce all information that is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).   The Southern District of New York has interpreted "reasonably calculated" to mean "*any possibility* that the information sought may be relevant to the subject matter of the action." *Morse/Diesel, Inc. v. Fid. & Deposit Co. of Maryland*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988) (quotations omitted) (emphasis original).

### B.   Defendants Must Produce Documents Responsive to Plaintiffs' RFPs

In their filing with this Court in response to Plaintiffs' request for leave to file a motion to compel, Defendants claimed that its production was "substantially complete."   Dkt. 82 at 1. Substantial completion, in this case, consists of approximately 1800 pages of largely duplicative

documents that UANI produced on March 21, 2013.  However, this paltry production does not

come close to satisfying UANI's discovery obligations.   In fact, UANI has not produced any

documents in response to the majority of Plaintiffs' requests (1, 5-7, 14, 19-28) and have

produced precisely two documents in response to six additional requests (4, 12-13, 15-16, 18).

UANI's production to date consists of the following:

- A small production of approximately 200 pages of documents downloaded from the Internet relating to Defendants' most recent allegation (not its original charge) that the legal delivery of humanitarian food aid somehow supports their allegation that Plaintiffs violated international sanctions by shipping oil and accepting Iranian investments.  As much as Defendants would like to change the nature of why this case was filed, redefining the actionable words and then providing irrelevant discovery for the straw man they have erected does not relieve Defendants of their actual requirement to provide information that supports the publication of charges they actually made.

- A production of approximately 1800 pages of largely repetitive emails among Defendants and other UANI staff members relating largely to the drafting and distribution to certain journalists of Defendants' May 13, 2013 public letter and press release.

These documents are more notable for the documents that Defendants have failed to

produce.  This includes the following:

**1.**      **Request No. 2.** This request seeks documents relating to Defendants' defamatory

publications, fifteen of which are listed in the Amended Complaint.  Dkt. 34, ¶ 16.  Despite

Defendants' claim that its production is substantially complete, Defendants have still produced

only a sampling of these documents.   Although Defendants have produced a number of

documents relating to its May 13, 2013 public letter and press release, it has failed to produce

more than a token number of documents relating to its remaining allegations.   This includes

each of Defendants' defamatory Facebook posts and Twitter tweets, none of which are reflected

in any meaningful way in UANI's production.   UANI similarly has produced almost no

documents relating to its defamatory graphics, which offensively portray Mr. Restis as wearing a

pirate's eye patch or an ayatollah's turban.  UANI should be compelled to produce all documents responsive to this Request.

     **2.**    **Request Nos. 1, 4-7, 12-20.**  These requests generally seek all documents relating to Defendants' original source of their false allegations and any efforts that Defendants made to verify or corroborate their allegations.    Besides producing the two fraudulent documents, Defendants have produced no information in response to any of these requests.  There are no documents relating to the source of these fraudulent documents..  Indeed, according to the metadata produced by Defendants, those documents first materialized in Defendants' possession on May 14, 2013, the day *after* Defendants publicly launched their defamation campaign against Plaintiffs based on those documents.[2]  Defendants have similarly produced no documents relating to research they conducted to confirm the authenticity of the fraudulent documents or to corroborate the information through other sources.  Nor have they produced any documents relating to any internal standards for vetting or verifying information before launching "name and shame" campaigns that are designed to destroy the reputations of companies and individuals.

     If none of these documents exist, then Plaintiffs should admit this.  They should admit that, contrary to their earlier public pronouncements, that they have no "research," "sources," or "documents," as they claimed.   They should admit that they did nothing to verify the information, did nothing to ensure the accuracy of their false allegations, did nothing to

_____

[2]    Plaintiffs have reason to believe that the documents were forged by Anastasios Pallis, a Greek businessman who had a falling out with Plaintiff Mr. Restis when the latter discovered that the former had stolen millions of Euros from him and then reported Pallis to authorities.   Plaintiffs understand that Mr. Pallis provided these documents to UANI through Meir Dagan, a member of UANI's Advisory Board and former director of Israeli intelligence.  Nevertheless, UANI has produced no documents relating to these individuals, who are the subject of Request Nos. 19 and 20.

authenticate the patently fraudulent documents, and that they have no internal standards to ensure the accuracy of their public allegations.   Instead, Defendants refuse to confirm or deny whether any such documents exist and whether they are being held pursuant to a privilege that they refuse to name and that has never been invoked.  UANI has asserted that a third-party privilege may apply to each of these requests, but have refused to discuss whether any documents are actually being withheld on this basis.  (*See* Bhargava Decl. ¶¶ 8-9).

    **3.**    **Request Nos. 3, 8-11.**  These requests generally seek all documents relating to Defendants' distribution of their false allegations or other information relating to this litigation with any third parties, including journalists, members of their Advisory Board, and government officials.  UANI has produced a limited number of emails involving three journalists to whom Defendants spread the defamatory allegations and the two fraudulent documents on which they are based.  However, UANI has produced no documents whatsoever relating to communications with their Advisory Board relating to their allegations or this lawsuit, nor have their produced a single document involving their "Senior Leadership" of President Gary Samore or August Hanning.  It strains credulity that a small non-profit organization such as UANI has had no communications whatsoever with its Advisory Board or Senior Leadership after it had been sued for defamatory statements that caused billions of dollars in damages.  UANI has similarly produced no documents relating to communications with third-party surrogates or representatives that they have used to speak with Plaintiffs before and/or during this litigation, although such contacts have certainly been made.  Finally, UANI has produced no documents relating to their communications with other third parties, including the third parties who are funding UANI's efforts against Plaintiff, including the defense of this lawsuit.

Again, although Defendants claim to have "substantively complete[d]" their production of responsive documents, they have asserted that a third-party privilege may apply to these requests for production, but they refuse to confirm or deny whether they continue to withhold documents on this basis.   Defendants should be required to state whether it is withholding any documents and provide detailed descriptions of any such documents.

Furthermore, in response to document requests 19 and 20 relating to Anastasios Pallis and Meir Dagan, Defendants assert a vague objection as to the time frame, which Plaintiffs defined for all requests as covering the period from January 1, 2010 to the present.  *See* Ex. B at 14-15.   Defendants object to these requests – but only these requests – on the grounds that they are "not limited by subject or restricted to a relevant time period, but, instead, improperly requests the production of documents that are not related to any allegation, defense, or issue in the case, and that are outside any relevant time period."  *Id*.   This is the precise time period involved in this case.  Counsel for Plaintiffs first attempted to clarify this objection in a letter to Defendants dated February 12, 2014 (*see* Ex. C at 2), but in a meet and confer on February 17, 2014, counsel for Defendants were unable to articulate the basis for this objection.   Even when Plaintiffs raised this issue in their pre-conference letter to this Court (Dkt. 72 at 4), Defendants failed to respond in any way.   As a result, Defendants should be required to withdraw this objection and produce all responsive documents for the relevant timeframe.

**4.**      **Request Nos. 21 and 22.**   In their Second and Third Requests for Production of Documents, Defendants demanded production of documents relating to a series of individuals and entities – including assorted Chinese companies, Iranian officials, and Greek individuals – the large majority of which are unfamiliar to Plaintiffs.  *See* Ex. D at Requests 2-36, 39-40, 44-45, 48-49, 62-69, 72-73, 128-29; Ex. E at 9.   Plaintiffs have repeatedly sought information

regarding the identity of these individuals.  (*See* Bhargava Decl. ¶ 10).  Although Plaintiffs have asked Defendants to produce documents related to these same individuals and entities – to determine how they could be involved in the incidents at issue – Defendants have refused to do so.  It stands to reason that if Defendants believe that these individual and entities have information relevant to the case, they ought to supply that information as well.  The Court should therefore compel the production of all relevant documents relating to the miscellaneous individuals and entities that Defendants have referred to in their document requests.

     **5.**     **Request Nos. 24 and 25.** Plaintiffs also seek information on UANI's sources of funding for their defamation campaign against Plaintiffs and for this lawsuit.  This information is highly relevant to Plaintiffs' defamation claim.  First, Plaintiffs must establish actual malice in order to prove defamation.  They must show "a subjective awareness of either falsity or probable falsity of the defamatory statement, or . . .  reckless disregard of the [statements'] truth or falsity."  *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 182 (2d Cir. 2000).  Plaintiffs now understand that UANI – including this defamation campaign against Plaintiffs and the resulting litigation – is being supported and funded by certain foreign interests who have been providing money to UANI in order to further their own agendas.   As evidence of this, according to their public filings, UANI spends almost no money on fund-raising efforts, yet consistently raises $1 million or more to fund their organization.  *See* Ex. F (Form 990 filing showing nearly $1.8 million in donations based on $26,131 in fund-raising expenses).

     In addition, Plaintiffs have reason to believe that UANI operates, in part, by making public allegations against companies and then demanding donations in exchange for an agreement to "applaud" the actions of the company in refusing to do business in Iran – its self-described "name and shame" campaign.  In essence, UANI threatens to destroy a company's

reputation but then will rehabilitate it for a small fee.   UANI did precisely this with Plaintiffs by demanding a cash payment of $500,000 to make its false allegations in this case go away.  *See* Ex. G.   Finally, although UANI has published false allegations about Plaintiffs, it has notably declined to published true information about Plaintiffs' competitors' financial dealings with Iran. UANI's sources of funding are thus relevant to determining if Plaintiffs' competitors have financially influenced UANI.

Information about UANI's funding will likely reveal or lead to information that will reveal: (1) UANI's *modus operandi* of essentially extorting money out of companies that are the targets of its "name and shame" campaigns, which is critical to showing malice; (2) the existence and agenda of any third parties that are funding the efforts against Plaintiffs, this  litigation,, and UANI's "name and shame" campaigns in general; and 3) the existence and agenda of any competitors to Plaintiffs who have provided money to UANI.    All of this information is specifically relevant to whether Defendants acted with actual malice.

In order to get access to this relevant information, Plaintiffs requested documents sufficient to identify UANI's sources of funding (Request No. 25), as well as its tax returns (Request No. 24).  Defendants have refused to produce any documents in response to either request.   Tax returns are discoverable if they are relevant and if there is a "compelling need for the returns because the information contained therein is not otherwise readily obtainable."  *U.S. Sec. & Exch. Comm'n v. Cymaticolor Corp.*, 106 F.R.D. 545, 547-48 (S.D.N.Y. 1985). Plaintiffs easily meet this test, since this information is highly relevant and is not otherwise readily obtainable from third-party sources.  However, to the extent that Defendants are required to produce all documents relating to their sources of funding, Plaintiffs will have no need for their actual tax returns.

Defendants also attempt to characterize the financial information sought by Plaintiffs as a non-discoverable "trade secret," but this merely obfuscates the issue.  First, trade secrets are not protected from disclosure, since such information is properly protected under the Protective Order approved by this Court.  That Protective Order defines Confidential Information subject to discovery as including "non-public trade secret, confidential, proprietary, or commercially or personally sensitive information."  *See* Dkt. 93 at ¶ 3(a).  Second, revealing their financial support in their efforts to get Plaintiffs hardly meets New York's strict definition of "trade secret."[3]   What Plaintiffs seek is straightforward: documents that will reveal UANI's sources of funding, in whatever form this information exists.  Moreover, since UANI is the party seeking to withhold information, it first has the burden of proof to present evidence that specific damage is likely to result from any disclosure.  *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122, 125 (S.D.N.Y. 1986).  Defendants' refusal to provide this information reveals much about what they seek to hide, both from this Court and from the general public.  The Court should compel Defendants to produce all non-privileged information relating to UANI's finances.

    **6.**    **Request Nos. 27 and 28.**  Plaintiffs further seek information regarding other instances in which Defendants have made false accusations regarding other companies and their

---

[3]    In New York, a trade secret is "any formula, pattern, device or compilation  of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it."  *EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 314 (S.D.N.Y. 1999) (internal quotation marks and citation omitted).  Even if a non-profit advocacy organization such as UANI could be considered to have "competitors," the courts consider six factors in their determination of whether information constitutes a trade secret:  "(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."  *Ashland Management v. Janien,* 82 N.Y.2d 395, 407 (N.Y. 1993).

alleged business with Iran.   Specifically, Plaintiffs have requested documents relating to information UANI has received that its public allegations were false or inaccurate.   Defendants have engaged in a series of such "name and shame" or "reputational risk" campaigns against a variety of companies other than UANI.   In support of such campaigns, Defendants publicly trumpet the august nature of its Advisory Board members, as well as the "valid research, credible documents, distinguished relationships, and preeminent sourcing" behind its allegations. Dkt. 34 at ¶ 56(d).   However, as the limited discovery to date in this case has shown, UANI's Advisory Board exists on paper only, with no apparent role in reviewing defamatory allegations.   In addition, UANI's staff – including Defendants – appear to engage in no effort whatsoever to verify the accuracy of its allegations before launching its name and shame campaigns.   Nor, apparently, does UANI have any internal standards governing the need to corroborate information before attempting to destroy a company's or individual's reputation.

Documents showing instances in which companies have informed UANI that it has made false or incorrect allegations are directly relevant to a showing of malice.   Specifically, it shows a serial reckless disregard of the truth on the part of Defendants, as well as a refusal to admit error in the face of evidence.   *Celle*, 209 F.3d at 182.   For example, in 2010, UANI launched a campaign against Caterpillar, Inc., accusing the company of having "extensive business in Iran."[4] UANI alleged that Caterpillar failed to "fully disclose the extent of its business dealings in Iran" and questioned whether Caterpillar was engaged in illegal activity.   Caterpillar Chairman and

---

[4]   *See* "UANI calls on Caterpillar to explain its sale of tunneling equipment in Iran and to disclose its business in Iran," *available at* http://unitedagainstnucleariran.com/press-releases/uani-calls-caterpillar-explain-its-sale-tunneling-equipment-iran-and-disclose-its-bus.

CEO James W. Owens responded in a letter to Defendant Wallace that "you and your organization have jumped to conclusions about Caterpillar that are not supported by the facts . . . . Your letters are not accurate [in that] Caterpillar does not transact business in Iran."[5]  According to the letter, Caterpillar's foreign subsidiaries had sold some cranes to an independent dealer, which subsequently sold the cranes in Iran.   Although Caterpillar informed UANI that its allegations were wrong, Defendants publicly announced that Caterpillar had conceded the truth of the allegations.  According to a follow-up letter from Defendant Wallace, "I appreciate the acknowledgement that Caterpillar has done business in Iran through its foreign subsidiaries, dealers and distributors."[6]

Such documents as these are highly relevant, since they pertain directly to Defendants' pattern and practice of launching "name and shame" campaigns on the slimmest of evidence without performing any due diligence and then claiming they were right by twisting their original allegation to meet the truth of what its target actually does.  This is precisely what UANI has done in this case, and information about this tactic will shed light on the question of actual malice.  Because this is UANI's *modus operandi*, and because UANI has apparently refused to institute any measures to ensure the accuracy of its allegations even in the wake of being informed of its past errors, the discovery of these documents is important to establishing malice. UANI seeks to avoid producing these documents only because they may prove to be embarrassing to Defendants, but this is no excuse for UANI failing to meet its discovery

---

[5]   *See* Letter from James W. Owens to Mark D. Wallace, *available at* http://www.unitedagainstnucleariran.com/ sites/default/files/IBR%20Correspondence/02-25-10%20Caterpillar%20Response%20%281%29.pdf

[6]   *See* Letter from Mark D. Wallace to James W. Owens, *available at* http://www.unitedagainstnucleariran.com/ sites/default/files/IBR%20Correspondence/03_01_10%20Letter%20to%20CAT.pdf

responsibilities.   The Court should therefore compel the production of all non-privileged documents relating to any entities or individuals that have complained to UANI about the inaccuracy of its allegations.

**7.**   **Request Nos. 23 and 26.**   Plaintiffs also seek documents that will aid Plaintiffs in identifying UANI's employees and job responsibilities (Request No. 23), as well as information on UANI's insurance policies (Request No. 26).   Although UANI claimed to have "substantially complete[]" its production, it failed to produce any documents in response to these requests. However, in an April 5, 2014 meet and confer, Defendants agreed to belatedly produce these documents. (*See* Bhargava Decl. at 11.)   Plaintiffs have not yet received these documents.

### C.   Defendants May Not Refuse to Produce Documents By Asserting an Unidentified Privilege on Behalf of a Third Party

In refusing to produce any responsive documents, Defendants improperly rely on an unnamed privilege that may or may not be asserted at some point in the future by the U.S. Government.   In response to Plaintiffs' first 22 requests for production, UANI objected to producing "information protected from disclosure by *one or more* privileges, *including* various privileges belonging to and which may be asserted by third parties."(emphasis added).   But Defendants have not asserted any privilege. Instead, they have suggested that the U.S. Government may assert a privilege, but have not stated what this privilege is, or to what documents it might apply.   Furthermore, this potential privilege that may be asserted by the Government – and any delay in discovery that results – comes at the invitation of Defendants during their as-yet-undisclosed communications with the U.S. Government.

In a hearing before Judge Ramos on February 14, 2014, Defendants revealed for the first time that they were actually withholding documents based on this potential third-party privilege. Assistant U.S. Attorney Michael Byars, who Defendants brought to Court to discuss the issue,

informed the Court only that "based on my communications with defendants' counsel, the U.S. *may* have an interest in this issue. We do need additional time to assess that." Ex. H at 34: 12-17 (emphasis added). Although Judge Ramos granted Mr. Byars' request to file an *ex parte* motion regarding "a governmental privilege or privileges with respect to discovery" (Dkt. 93), Plaintiffs' counsel responded to the Government's request by pointing out that Defendants and the Government had to substantiate the basis for asserting privileges in order to shield documents in the possession of a private party (not the Government) before any *ex parte* filing was made. *See* Dkt. 88. On April 2, 2014, Mr. Byars asked for additional time to consider whether the Government was going to become involved or assert any privilege. *See* Dkt. 98. Plaintiffs' counsel again wrote to Judge Ramos asking for preliminary information before the Government would be allowed to file. Judge Ramos granted the Government additional time but specifically ordered that "[t]he U.S. Attorney is further directed to submit a letter detailing the nature of the governmental privilege(s) asserted, as well as the reason(s) for invoking the privilege(s)." Dkt. 100. The Government's filing is currently due sometime during the week of April 14, 2014.

Even though the Government has, to date, made no assertion of any actual privilege, Defendants attempt to hide behind this yet-to-be-ripe action. Moreover, they refuse to provide any information about the documents they believe might be shielded, "in case" some privilege is asserted and sustained in the future. They will not provide a log or index, and they have refused to specify precisely which privilege applies, or how many documents are being withheld as a result.

As further explained in the correspondence to Judge Ramos, Defendants' vague assertion of privilege, without an accompanying privilege log, is problematic for several reasons. *First*, there is no such thing as a "governmental privilege." In order for a party to assert a privilege,

Federal Rule of Civil Procedure 26 provides that a party must "expressly" assert which privilege is being asserted.  Defendants may not rely on a vague assertion of privilege without specifying anything more.  But Defendants have repeatedly refused to specify what privilege may potentially covers the documents they are withholding.

  *Second*, assuming that the U.S. Government decides to enter the case and assert the state secrets privilege – which it has not done – it is not clear how this privilege would apply to documents in Defendants' possession.  No government privilege could apply to documents created by parties *other* than the Government or its representatives.  *See United States   v. Reynolds*, 345 U.S. 1, 10-11 (1953); *Hudson River Sloop v. Dep't of Navy*, 1989 WL 50794, at *2 (E.D.N.Y. May 4, 1989) ("[T]he privilege keeps the government from having to disclose at least publicly *properly classified* information.") (emphasis added).   And when the U.S. Government asserts the privilege over documents that it created itself, typically either the Government is a party to the action, or the defendant has obtained or created classified information through a contractual relationship with the Government.  *See, e.g.*, *Zuckerbraun v. General Dynamics Corp., et al.*, 935 F.2d 544 (2d Cir. 1991) (defense contractors possessed classified material regarding defense systems for Navy ships); *N.S.N. Int'l Indus. v. E.I. Dupont*, 140 F.R.D. 275, 276 (S.D.N.Y. 1991) (defense contractor possessed classified armor technology).  Defendants are not government contractors or entities with a proper secret financial relationship with the government.  Furthermore,  information sought to be protected by the state secrets privilege is typically classified information.  *See Nat'l Lawyers Guild v. Att'y Gen.*, 96 F.R.D. 390, 401-02 (S.D.N.Y. 1982) (privilege covers "covert intelligence sources," "surveillance under CIA Project," "classified cryptographic information," and "intelligence collection methods"); *Zuckerbraun*, 935 F.3d at 546; *N.S.N. Int'l Indus.*, 140 F.R.D. at 276.  It is

unclear how UANI – a nonprofit entity that is likely funded by a foreign third party – would have access to such information or, if they do have it, could properly keep it in their non-secured offices. And finally, in the unlikely event that the U.S. Government would have disclosed such privileged information to Defendants, the act of doing so would have waived whatever privilege existed. *See Nat'l Lawyers Guild*, 96 F.R.D. at 27 ("prior disclosure . . . waives the privilege"); *Roviaro v. United States*, 353 U.S. 53, 60 (1957) (privilege waived once the identity of an informer has been disclosed). In short, neither the Government nor Defendants have explained how any potential privilege could possibly apply to documents in Defendants' possession.

  *Third*, Defendants refuse to produce a privilege log describing the documents they are withholding from production. Federal Rule of Civil Procedure 26 requires that a party asserting a privilege must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Should Defendants wish to withhold documents from production on the basis of privilege, they must, at a minimum, be required to specify on a privilege log: (1) the nature of the privilege; (2) the number of documents withheld; and (3) the specific requests to which these documents relate. Anything less would unfairly allow Defendants to avoid their discovery obligations.

  These requirements for a privilege log apply equally to documents withheld on the basis of the state secrets privilege. Defendants' refusal to provide a log or index, or even to discuss the nature of the documents, contravenes both case law on the assertion of this privilege and this Court's rules. In cases where a governmental (including a state secrets) privilege was asserted, courts comment on the need for such details. *See Ellsberg v. Mitchell*, 709 F.2d 51, 62 (D.C. Cir.

18

1983) ("[A]n index correlating indexed items with the particular claim of privilege . . . [along with] an analysis containing descriptions specific enough to identify the basis of the particular claim or claims") (quotations omitted); *Hyundai Merchant Marine v. United States*, No. 89-2025, 1992 WL 168281, at *4-5 (S.D.N.Y. June 30, 1992) (providing a "list of 14 specific documents [attached to a publicly filed declaration and claim of state secrets privilege] identified as required by [the rules], as to which the state secrets privilege is asserted."); *Nat'l Lawyers Guild,* 96 F.R.D. 390, 397 (S.D.N.Y. 1982) (the public affidavit filed "should describe the disputed material in sufficient detail and reasons for withholding the material should be set forth with reasonable specificity"). The court in *Hyundai* referred to Southern District of New York Local Civil Rule 46(e), which required a detailed log or index for all claims of privilege in response to interrogatories or document requests. That rule has been replaced with S.D.N.Y. Local Civil Rule 26.2, which requires detailed information about the privilege being asserted and the documents (including type, subject matter, author, etc.). Defendants might try to argue that these requirements apply only to the Government, but that paints with too broad a stroke. The cases in which the privilege comes up most is when the Government is not only asserting the privilege but holds the documents. Here, it is not clear the Government will ultimately assert any privilege, but even if it does, Defendants apparently possess the documents they seek to withhold and, therefore, they have an obligation to provide the details of what is contained in their files it property assert any privilege.

Defendants cannot continue to obstruct discovery by inviting the Government to consider asserting a privilege and then hiding behind the U.S. Government's potential assertion of an unnamed privilege sometime in the future. It should be required to disclose these documents or, at a minimum, provide a log describing the documents it is currently withholding.

## III.   <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs respectfully request that this Court order Defendants to a) produce all responsive documents over which no privilege has been asserted; and b) provide a detailed privilege log listing all responsive documents that UANI is currently withholding.

Dated:  April 7, 2014                              Respectfully submitted,

                                                   CHADBOURNE & PARKE LLP

                                                   By:  /s/ *Abbe David Lowell*
                                                   Abbe David Lowell
                                                   Michael Bhargava
                                                   Jeremy Siegel
                                                   1200 New Hampshire Avenue, N.W.
                                                   Washington, DC 20036
                                                   (202) 974-5600
                                                   adlowell@chadbourne.com
                                                   mbhargava@chadbourne.com
                                                   jsiegel@chadbourne.com

                                                   Benjamin D. Bleiberg
                                                   Serine Consolino
                                                   30 Rockefeller Plaza
                                                   New York, NY 10112
                                                   (212) 408-5100
                                                   bbleiberg@chadbourne.com
                                                   sconsolino@chadbourne.com

                                                   *Counsel for Plaintiffs Victor Restis and*
                                                   *Enterprises Shipping and Trading S.A.*