## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

VICTOR RESTIS and ENTERPRISES SHIPPING
AND TRADING, S.A.,

                Plaintiffs,

        -against-               No. 13-cv-5032 (ER)(KNF)

AMERICAN COALITION AGAINST
NUCLEAR IRAN, INC. a/k/a UNITED
AGAINST NUCLEAR IRAN, MARK D.
WALLACE, DAVID IBSEN, NATHAN
CARLETON, and DOES 1-10,

                Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendants, American Coalition Against Nuclear Iran, a/k/a United Against Nuclear Iran ("UANI"), Ambassador Mark D. Wallace, David Ibsen, and Nathan Carleton (collectively, "Defendants"), submit this opposition to the Plaintiffs' Motion to Compel Production of Documents (the "Motion to Compel") dated August 12, 2014 [ECF Nos. 225-227].[1]  The Motion to Compel should be denied since the Court has stayed party-to-party discovery, and the Subpoena which is the subject of the Motion to Compel seeks the production of documents in the "possession, custody or control" of UANI.

### Preliminary Statement

Plaintiffs served a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action on The Brick Factory ("Brick Factory") on or about

---

[1]  A party to an action may move to quash a subpoena where the subpoena implicates the party's privilege or rights. *Chiperas v. Rubin,* 1998 WL 765126 at *2 (D.D.C. Nov. 3, 1998); *Doe v. Verizon Online,* 2010 WL 2035332 at *2 (D.D.C. May 21, 2010); *Albany Molecular Research, Inc. v. Schloemer,* 274 F.R.D. 22, 25 (D.D.C. 2011).  "It is generally accepted that a party to a suit may file motion under the Rule on behalf of a non-party."  *Lewis v. United Joint Venture*, 2010 WL 5230866 at *3 n.3 (N.D. Ohio Dec. 16, 2010) (citation omitted).

March 28, 2014 (the "Subpoena").  A copy of the Subpoena is attached as Ex. A.  Brick Factory served Responses and Objections to Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Responses and Objections") on April 24, 2013 indicating that it possessed responsive documents.   A copy of the Responses and Objections is attached herewith as Ex. B.

The day before Brick Factory's Responses and Objections was served, the presiding judge in this action, the Honorable Edgardo Ramos, entered an order dated April 23, 2014 granting the request of the United States of America (the "Government") to stay party-to-party discovery for 30 days through May 23, 2014.  [ECF No. 119].  Judge Ramos explained that a stay was appropriate while the Government determined whether to invoke an executive privilege belonging to the Government[2]:  "I think it doesn't prejudice anyone for all of us to stand down while we figure out how we are going to proceed over the next several days."   Hearing Transcript dated April 23, 2014, at 14.  Judge Ramos excluded from the scope of the stay any motions that were "being processed by the magistrate [judge] or via subpoenas."  *Id.*  at 18.  At the request of the Government, Judge Ramos extended the stay of discovery three times, with the current stay set to expire on September 12, 2014.  *See* Endorsed Order dated May 28, 2014 [ECF No. 157], Endorsed Order dated June 26, 2014 [ECF No. 192], and Endorsed Order dated August 1, 2014 [ECF No. 212].  Although your Honor noted that Judge Ramos' stay order generally precluded discovery from parties and excepted "third-party subpoenas and depositions" from its scope, *see* Endorsed Order dated May 29, 2104 [ECF No. 162], your Honor further recognized that some subpoenas may nevertheless be subject to the stay:

---

[2]   Plaintiffs flatly assert that the Government has expressed an interest in asserting a privilege only as to documents "in the possession of the Defendants -- not third parties."  Motion to Compel, at 5.  However, there is no indication in any of the Government's submissions to the Court to justify Plaintiffs' speculation that the privilege under consideration is limited to Defendants' documents.  In any event, for the reasons stated herein, the documents subpoenaed from Brick Factory are, in fact, documents within UANI's "possession, custody or control."

Well, the third party depositions and subpoenas are without the stay according to Docket Entry 119.  Now, whether -- depending upon whether these folks are managing agents and directors and so forth may determine whether this whole discussion awaits the end of the stay or if they're not, if they're not parties to the action they would fall within the third party subpoena and deposition exemption but I don't know yet everything I need to know about these folks and their relationship to the defendant entity.  I'm expecting that some of that will be told to me in the writings that are going to come in the next few days and depending upon what I learn it may inform exactly what you're asking, whether this whole exercise with respect to these folks is within the stay or whether these are third party depositions or subpoenas that are without the stay.

Hearing Transcript dated May 30, 2014 ("Tr."), at 22-23.

For the reasons set forth herein, Brick Factory and Defendants believe that Judge Ramos' order staying party-to-party discovery also applies to Plaintiffs' Subpoena to Brick Factory. Although nominally captioned as a third party subpoena, Plaintiffs' document requests to Brick Factory actually seek to discover documents that are within the "possession, custody or control" of UANI.  The Plaintiffs are attempting to do indirectly what Judge Ramos has determined should not be done directly, *i.e.*, engage in party-to-party discovery, at least until the stay of discovery expires or is lifted.

## The Subpoena to Brick Factory

Brick Factory is a website design and hosting firm.  Declaration of David Ibsen ("Ibsen Decl."), ¶ 2.  Because UANI is a small 501(c)(3) charitable organization, with limited staffing in 2013, and no persons with expertise in information technology or website hosting and design, all of UANI's website engineering, design and hosting functions were outsourced exclusively to Brick Factory in 2013, and remain outsourced to Brick Factory through the current date.  *Id*. Brick Factory functions, for all practical purposes, as UANI's offsite website designer and host. *Id.* at ¶ 3.  All of the content for UANI's website (www.unitedagainstnucleariran.com) -- including all of the content of the various web pages

referencing or mentioning Plaintiffs -- was created by UANI and provided to Brick Factory by UANI for inclusion on the UANI website. *Id.* Brick Factory engineered the UANI website pages and the hyperlinks, but all of the textual material and photos were supplied by UANI. *Id.* at ¶ 4. UANI maintained complete editorial control over the content of the website. *Id.* Because UANI exercises complete control over the website, and because Brick Factory is contractually obligated to make UANI's documents, photos and other materials available to UANI, UANI has the legal right, authority and practical ability to obtain any documents that it has provided to Brick Factory. *Id.* at ¶ 5.[3]

The Subpoena to Brick Factory was drafted to obtain documents generated by UANI and delivered to Brick Factory. Although the document requests contained in the Subpoena purport to seek documents concerning or referencing Plaintiffs that were sent to or received from "any" person, *see* Ex. A, the only documents that Brick Factory possesses are documents or communications generated by UANI. Brick Factory did not send any documents to, or receive any documents from, third persons concerning Plaintiffs other than from UANI. Ibsen Decl., ¶ 6. Therefore, practically speaking, the Subpoena requires the production of documents consisting entirely of communications between Brick Factory and UANI. Requiring production of these communications at this time effectively permits Plaintiffs to obtain from Brick Factory what it is currently prohibited from obtaining from UANI, at least until the stay imposed by Judge Ramos

---

[3]  Notwithstanding the loose and inaccurate statements in Plaintiffs' Motion to Compel, at 2, Brick Factory did not, and does not currently, "disseminate" any defamatory information about Plaintiffs on UANI's behalf or in any other manner. In fact, Brick Factory "disseminated" no statements at all about the Plaintiffs. Rather, UANI posted the allegedly defamatory statements about the Plaintiffs on UANI's website, which was hosted by Brick Factory. UANI's website is, of course, available to be read by the general public. Under the Communications Decency Act, 47 U.S.C. § 230(c)(1), a website host is absolutely immune from civil liability for defamation claims arising from the hosted content. *See Ascentive LLC v. Op. Corp.*, 842 F. Supp. 2d 450, 474-76 (E.D.N.Y. 2011), *Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007). Moreover, Brick Factory had no involvement in the dissemination, broadcast, or transmission of any press releases, tweets, emails, or other statements to third persons. Brick Factory did not send any documents to, or receive any documents from, third persons concerning Plaintiffs other than from UANI. Ibsen Decl., ¶ 7.

has expired.  Compelling UANI's offsite website host to produce UANI's documents will permit a circumvention of Judge Ramos' order staying discovery from the parties.

The carve-out in Judge Ramos' stay order for third party subpoenas and depositions, noted by Your Honor, was intended to allow the parties to obtain documents generated or created by non-parties to this litigation, not to allow the production of UANI corporate documents that were in the hands of its offsite website host over whom it exercises total editorial control with respect to all of its website content.  Contrary to the assertions in the Motion to Compel at page 5, the Brick Factory Subpoena is markedly different from other subpoenas served in this action by Defendants.  For example, two months *before* Judge Ramos' order staying discovery, Defendants served subpoenas on J.P. Morgan and Deutsche Bank Securities seeking documents concerning Plaintiffs' allegation that an initial public offering by a company allegedly owned by Victor Restis was aborted as a result of the publication by Defendants of allegedly defamatory statements.  *See* Amended Complaint, at ¶ 95-97.  J.P. Morgan concluded that it was not.[4] Defendants also served subpoenas on Cargill, Inc. and Bunge, Ltd., two large distributors of agricultural products, in order to obtain copies of export licenses, cargo manifests, and similar documents concerning the shipment of goods to Iran on vessels owned and operated by Plaintiff, Enterprises Shipping and Trading, S.A. ("EST").  The Court will recall that Plaintiffs' Complaint and Amended Complaint affirmatively allege that "Mr. Restis does not do business with Iran nor does he sanction others who do."   Complaint, ¶¶ 15, 79; Amended Complaint, ¶¶ 15, 78. However, those allegations were untrue at the time of the filings and remain untrue today.  EST

---

[4]  J.P. Morgan withdrew its underwriting support for the IPO not because of the statements published by UANI, but because of a highly unflattering April 29, 2013 investigatory report that J.P. Morgan had commissioned from an independent investigation firm.  *See* Ex. B to Letter dated June 30, 2014 from Lee Wolosky to Judge Edgardo Ramos, ECF No. 195 (filed under seal).  Within weeks of the investigatory report, Restis was arrested and jailed by Greek prosecutors for money laundering and the looting of a Greek bank.  Indeed, Restis was in jail on the date when the Complaint was served on Defendants.  Upon conviction, he faces a life sentence in prison.

ships were doing business with Iran on the very day this action was filed,[5] and they continue to deliver goods to Iranian ports.  The Cargill and Bunge subpoenas were designed to unearth documents that were either not in the Plaintiffs' possession or that Plaintiffs had refused to disclose pursuant to earlier requests for production served pursuant to Rule 34.

Deferring Brick Factory's production of documents until the stay of discovery expires or is lifted will cause no prejudice whatsoever to Plaintiffs.  Because all party discovery has been suspended pursuant to Judge Ramos' stay order, the vast bulk of discovery in the case has been deferred and remains to be taken.  When the stay imposed by Judge Ramos comes to an end, Plaintiffs will be entitled to receive documents from UANI that are responsive to the Brick Factory Subpoena.  In the meantime, a short delay in the production of Brick Factory's documents is inconsequential and is consistent with the purpose of stay.

## ARGUMENT

**A.   The Court's Stay of Discovery Applies To Plaintiffs'
Attempts To Obtain Brick Factory Documents which
<u>Are Within the "Possession, Custody or Control" of Defendants</u>**

Rule 34(a) of the Federal Rules of Civil Procedure provides that "any party" may request of "any other party" documents that are "in the possession, custody or control of the party upon whom the request is served."   "'Control' has been construed broadly by the courts as the legal right, authority or practical ability to obtain the materials sought upon demand."   *Dietrich v.*

---

[5] On the very day Restis and EST filed this lawsuit denying they did "business with Iran [or] sanctioned those who do," Complaint, ¶ 15, 79, the Elba Max, a large cargo vessel owned and operated by EST, was making a port of call at Bandar Imam Khomeini, Iran, which hosts the sanctioned port operator Tidewater Middle East Co. ("Tidewater"). Moreover, since filing their Complaint, EST cargo vessels have called on Iranian ports many times.  Tidewater is Iran's primary port operator, and operates at Bandar Imam Khomeni and other Iranian ports.  Both the United States and the European Union have sanctioned Tidewater because it is owned by Iran's Islamic Revolutionary Guard Corps ("IRGC") and "has been used by the IRGC for illicit shipments."  *See* Dept. of the Treas., Press Release, "Fact Sheet: Treasury Sanctions Major Iranian Commercial Entities," Jun. 23, 2011, *available at* http://www.treasury.gov/press-center/press-releases/Pages/tg1217.aspx, attached as Ex. C *and* Council Decision 2012/35/CFSP at Annex I L 19/27 (Jan. 23, 2012), *available at* http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2012:019:0022:0030:EN:PDF, attached as Ex. D.

*Bauer,* 2000 WL 1171132 at *3 (S.D.N.Y. Aug. 16, 2000); *accord In re: Flag Telecom Holdings, Ltd. Sec. Litig.,* 236 F.R.D. 177, 180 (S.D.N.Y. 2006). "If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' *even if the documents are actually in the possession of a non-party*." *Riddell Sports Inc., v. Brooks,* 158 F.R.D. 555, 558 (S.D.N.Y. 1994) (emphasis supplied); *see* 8A C. Wright & A. Miller, Federal Practice And Procedure § 2210 (2005). "The test for the production of documents is control, not location." *Marc Rich & Co., A.G. v. U.S.,* 707 F.2d 663, 667 (2d Cir. 1983).

Under Rule 34, "'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.,* 171 F.R.D. 135, 146 (S.D.N.Y. 1997). The courts have "interpreted Rule 34 to require production if the party *has the practical ability to obtain the documents from another*, *irrespective of his legal entitlement to the documents*." *Golden Trade, S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 525 (S.D.N.Y. 1992) (emphasis supplied). "[A] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or *has control over the entity who is in possession of the document*." *Linares v. Costco Wholesale, Inc.,* 2013 WL 5434570 at *2 (S.D. Cal. Mar. 7, 2013) (quotations and citation omitted) (emphasis supplied). A party is in control of any documents in the possession of a third party if that third party is contractually obligated to make them available. *In re NTL, Inc. Sec. Litig.,* 244 F.R.D. 179, 195 (S.D.N.Y. 2007), *aff'd. sub. nom., Gordon Partners v. Blumenthal,* 2007 WL 1518632 (S.D.N.Y. May 17, 2007).

Because a corporation is deemed to have "possession, custody or control" over

documents that are in the hands of third persons that they "control," including its employees, agents, and contractors, the federal courts have held that discovery requests seeking to obtain such documents should be directed to the corporation, not to the employees, agents, and contractors. For example, in *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 454-55 (E.D.N.C. 2005), the plaintiff served a subpoena on the employee of the corporate defendant, GSK. The employee was believed to be in possession of the GSK's corporate documents. The district court quashed the subpoena and granted a protective order to GSK, holding that the plaintiff could not circumvent Rule 34 by serving subpoenas on the defendant's employees in order to obtain defendant's documents, even those documents that the employees actually possessed:

> [P]laintiff should seek relevant, responsive GSK documents from GSK via the discovery process in the Northern District of Georgia, and *not* by issuing third-party subpoenas for GSK documents to GSK employees who happen to live and work in the Eastern District of North Carolina. *By definition, the documents that plaintiff seeks via third-party subpoena to [GSK's employee] are GSK documents, even if located in [the employee's] GSK office or [the employee's] home.* * * * To the extent that plaintiff seeks discoverable GSK documents as part of her ongoing litigation in the Northern District of Georgia, she should seek them via appropriate discovery requests to GSK in the Northern District of Georgia.

*Schaaf,* 233 F.R.D. at 455 (citation omitted; emphasis supplied). The Second Circuit likewise has noted that a corporation's records do not become the records of an employee, representative or contractor simply because they are in their possession. "[A corporation's] records are usually available to others within the entity and may not be treated as the private confidential papers of any one officer or employee. The officer creates or handles the records in a representative capacity, not on his own behalf. The records, moreover, do not belong to him but to the organization." *See, e.g., In re Grand Jury Subp. Duces Tecum Dated June 13, 1983 and June 22, 1983,* 722 F.2d 981, 984 (2d Cir. 1983).

The *Schaaf* court explained why bypassing the accepted method of obtaining a party's documents through a Rule 34 document request creates unnecessary expense and burden on third parties:

> [I]f plaintiff does seek documents from the corporate defendants, the defendants have an obligation to search within their corporate structures and produce non-privileged, responsive documents or to object.  This obligation to search is not limited to a search within the geographic locale of the district court where the litigation is pending. If the corporate defendants fail to produce responsive documents or make what plaintiff believes are unfounded objections, then such conduct should be the subject of motions practice in the district court where the litigation is pending. *Such conduct, however, should not result in third-party subpoenas to corporate employees of the defendants for corporate records.  To permit such a practice invites a party to seek discovery from a corporate party opponent in the court where litigation is pending and for that same party to issue a multitude of third-party subpoenas to the employees of the corporate party opponent seeking the very same corporate documents or a variety of other corporate documents.  Particularly where a corporate party has employees throughout the United States, such a practice unduly increases the costs of litigation for the parties, unduly burdens the non-party corporate employees who receive subpoenas for corporate records, and wastes judicial resources.*

*Schaaf,* 233 F.R.D. at 455 (emphasis supplied).

The *Schaaf* court condemned the practice -- used by Plaintiffs in this action -- to evade the limitations on a court's scheduling order -- here, Judge Ramos' stay of party-to-party discovery -- through the issuance of a third party subpoena directed to third persons possessing a party's documents:

> [I]f the district court where the litigation is pending issued a scheduling order with specific limits on discovery (e.g., a limitation on the number of requests for production of documents), such a practice invites a party to seek to evade the requirements of such a scheduling order.

*Schaaf,* 233 F.R.D. at 455-56.  That is precisely what the Plaintiffs have attempted to do here. The Subpoena at issue, at its core, seeks UANI documents transmitted by UANI to Brick Factory.  The universe of responsive documents -- to the extent they are genuinely relevant to a

disputed issue in this case, which they are not[6] -- are the corporate documents of UANI.  Even if copies of responsive documents are in the hands of Brick Factory, they are still UANI corporate documents over which UANI has "possession, custody and control."  Rule 34 obligates UANI to produce them.  However, because party-to-party discovery has been stayed, UANI is entitled until the stay expires or is lifted to withhold production of responsive documents.  That entitlement extends to the production of UANI's corporate documents in the hands of Brick Factory.  At the very least, production of the Brick Factory documents should be deferred until the stay imposed by Judge Ramos terminates.

  **B.**  **The Court Should Quash the Subpoena Because the Documents**
      **Sought Are Within UANI's Possession, Custody and Control**

    The federal courts are charged under Rule 45 with protecting third parties such as Brick Factory from undue harassment and expense during the discovery process, especially when a subpoena is designed to obtain documents that should be requested from a party.  "Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party."  *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 2014 WL 3706653 at *3 (C.D. Cal. May 19, 2014).  Accordingly, "[a] court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation."  *Rocky Mt. Med. Mgt., LLC  v. LHP Hosp. Group, Inc.,* 2013 WL 6446704 at *4 (D. Idaho Dec. 9, 2013); *see also Precourt v. Fairbank Reconstruction Corp.,* 280 F.R.D. 462, 467 (D.S.D. 2011) ("If the party seeking information can easily obtain the same information without

---

[6] The existence, content and publication of UANI's website statements of the Plaintiffs is not in dispute.  UANI does not dispute that it published the statements.  What is in dispute, however, is whether UANI's statements were substantially true and, if not, whether they were uttered with actual malice.  Since a website host such as Brick Factory enjoys absolute immunity under 47 U.S.C. § 230(c)(1) from civil liability for defamation claims arising from the hosted content, *e.g., Ascentive LLC*, 842 F. Supp. 2d at 475-76; *Murawski*, 514 F. Supp. 2d at 591, it is obvious that the Subpoena is designed to obtain utterly nothing that is probative of a disputed issue in the case, but it is intended to harass UANI's valued website contractor.  The Subpoena is just another shameful example of Plaintiffs' calculated efforts to bludgeon anyone that either supports UANI or provides any services to it.

burdening the non-party, the court will quash the subpoena."); *Brown v. City of Syracuse,* 648 F. Supp. 2d 461, 466 (N.D.N.Y. 2009) (when balancing hardships between requesting party and non-party, court should consider whether there are other sources for obtaining the material); *Arthrex, Inc. v. Parcus Med., LLC,* 2011 WL 6415540 at *6 (S.D. Ind. Dec. 21, 2011) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same documents.").

Because UANI is in possession of the identical documents encompassed by the Subpoena, Plaintiff should be required to seek those documents from UANI, not Brick Factory. *Rocky Mt. Med. Mgt.,* 2013 WL 6446704 at *4; *Precourt,* 280 F.R.D. at 467.

## CONCLUSION

The Court should not permit Plaintiffs to evade Judge Ramos' stay order.  The responsive documents in Brick Factory's hands are, in fact, documents within the possession, custody and control of UANI.  They are, therefore, subject to Judge Ramos' stay.  Once the stay expires on September 12, 2014 or is otherwise lifted by the Court, Plaintiffs can obtain Defendants' communications with Brick Factory.  Furthermore, as noted above, the correct procedure is to allow Defendants to make that production, not to burden a third party via a subpoena.  *Schaaf,* 233 F.R.D. at 455-56.

Accordingly, Plaintiffs' Motion to Compel Production of Documents dated August 12, 2014 [ECF. No. 225-227] should be denied without prejudice to being renewed, if necessary, following the termination of the stay.

Dated:  August 22, 2014                                 Respectfully submitted,

                                                        By: s/ Brian J. Stack
                                                        STACK FERNANDEZ ANDERSON &
                                                        HARRIS, P.A.
                                                        Brian J. Stack, Esq.
                                                        E-mail:  bstack@stackfernandez.com

Brickell Bay Office Tower
1001 Brickell Bay Drive, Suite 2650
Miami, Florida  33131-4940
Tel. 305-371-0001
Fax. 305-371-0002

*Attorneys for Defendants American*
*Coalition Against Nuclear Iran, Inc. a/k/a*
*United Against Nuclear Iran, Mark D.*
*Wallace, David Ibsen, and Nathan Carleton*

By: s/  Lee S. Wolosky
BOIES, SCHILLER & FLEXNER LLP
Lee S. Wolosky, Esq.
575 Lexington Ave.
New York, NY 10022
Tel: (212) 446-2300
Email: lwolosky@bsfllp.com

Amy L. Neuhardt, Esq.
5301 Wisconsin Ave, N.W.
Washington, D.C. 20015
Tel: (202) 237-2727
Email: aneuhardt@bsfllp.com

Douglass A. Mitchell, Esq.
300 South Fourth St.
Suite 800
Las Vegas, NV 89101
Tel: (702) 382-7300
Email: dmitchell@bsfllp.com

*Attorneys for Defendants American*
*Coalition Against Nuclear Iran, Inc. a/k/a*
*United Against Nuclear Iran, Mark D.*
*Wallace, David Ibsen, and Nathan Carleton*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of August 2014 a true and correct copy of the foregoing was served on all counsel of record identified on the attached Service List in the manner specified.

s/  Brian J. Stack
Brian J. Stack

**SERVICE LIST**

*Restis, et al. v. American Coalition Against Nuclear Iran, Inc., et al.*
Case No.: 13-cv-5032 (ER)
United States District Court, Southern District of New York

Michael Bhargava, Esq.
Email: mbhargava@chadbourne.com
Jeremy Siegel, Esq.
Email: jsiegel@chadbourne.com
Abbe David Lowell, Esq.
Email: adlowell@chadbourne.com
**CHADBOURNE & PARKE, LLP**
1200 New Hampshire Avenue, N.W.
Washington, D.C.  20036
Tel.: (202) 974-5600
*Attorneys for Plaintiffs*

*Via CM/ECF*

Serine Consolino, Esq.
Email: sconsolino@chadbourne.com
Benjamin Bleiberg, Esq.
Email: bbleiberg@chadbourne.com
**CHADBOURNE & PARKE, LLP**
30 Rockefeller Plaza
New York, NY  10112
Tel.: (212) 408-5107
*Attorneys for Plaintiffs*

*Via CM/ECF*

Michael J. Byars, Esq.
Email: Michael.byars@usdoj.gov
David Stuart Jones, Esq.
Email: david.jones6@usdoj.gov
**UNITED STATES ATTORNEY'S OFFICE**
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York  10007
Tel.: (212) 637-2793
*Attorneys for US Government*

*Via CM/ECF*