UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                        :
VICTOR RESTIS, *et al.*,
                                                        :
                            Plaintiffs,
                                                        :
            v.                                                  13 Civ. 5032 (ER) (KNF)
                                                        :
AMERICAN COALITION AGAINST
NUCLEAR IRAN, INC., *et al.*,                           :
                                                        :
                            Defendants.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES OF AMERICA'S
MOTION TO INTERVENE, ASSERTION OF THE STATE SECRETS PRIVILEGE, AND
ITS RELATED MOTION TO DISMISS THE COMPLAINT**



STUART F. DELERY
Assistant Attorney General

KATHLEEN R. HARTNETT
Deputy Assistant Attorney General

JOSEPH H. HUNT
Director

ANTHONY J. COPPOLINO
Deputy Director

RYAN B. PARKER
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
Washington, D.C.

PREET BHARARA
United States Attorney for the
Southern District of New York

DAVID S. JONES
MICHAEL J. BYARS
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York   10007
Telephone:   (212) 637-2739/2793
Facsimile:   (212) 637-2730/2717
david.jones6@usdoj.gov
michael.byars@usdoj.gov

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT .........................................................................................................................5

I.   THE COURT SHOULD PERMIT THE UNITED STATES TO INTERVENE IN
     THIS ACTION, AND EXTEND THE STAY OF DISCOVERY ...........................................5

     A.  The Court Should Grant the United States' Application to Intervene ...............................5

     B.  The Court Should Extend the Stay of Discovery............................................................7

II.  THE COURT SHOULD UPHOLD THE UNITED STATES' ASSERTION OF
     THE STATE SECRETS PRIVILEGE.......................................................................................8

     A.  The State Secrets Privilege .........................................................................................8

     B.  The Government Has Properly Invoked the State Secrets Privilege Here........................12

III. THE COURT SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY .......................14

     A.  Dismissal Is Warranted Because Continued Litigation Would Risk
         Disclosure of Privileged Matters .................................................................................15

CONCLUSION.....................................................................................................................19

# TABLE OF AUTHORITIES

## CASES

Page

*Al-Aulaqi v. Obama*,
727 F. Supp. 2d 1 (D.D.C. 2010) ..................................................................14

*Al-Haramain Islamic Found., Inc. v. Bush*,
507 F.3d 1190 (9th Cir. 2007) .....................................................................14

*Bareford v. General Dynamics Corp.*,
973 F.2d 1138 (5th Cir. 1992) ...............................................................11, 17

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir. 2001)............................................................................5

*Clift v. United States*,
808 F. Supp. 101 (D. Conn. 1991) ...............................................................11

*Edmonds v. U.S. Dep't of Justice*,
323 F. Supp. 2d 65 (D.D.C. 2004) ...............................................................10

*El-Masri v. United States*,
479 F.3d 296 (4th Cir. 2007) ............................................................... *passim*

*Ellsberg v. Mitchell*,
709 F.2d 51 (D.C. Cir. 1983) ...................................................................9, 11

*Farnsworth Cannon, Inc. v. Grimes*,
635 F.2d 268 (4th Cir. 1980) .......................................................................16

*Fitzgerald v. Penthouse Int'l, Ltd.*,
776 F.2d 1236 (4th Cir. 1985) ............................................................ *passim*

*Halkin v. Helms*,
690 F.2d 977 (D.C. Cir. 1982) .........................................................9, 10, 11, 14

*In re Under Seal*,
945 F.2d 1285 (4th Cir. 1991) .......................................................................8

*In re United States*,
872 F.2d 472 (D.C. Cir. 1989) .......................................................................8

*Kasza v. Browner*,
133 F.3d 1159 (9th Cir. 1998) .....................................................................17

*Kronisch v. United States*,
No. 83 Civ. 2458, 1994 WL 524992 (S.D.N.Y. Sept. 27, 1994) ...............9, 11

*Mohamed v. Jeppesen Dataplan, Inc.*,
    539 F. Supp. 2d 1128 (N.D. Cal. 2008) ................................................. 6, 7

*Mohamed v. Jeppesen Dataplan, Inc.*,
    614 F.3d 1070 (9th Cir. 2010) ............................................................. 11, 15

*Northrop Corp. v. McDonnell Douglas Corp.*,
    751 F.2d 395 (D.C. Cir. 1984) .............................................................. 8, 11

*Sterling v. Tenet*,
    416 F.3d 338 (4th Cir. 2005) ................................................. *passim*

*Tachiona v. United States*,
    386 F.3d 205 (2d Cir. 2004) .................................................................. 6

*Tilden v. Tenet*,
    140 F. Supp. 2d 623 (E.D. Va. 2000) ..................................................... 9

*Trulock v. Wen Ho Lee*,
    66 F. App'x 472 (4th Cir. 2003) .......................................................... 12

*United States v. Reynolds*,
    345 U.S. 1 (1953) ...................................................... *passim*

*Zuckerbraun v. General Dynamics Corp.*,
    935 F.2d 544 (2d Cir. 1991) ...................................................... *passim*

## RULES

Fed. R. Civ. P. 24(a) ............................................................................. 5

Fed. R. Civ. P. 26(c)(1) ......................................................................... 8

**Preliminary Statement**

The United States of America respectfully submits this memorandum of law in support of its motion to intervene for purposes of asserting the state secrets privilege, its actual assertion of that privilege, and its related motion for dismissal.   This memorandum of law is also being submitted in support of the United States' application to extend the already-extant temporary stay of discovery.   These applications involve properly classified national security information that is described in relevant part in accompanying classified, *ex parte*, *in camera* submissions in further support of the Government's application.

As set forth further below, the Court should grant the United States' motion to intervene in this action in order to assert the state secrets privilege with respect to certain information at risk of disclosure in further litigation of plaintiffs' claims.   The Government's assertion of privilege underscores both the United States' compelling interest in this matter warranting its intervention to protect the privileged information, and the need for a continuation of the stay of discovery currently in effect to enable the Court to assess the United States' assertion of the state secrets privilege and the impact of that assertion on this action.   *See infra* at Point I.

The Court also should uphold the United States' invocation of the state secrets privilege. The head of the federal agency responsible for the information at issue has asserted a formal claim of privilege, based on his or her personal consideration of the matter, and has set forth why disclosure of the privileged information could reasonably be expected to cause serious damage to the national security.   Under well-established Supreme Court and Second Circuit precedent, that judgment is entitled to the "utmost deference," and the United States' assertion of the state secrets privilege accordingly should be upheld.   *See infra* at Point II.

Finally, in the circumstances of this case, assertion of the privilege should result in dismissal of the case in full.   If and when the Court determines that the state secrets privilege has properly been invoked, the privileged information would be excluded from the case entirely, and the Court then must determine the resulting impact on the litigation.   Because here further litigation of the case would be highly likely to risk disclosure of properly privileged matters, the case should be dismissed.   *See infra* at Point III.A.

## BACKGROUND

Plaintiffs, a Greek national engaged in the shipping business and related entities, commenced this action on July 29, 2013, later filing an amended complaint ("AC," Dkt. No. 34) asserting claims of defamation and other torts against a U.S.-based nonprofit known as the American Coalition Against Nuclear Iran, Inc., and three individual defendants (as well as "John Doe" defendants) associated with that organization.   The United States is not a party to the action.

The amended complaint alleges, in sum, that defendants falsely and maliciously made a serious of published attacks on plaintiffs as part of a strategy intended to "name and shame" those that defendants believed engaged in unlawful trade with Iran.   The amended complaint seeks compensatory and punitive damages based on six separate claims for relief.   *Id.*   Each cause of action rests on similar factual claims, namely, that defendants allegedly acted with malice and/or with knowledge or reckless indifference regarding the alleged falsity of defendants' statements concerning plaintiffs.   *See, e.g.*, AC ¶¶ 107-108 (in support of "Count I" asserting defamation, alleging defendants "knew and or recklessly disregarded" facts and "acted intentionally and with malice"); 115 (in support of "Count II" asserting tortious interference with prospective economic advantage, alleging defendants' conduct "was with malice and/or in reckless disregard for the truth"); 121 (in support of "Count III" asserting tortious interference with contract, alleging

defendants acted "with malice and/or in reckless disregard for the truth"); 126 (in support of "Count IV" asserting intentional infliction of emotional distress, alleging defendants engaged in a "deliberate and malicious 'name and shame' campaign of false and defamatory statements . . . with knowledge that the statements were untrue"); 135 (in support of "Count V" asserting negligent interference with prospective economic advantage, alleging that defendants "knew or should have known that their improper and unlawful campaign of defamation and disparagement, as alleged in detail above," would interfere with business activities and relations of Restis of which defendants were aware); 139 (in support of "Count VI" alleging prima facie tort, alleging that defendants "were singularly motivated by disinterested malevolence toward Plaintiffs").

An initial case management and pre-motion conference in anticipation of a motion to dismiss was held on October 3, 2013 (*see* Dkt. No. 18) and a minute order dated October 3, 2013 set a briefing schedule on threshold motions that was to run into December 2013. Soon thereafter the Court entered a discovery plan and scheduling order calling for non-expert depositions to conclude by May 1, 2014, with all discovery including expert discovery to conclude by July 3, 2014 (Dkt. No. 20). Defendants moved to dismiss (Dkt. Nos. 25-27), but, on December 11, 2013, the Court granted plaintiffs' request for leave to amend their complaint (Dkt. No. 33), and plaintiffs' amended complaint was filed (Dkt. No. 34). Following an application for a protective order, the Court scheduled a conference for February 14, 2014 (Dkt. No. 54).

An Assistant U.S. Attorney for the Southern District of New York attended the February 14 conference, and the Government informed the Court that the United States wished to have an opportunity to determine whether the Government had an interest in this action. Thereafter, the parties continued to litigate various discovery-related disputes, and, on April 2, 2014, the United States submitted a letter request seeking a limited stay of discovery to permit the United States to

assess a possible application of certain governmental privileges (Dkt. No. 98).   The Court approved that application, while directing the United States to submit a letter detailing the nature of the privilege(s) asserted; the United States promptly submitted such a letter (Dkt. Nos. 100, 107).   The Government subsequently requested four extensions of the stay of discovery to permit further deliberations regarding a possible governmental assertion of privilege (Dkt. Nos. 109, 151, 189, 210), and the Court approved each of these requests (Dkt. Nos. 119, 158, 192, 212).   That stay is now scheduled to expire on September 12, 2014 (Dkt. No. 212).

The United States has reviewed the pleadings and record in this case in order to determine whether discovery and further litigation is likely to risk disclosure of information in which the Government has a specific governmental privilege and whether the claims and defenses in this action can be adjudicated without the need for or risk of disclosure of privileged information.

The Government has concluded that information that would be at risk of disclosure in discovery and further proceedings is properly subject to the state secrets privilege and should be excluded from this case.   Further, because information subject to the state secrets privilege is inherently at risk of disclosure in further proceedings, the Government also seeks dismissal of this lawsuit.   The reasons for these determinations are set forth in classified declarations submitted in support of the United States' assertion of the state secrets privilege solely for the Court's *ex parte*, *in camera* review (the "State Secrets Privilege Declarations").

**ARGUMENT**

**POINT I**

**THE COURT SHOULD PERMIT THE UNITED STATES
TO INTERVENE IN THIS ACTION, AND EXTEND THE STAY OF DISCOVERY**

The Court should permit the United States to intervene in this action as of right, pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, so that the United States may effectively protect information subject to the state secrets privilege.   Similarly, in order to ensure that privileged information is not disclosed, the Court should extend the limited stay of discovery now in effect in this matter until the Court has had an opportunity to assess the United States' assertion of the state secrets privilege and the impact of that assertion on this litigation.

**A.     The Court Should Grant the United States' Application to Intervene**

The United States is entitled to intervention as of right pursuant to Rule 24(a).[1]   The Second Circuit has held that "a putative intervenor as of right must meet four criteria: the applicant must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties."   *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001) (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)).

The Government's application is timely.   The Government has made known its interest in assessing possible privilege in this case since it was first alerted to the case early this year, when discovery was just getting underway, and the United States has promptly and formally requested

---

1 "On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."   Fed. R. Civ. P. 24(a).

and was granted stays of discovery to permit its deliberations to occur before the parties conducted

substantial discovery or proceeded significantly beyond the threshold issues presented by the case.

To date, it does not appear that there has been any meaningful party discovery, specifically

including depositions of any defendant or of plaintiff Victor Restis.   Under such circumstances,

the United States' intervention is timely.   *See, e.g.*, *Mohamed v. Jeppesen Dataplan, Inc.*, 539 F.

Supp. 2d 1128, 1133 (N.D. Cal. 2008) (United States' motion to intervene to assert state secrets

privilege was timely where motion was filed early in litigation) ("*Mohamed I*").

Moreover, the United States has a concrete, unique and important interest in this

proceeding and is "so situated" that its interest is highly likely to be impaired unless it is permitted

to intervene.   As set forth in the State Secrets Privilege Declarations, absent the United States'

intervention, further proceedings in this matter risk the disclosure of information that is subject to

the state secrets privilege, and the United States must be allowed to protect this information.   *See*

*Mohamed I*, 539 F. Supp. 2d at 1133 (finding that United States had an "important interest" in

action, for purposes of intervention, because "[i]f the United States were not allowed to intervene,

its interest in maintaining state secrets could be harmed").   And only the United States has the

authority to invoke the state secrets privilege over information sought in discovery.   *See, e.g.*,

*United States v. Reynolds*, 345 U.S. 1, 7-8 (1953); *Zuckerbraun v. General Dynamics Corp.*, 935

F.2d 544, 546 (2d Cir. 1991); *see also Mohamed I*, 539 F. Supp. 2d at 1133 (finding that United

States interest was not adequately represented by private litigant, who "cannot assert state secrets

privilege on behalf of the government"); *cf. Tachiona v. United States*, 386 F.3d 205, 211-12 (2d

Cir. 2004) (where United States was nonparty that submitted statement of interest to district court

in suit against foreign officials and then intervened to pursue appeal where no other party

appeared, intervention was "both proper and prudent," and United States' foreign affairs interests

- 6 -

were sufficiently unique and concrete to give it standing to prosecute appeal).   Moreover, the parties who are prosecuting and defending the claims in this action have materially different interests than the United States.   Only the United States can protect its interest in this matter.

In sum, the United States' intervention here is timely, and absent intervention, information protected from disclosure by the state secrets privilege may be revealed and cause harm to national security.   Accordingly, the Court should grant the United States' application to intervene as of right.   *See Zuckerbraun*, 935 F.2d at 546 (noting United States' intervention in private litigation and assertion of state secrets privilege); *Mohamed I*, 539 F. Supp. 2d at 1133 (granting United States' motion to intervene for purpose of asserting state secrets privilege).

## B.   The Court Should Extend the Stay of Discovery

The Court should continue its stay of discovery in this matter to ensure that the subject information is not revealed before the Court has had an opportunity to assess the United States' invocation of the state secrets privilege and its impact on this litigation.   As set forth more fully below, if the Court determines that the United States has properly invoked the state secrets privilege, it should then consider whether dismissal of the action is necessary as a consequence of the exclusion of the privileged information.   *See infra* at Point III.

The United States seeks to extend the stay to allow the Court to rule first whether the United States has properly invoked the state secrets privilege; and second, whether the United States' invocation of the state secrets privilege warrants dismissal of the action (which of course would render moot and so eliminate the need for any discovery).   The United States' invocation of the state secrets privilege, as described in the State Secrets Privilege Declarations, plainly

establishes good cause for a limited stay of discovery under these circumstances.   *See* Fed. R. Civ.

P. 26(c)(1).

## POINT II

### THE COURT SHOULD UPHOLD THE UNITED STATES' ASSERTION OF THE STATE SECRETS PRIVILEGE

As set forth in the State Secrets Privilege Declarations, the United States has properly

invoked the state secrets privilege.   Upon the United States' intervention, this Court should

uphold the United States' assertion of that privilege.   Further, while the United States takes this

position reluctantly and only after careful consideration, the only appropriate course in light of this

privilege assertion is to dismiss this action in its entirety.

### A.      The State Secrets Privilege

"The state secrets privilege is a common law evidentiary rule that allows the government to

withhold information from discovery when disclosure would be inimical to national security."

*Zuckerbraun*, 935 F.2d at 546; *see also Reynolds*, 345 U.S. at 6-7 (state secrets privilege "is well

established in the law of evidence"); *In re Under Seal*, 945 F.2d 1285, 1287 n.2 (4th Cir. 1991)

("The common law recognizes a privilege for military and state secrets the disclosure of which

would compromise [the] public interest."); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d

395, 399 (D.C. Cir. 1984) ("The 'state secrets' privilege . . . is a privilege developed in common

law protecting information vital to the nation's security or diplomatic relations.").

As a manifestation of the President's Article II powers to conduct foreign affairs and

provide for the national defense, the state secrets privilege is "a privilege protected by

constitutional principles of separation of powers."   *In re United States*, 872 F.2d 472, 482 (D.C.

Cir. 1989); *see also El-Masri v. United States*, 479 F.3d 296, 303-04 (4th Cir. 2007) ("Although

the state secrets privilege was developed at common law, it performs a function of constitutional significance, because it allows the executive branch to protect information whose secrecy is necessary to its military and foreign-affairs responsibilities."). "The various harms, against which protection is sought by invocation of the privilege, include impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments." *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983) (footnotes omitted). The state secrets privilege belongs exclusively to the Executive Branch. *Zuckerbraun*, 935 F.2d at 546.

The elements of a state secrets assertion were set forth in the seminal case of *United States v. Reynolds*, 345 U.S. at 7-8. The United States may invoke the privilege by making a "[1] formal claim of privilege, [2] lodged by the head of the department which has control over the matter, after [3] actual personal consideration by that officer." *Id.* (footnotes omitted); *Zuckerbraun*, 935 F.3d at 546 ("The privilege must be claimed by the head of the department with control over the matter in question after personal consideration by that officer."). The assertion of the privilege is thus a policy decision made at the highest level of the agency concerned that disclosure of the information at issue would be harmful to national security or foreign relations. *Halkin v. Helms*, 690 F.2d 977, 996 (D.C. Cir. 1982) ("*Halkin II*").

Once the state secrets privilege is formally asserted, "the scope of judicial review is quite narrow." *Kronisch v. United States*, No. 83 Civ. 2458, 1994 WL 524992, at *10 (S.D.N.Y. Sept. 27, 1994) (Buchwald, M.J.), *aff'd*, 1995 WL 303625 (S.D.N.Y. May 18, 1995) (Wood, J.), *aff'd*, 150 F.3d 112 (2d Cir. 1998); *Tilden v. Tenet*, 140 F. Supp. 2d 623, 626 (E.D. Va. 2000) ("Once the privilege is invoked, the role of the court is a limited one."). "[A]lthough the privilege is not to be

lightly invoked, the court must accord the 'utmost deference' to the executive's determination of the impact of disclosure on military or diplomatic security."   *Zuckerbraun*, 935 F.2d at 547 (citation omitted) (quoting *Halkin v. Helms*, 598 F.2d 1, 9 (D.C. Cir. 1978) ("*Halkin I*")); *El-Masri*, 479 F.3d at 303-05.

As the Supreme Court made clear in *Reynolds*, in evaluating an assertion of the state secrets privilege, the sole determination for the court is whether, "from all the circumstances of the case, . . . there is a reasonable danger that compulsion of the evidence will expose military [or other] matters which, in the interest of national security, should not be divulged."   *Reynolds*, 345 U.S. at 10; *Zuckerbraun*, 935 F.2d at 546-47 ("A court before which the privilege is asserted must assess the validity of the claim of privilege, satisfying itself that there is a reasonable danger that disclosure of the particular facts in litigation will jeopardize national security.").

In assessing whether the government has demonstrated a "reasonable danger" to national security, "the court must not 'forc[e] a disclosure of the very thing the privilege is designed to protect.'"   *Zuckerbraun*, 935 F.2d at 547 (quoting *Reynolds*, 345 U.S. at 8) (alteration in original). In that regard, it is well settled that a court may review classified submissions *ex parte* and *in camera* to determine whether the state secrets privilege has been properly invoked.   *See, e.g.*, *Sterling v. Tenet*, 416 F.3d 338, 342, 344, 347 (4th Cir. 2005) (upholding state secrets assertion based on classified declaration reviewed by district court *in camera*); *Edmonds v. U.S. Dep't of Justice*, 323 F. Supp. 2d 65, 75-76 (D.D.C. 2004) (noting appropriateness of asserting privilege with less specificity on public record where United States submits classified submissions with greater particularity), *aff'd*, 2005 WL 3696301 (D.C. Cir. May 6, 2005).   The Government is making such an *ex parte*, classified submission in support of this motion.

- 10 -

While a party's litigation need for particular information may be relevant in determining "how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate," *Reynolds*, 345 U.S. at 11; *see also Kronisch*, 1994 WL 524992, at *11; *Clift v. United States*, 808 F. Supp. 101, 106 (D. Conn. 1991), "even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that [state] secrets are at stake," *Reynolds*, 345 U.S. at 11; *Zuckerbraun*, 935 F.2d at 547.   Thus, in evaluating a claim of state secrets privilege, courts do not balance the interests of the United States in protecting its secrets against the interests of a litigant in obtaining a remedy for an alleged injury.   That balance has already been struck in favor of protection of state secrets.   *See Reynolds*, 345 U.S. at 10-11; *Northrop*, 751 F.2d at 399 (state secrets privilege "cannot be compromised by any showing of need on the part of the party seeking the information"; "a party's need for the information is not a factor in considering whether the privilege will apply"); *accord El-Masri*, 479 F.3d at 306; *Sterling*, 416 F.3d at 343, 345; *Ellsberg*, 709 F.2d at 57; *Halkin II*, 690 F.2d at 990.

The Government may invoke the state secrets privilege and seek dismissal even when, as in this case, it is not a party to the litigation.   *See, e.g.*, *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070 (9th Cir. 2010) (Government intervened, asserted the state secrets privilege, and sought dismissal of suit between foreign nationals and private company that allegedly assisted the CIA with its extraordinary rendition program) ("*Mohamed II*"); *Bareford v. General Dynamics Corp.*, 973 F.2d 1138 (5th Cir. 1992) (Government intervened, asserted the state secrets privilege, and moved to dismiss suit by private parties against defense contractors); *Zuckerbraun*, 935 F.2d 544 (Government asserted state secrets privilege and moved to dismiss wrongful death suit against manufacturers of missile defense systems).   Indeed, the Government has previously intervened to

assert the state secrets privilege in cases, like this one, where private parties are litigating

defamation claims.   *See, e.g.*, *Fitzgerald*, 776 F.2d 1236 (Government intervened, asserted the

state secrets privilege, and sought dismissal of a defamation suit by an individual who claimed that

a magazine had libelously charged him with espionage); *Trulock v. Wen Ho Lee*, 66 F. App'x 472

(4th Cir. 2003) (Government intervened, asserted the state secrets privilege, and sought dismissal

of suit by former government official alleging that other government officials had defamed him).

While it may appear unfair for the Government to seek dismissal of a case between private parties,

courts have recognized that unfairness to private litigants may be necessary to protect a greater

public value.   *See, e.g.*, *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1238 n.3 (4th Cir.

1985) ("When the state secrets privilege is validly asserted, the result is unfairness to individual

litigants – through loss of important evidence or dismissal of a case – in order to protect a greater

public value.").

**B.     The Government Has Properly Invoked the State Secrets Privilege Here**

As set forth in the State Secrets Privilege Declarations submitted for *ex parte* and *in

camera* review, the United States has properly invoked the state secrets privilege in this case with

respect to information relating to plaintiffs' claims.   A formal claim of privilege has been asserted

by the head of the concerned federal agency based upon his or her personal consideration of the

matter.   *See Reynolds*, 345 U.S. at 7-8; *Zuckerbraun*, 935 F.2d at 546.   As also detailed in the

accompanying *ex parte*, classified submission, the Government has adhered to the requirements

set forth in the September 23, 2009, Justice Department policy memorandum titled Policies and

Procedures Governing Invocation of the State Secrets Privilege, available at

http://www.justice.gov/opa/documents/state-secret-privileges.pdf.

- 12 -

As the State Secrets Privilege Declarations also explain, the identity of the concerned federal agency, the particular information at issue, and the bases for the assertion of the state secrets privilege cannot be disclosed without revealing classified and privileged matters.   The State Secrets Privilege Declarations set forth in detail the factual bases for the agency head's determination that disclosure of the information at issue reasonably could be expected to cause serious damage to the national security.

These declarations amply satisfy the United States' burden of establishing a "reasonable danger" that disclosure of the privileged information would be detrimental to national security. *See Reynolds*, 345 U.S. at 9-10 (where the court, "from all the circumstances of the case," is satisfied that "there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged," "the occasion for the privilege is appropriate, and the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers").   This determination is entitled to the "utmost deference."   *Zuckerbraun*, 935 F.2d at 547 (citation and internal quotation marks omitted); *see also El-Masri*, 479 F.3d at 305 (observing that deference is appropriate "not only for constitutional reasons," but because "the Executive and the intelligence agencies under his control occupy a position superior to that of the courts in evaluating the consequences of a release of sensitive information").

The Court accordingly should uphold the United States' assertion of the state secrets privilege.

- 13 -

## POINT III

## THE COURT SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY

"Once properly invoked, the effect of the [state secrets] privilege is to exclude the [privileged] evidence from the case." *Zuckerbraun*, 935 F.2d at 546; *see also El-Masri*, 479 F.3d at 306 ("a court's determination that a piece of evidence is a privileged state secret removes it from the proceedings entirely"). Thus, in the event the Court allows the United States to intervene and upholds its invocation of the state secrets privilege, the Court must determine the effect on the litigation of the unavailability of the privileged information. *See Halkin II*, 690 F.2d at 991; *El-Masri*, 479 F.3d at 304 (after ascertaining that the procedural requirements for invoking the state secrets privilege have been satisfied, and deciding whether the information sought to be protected qualifies as privileged information under the state secrets doctrine, "the ultimate question to be resolved is how the matter should proceed in light of the successful privilege claim"); *accord Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1202 (9th Cir. 2007).

As set forth generally below and in detail in the State Secrets Privilege Declarations, the privileged information is at risk in further litigation of plaintiffs' claims.[2]

---

2  Before reaching the question of dismissal pursuant to the state secrets privilege, the Court should consider alternative bases for dismissal or narrowing of the action. Dismissal under the state secrets doctrine should be avoided where a reasonable alternative exists. *See Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 53-54 (D.D.C. 2010) (stating that the Government "also correctly and forcefully observe[d] that this Court need not, and should not, reach their claim of state secrets privilege because the case can be resolved on the other grounds they have presented," and declining to address privilege). For example, Count V of the Amended Complaint asserts Negligent Interference with Prospective Economic Advantage, *see* Dkt. No. 34 ¶¶ 132-137, a cause of action that is not recognized under New York law, as defendants explained in their memorandum of law in support of their motion to dismiss. *See* Dkt. No. 26 at 17 (citing *Bishop v. Porter*, No. 02-cv-9452, 2003 WL 21032011, at *12 (S.D.N.Y. May 8, 2003)). Plaintiffs appear to concede the point, in that they did not counter defendants' argument in their opposition to the

- 14 -

A.    **Dismissal Is Warranted Because Continued Litigation Would Risk Disclosure of Privileged Matters**

As the Second Circuit has recognized, "[i]n some cases, the effect of an invocation of the privilege may be so drastic as to require dismissal." *Zuckerbraun*, 935 F.2d at 547.   First, dismissal is warranted if the unavailability of the privileged information precludes either plaintiff or defendants from presenting their respective claims or valid defenses.   *See id.*   "Thus, if proper assertion of the privilege precludes access to evidence necessary . . . to state a *prima facie* claim," or "so hampers [a party] in establishing a valid defense that the trier [of fact] is likely to reach an erroneous conclusion," then "dismissal is proper."   *Id.*   In addition, dismissal is also warranted where further proceedings in the action, including discovery proceedings, would inherently "threaten disclosure of the privileged matters."   *Fitzgerald*, 776 F.2d at 1241-42 (4th Cir. 1985); *see also Mohamed II*, 614 F.3d at 1083 (even if the claims and defenses might theoretically be established without privileged evidence, "it may be impossible to proceed with the litigation because—privileged evidence being inseparable from nonprivileged information that will be necessary to the claims or defenses—litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets.")

Application of these principles in this case requires dismissal of this action. First, the information as to which the United States asserts the state secrets privilege is sufficiently material both to plaintiffs' causes of action, and to defendants' defenses thereto, that there is no discrete portion of this action that could be fully and fairly litigated without risking the disclosure of the privileged information.   The reasons for this conclusion are detailed in the State Secrets Privilege Declarations.   While the United States takes no position on the ultimate merits of

motion, *see* Dkt. No. 40, and no longer assert this cause of action in their proposed Second Amended Complaint, *see* Dkt. No. 148-1.

plaintiffs' claims, its invocation of the state secrets privilege would preclude the parties from

adducing evidence without which there could be no full and fair litigation of this case.   *See, e.g.*,

*Sterling*, 416 F.3d at 347.   Without such information, as the State Secrets Privilege Declarations

make clear, the parties would be "hamper[ed]" in presenting their cases and defenses, creating a

serious risk that "the trier [of fact] is likely to reach an erroneous conclusion."   *Zuckerbraun*, 935

F.3d at 547.   The Court accordingly should dismiss this action.   *See id.* (dismissal proper where

application of the privilege "will prevent the defendant from establishing a valid defense"); *see

also El-Masri*, 479 F.3d at 309-10 (affirming dismissal of *Bivens* action because, among other

things, "the defendants could not properly defend themselves without using privileged evidence");

*Sterling*, 416 F.3d at 347 (same for Title VII action).

    Second, dismissal is also warranted here on the ground that further proceedings in this

action, including discovery proceedings, would inherently "threaten disclosure of the privileged

matters."   *Fitzgerald* , 776 F.2d at 1241-42.   For example,

> [i]n examining witnesses with personal knowledge of [the privileged matters], the
> parties would have every incentive to probe dangerously close to the state secrets
> themselves.   In these circumstances, state secrets could be compromised even
> without direct disclosure by a witness.

*Fitzgerald*, 776 F.2d at 1243; *see also Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 281 (4th

Cir. 1980) (*en banc*) ("In an attempt to make out a *prima facie* case during an actual trial, the

plaintiff and its lawyers would have every incentive to probe as close to the core secrets as the trial

judge would permit.   Such probing in open court would inevitably be revealing.").

    This problem is exacerbated by the fact that "the trial lawyers would remain unaware of the

scope of exclusion of information determined to be state secrets."   *Farnsworth Cannon*, 635 F.2d

at 281.   Thus,

> [i]nformation within the possession of the parties on the periphery of the
> suppression order would not readily be recognized by counsel, unaware of the
> specific contents of the affidavit [asserting the state secrets privilege], as being
> secret or clearly having been suppressed by the general order of the district court.

*Id.*   This particular concern alone warrants dismissal.   The United States cannot publicly specify the particular information that is privileged, other than to state that the information is directly implicated by and at risk of disclosure in further litigation of plaintiffs' claims.

Although dismissal of claims is undeniably a harsh result, "the results are harsh in either direction" because harm to national security is also at issue, and "the state secret doctrine finds the greater public good – ultimately the less harsh remedy – to be dismissal."   *Bareford*, 973 F.2d at 1144; *accord Kasza v. Browner*, 133 F.3d 1159, 1167 (9th Cir. 1998).   In cases implicating national security information, a plaintiff's "personal interest in pursuing his civil claim is subordinated to the collective interest in national security."   *El-Masri*, 479 F.3d at 313; *see also Sterling*, 416 F.3d at 348 ("We recognize that our decision places, on behalf of the entire country, a burden on [plaintiff] that he alone must bear. . . .   Yet there can be no doubt that, in limited circumstances like these, the fundamental principle of access to court must bow to the fact that a nation without sound intelligence is a nation at risk.").   Thus, dismissal should not be taken to mean that any of the alleged defamatory statements concerning the plaintiffs and their activities that are at issue in this lawsuit are either true or false.   Dismissal pursuant to the privilege is not an adjudication on the merits of the claims, is not being sought by the United States on behalf of the defendants, and should not be understood to reflect a favorable or unfavorable determination as to the truth or falsity of defendants' statements, nor as to the merits of the parties' claims and defenses in this matter.   Rather, privilege is being asserted, and dismissal is being sought by the United States, solely to protect against a reasonable danger of harm to national security interests.

- 17 -

Accordingly, where as here, further discovery or other litigation proceedings would risk disclosure of properly protected national security matters, courts have recognized that dismissal is appropriate.  *See Fitzgerald*, 776 F.2d at 1238 n.3 ("When the state secrets privilege is validly asserted, the result is unfairness to individual litigants – through the loss of important evidence or dismissal of a case – in order to protect a greater public value."), *quoted in Sterling*, 416 F.3d at 348, and *El-Masri*, 479 F.3d at 313.

- 18 -

## CONCLUSION

For the reasons stated above, the Court should: (1) permit the United States to intervene in this action; (2) extend the existing stay of discovery in this action pending the Court's determination of the United States' motion for dismissal; (3) uphold the United States' invocation of the state secrets privilege; and (4) dismiss the amended complaint.

Dated: New York, New York
      September 12, 2014

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>STUAR F. DELERY<br>Assistant Attorney General</td><td>PREET BHARARA<br>United States Attorney for the<br>Southern District of New York<br><em>Attorney for the United States of America</em></td></tr>
<tr><td>KATHLEEN R. HARTNETT<br>Deputy Assistant Attorney General</td><td></td></tr>
<tr><td>JOSEPH H. HUNT<br>Director</td><td>By:    <em>s/ Michael J. Byars</em>    <br>     DAVID S. JONES<br>     MICHAEL J. BYARS</td></tr>
<tr><td>ANTHONY J. COPPOLINO<br>Deputy Director</td><td>Assistant United States Attorneys<br>86 Chambers Street, 3rd Floor<br>New York, New York   10007</td></tr>
<tr><td>RYAN B. PARKER<br>Trial Attorney</td><td>Telephone:   (212) 637-2739/2793<br>Facsimile:   (212) 637-2730/2717<br>david.jones6@usdoj.gov<br>michael.byars@usdoj.gov</td></tr>
<tr><td>Civil Division<br>Federal Programs Branch<br>U.S. Department of Justice<br>20 Massachusetts Avenue, N.W.<br>Washington, D.C.   20001<br>Telephone:   (202) 514-4782</td><td></td></tr>
</table>