EA89RESC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  VICTOR RESTIS, ET AL.,

4                  Plaintiffs,

5           v.                           13 CV 5032 (ER)

6  AMERICAN COALITION AGAINST
   NUCLEAR IRAN, ET AL.,
7
                   Defendants.
8
   ------------------------------x
9                                    New York, N.Y.
                                     October 8, 2014
10                                   2:00 p.m.

11 Before:

12                 HON. EDGARDO RAMOS

13                                         District Judge

14

15

16

17

18

19

20

21

22

23

24

25

EA89RESC

1                                  APPEARANCES

2  CHADBOURNE & PARKE LLP
        Attorneys for Plaintiffs Victor Restis and Enterprises
3  Shipping and Trading S.A.
   BY:  ABBE DAVID LOWELL
4            MICHAEL BHARGAVA

5  BOIES, SCHILLER & FLEXNER LLP
   BY:  LEE S. WOLOSKY
6            DOUGLASS A. MITCHELL
                        -and-
7  STACK FERNANDEZ ANDERSON & HARRIS, P.A
   BY:  BRIAN JOSEPH STACK
8        Attorneys for Defendant American Coalition Against Nuclear
   Iran, Inc.

9

10 PREET BHARARA
        United States Attorney for the
        Southern District of New York
11 MICHAEL J. BYARS
   DAVID S. JONES
12      Assistant United States Attorneys
                        -and-
13 U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION
        FEDERAL PROGRAMS BRANCH
14 BY:  ANTHONY J. COPPOLINO
            RYAN BRADLEY PARKER

15

16

17

18

19

20

21

22

23

24

25

EA89RESC

1                    (In open court; case called)

2                    THE COURT:  Good afternoon to you all.

3                    I guess we are here primarily, although we have a

4        number of things to do, primarily at the request of plaintiff

5        Mr. Restis for leave to file a motion to request or require the

6        government to give further factual background for its request

7        in the first instance to intervene and secondly to dismiss

8        Mr. Restis' complaint on the basis of the state secrets

9        privilege.

10                   So let me begin by asking you, Mr. Lowell, do you have

11       any objection to the government's motion to intervene?

12                   MR. LOWELL:  No, your Honor.

13                   THE COURT:  And Mr. Wolosky, on behalf of the

14       defendants, do you object to the government's motion to

15       intervene?

16                   MR. WOLOSKY:  We do not, your Honor.

17                   MR. LOWELL:  Can I qualify what I said now that I

18       remember.  Obviously none based on what appears to be, based on

19       what they will say, a legitimate reason to put forward their

20       position of interest.

21                   What we've objected to, back even to last spring, was

22       them doing so, even at the intervention level, without

23       providing sufficient public disclosure.

24                   But since that will now merge to the other issues,

25       that's a better said way for me to explain myself.

EA89RESC

1          THE COURT:  Very well.  In that event I'm going to go

2     ahead and grant the government's motion to intervene.

3          Does the caption have to be amended accordingly?

4          MR. BYARS:  I believe so, your Honor.

5          THE COURT:  I believe I have seen captions with

6     parties identified as intervenors.

7          So let me begin with you, Mr. Lowell.  What are you

8     asking for and why?

9          MR. LOWELL:  Your Honor, first of all, is it okay to

10     address your Honor from here or would you like --

11          THE COURT:  You can stand.  You can sit.  You can use

12     the podium.  Whatever makes you most comfortable.

13          MR. LOWELL:  Couldn't possibly sit and talk to a court

14     so if you don't mind I'll stand.  Thank you.

15          What we're asking for, I think, is to put this case

16     into the context of all the other cases that we could find, and

17     there are a considerable number.  We understand the theoretical

18     basis that the government is putting forward.  By that I mean I

19     understand, now that they have centered their request around

20     the state secrets privilege, that a state secrets privilege

21     exists.  No quarrel.

22          I understand that the government can, on certain

23     circumstances, be permitted to assert that in what is otherwise

24     a dispute between private parties, although I will still point

25     out that it is the rarity for the assertion of the state

EA89RESC

 1  privilege.  But I understand that that theoretically exists as

 2  well.

 3          I understand that on some occasions when there is that

 4  rarity that supports the intervention, that supports the

 5  assertion, that it could, in even more rare circumstances, end

 6  a case between private parties.  That's all in the textbooks.

 7          What is not the case is that it hasn't been done

 8  according to the cases in the textbooks.  What we are asking

 9  for is at least to conform the government's interests to put

10  its position forward to what is in all the other cases.

11          We have, for example, in our papers we have a chart

12  that we will submit to the Court as maybe Plaintiffs' Hearing

13  Exhibit No. 1, a list of the cases that we could find.

14          Your Honor there are 23 such cases that we found on

15  our list; 23 cases in which the government, in some fashion or

16  another, either because they're a party defendant or they're so

17  closely allied with a party defendant, have asserted the state

18  secret.  I don't know if you'd be surprised but I have to tell

19  you that I was surprised to know that in each 23 of them there

20  was a public affidavit that was made part of the proceedings.

21  And this was a public affidavit made part of the proceedings in

22  cases which on their face present, at least to the observer,

23  let alone the parties that are litigating, quite a significant

24  more serious issue; such as the defense of whether or not the

25  United States engages in torture; such as whether the United

EA89RESC

States or its contractors made a faulty plane, boat, ship,
missile that caused a United States service person to be
killed; such as whether the United States goes outside the
boundaries of the law in order to wiretap, etc.

        In each of those circumstances, you have affidavits
from the Attorney General, the Department of the Defense,
numerous from the heads of the CIA, or the Director of National
Intelligence.  And I could go on.  I won't waste the Court's
time.

        THE COURT:  Obviously, the list of horribles that you
indicated are, the court agrees, inherently serious.  But have
you been -- but that doesn't mean that there aren't other bases
on which to assert the state secret privilege.

        MR. LOWELL:  Totally.  There have even been
interventions, as the government would like to point out on the
few cases they have, in which the government has intervened and
sought to assert a privilege when it is even a defamation
action and they have cited to a few of those cases.  And we
have pointed out in our correspondence to the court why those
are even different.  I think by explaining the difference I
will make the point as to what we're asking the court to order
next.

        So in each of those cases, for example, again what was
clear from the context of the assertion on its face was the
connection by the government to the party in the dispute.

EA89RESC

1           For example, in the Wen Ho Lee case, or in the

2    Fitzgerald v. Penthouse case, what is clearly at stake in the

3    actual substance of the dispute is the classified information

4    that the government doesn't want to have be revealed; that is

5    to say, that, for example, in the Fitzgerald case the plaintiff

6    was a CIA contractor working on a classified program.  The

7    allegations that led to that defamation case was the magazine's

8    allegation that he leaked classified information.  Therefore it

9    is, in the context, able to be seen why there might be a proper

10   assertion even before there was an affidavit.

11          Nevertheless, even in those private cases, the

12   less-than-horrible cases, those too have public disclosures.

13   So, for example, in the one I just mentioned to you Fitzgerald,

14   you have a public affidavit by the Secretary of Navy.  In the

15   Wen Ho Lee case you had some affidavit.  I don't know who it

16   was, it was the Department of Energy, I think, person.

17          So what is different, to begin with, in the process so

18   far is that this is the first case we can find that the

19   government wants to say all it has to say in an ex parte way

20   with no public disclosure whatsoever.

21          That just offends the normal notions of how litigation

22   is supposed to go, how we're supposed to see the wonderful sun

23   shining through the windows here today, in order to be able to

24   create something of a process of adversarial nature so we can

25   assist the court in assessing.

EA89RESC

1          THE COURT:  I just want to make sure that I understand

2     you correctly.  So you have not been able to find any case

3     where the government is asserting a state secret privilege

4     where some public disclosure --

5          MR. LOWELL:  We have not found one.

6          THE COURT:  So this would be the first one.

7          MR. LOWELL:  The first one that we can find, yes, and

8     in numerous contexts.

9          What makes that also odd, as I said, your Honor, is

10    that the context of this doesn't elucidate the issue.  You have

11    a private foreign business person and his companies bringing a

12    private defamation suit against a private nonprofit entity in

13    the United States; that it made allegations against him about

14    his conduct, which he says are false and defamatory.

15         In the cases that have occurred you can tell from the

16    complaint itself what might be the government's interest.  So

17    you can't even glean that from the circumstances of this case.

18    I mean the most obvious ones and the ones in which the state

19    secrets privilege has been asserted very frequently is when

20    there's an alignment between a party like the defendant, who is

21    a government contractor.  The classic case is the one itself

22    that sort of starts it, in the Reynolds case, where there's a

23    crash of a plane and the plaintiff's -- the pilot's widow sues

24    the government.  The contractor says I can defend how I built

25    the plane the way I did because I did it according to

EA89RESC

government specs, so I need to get into the government specs.

The government comes in and says you can't reveal the

government specs because that would give publicity to something

that is, in fact, a military secret.  You can tell.

Here, you can't tell.  One of the things that happened

was six months ago was when I met you on the phone for the

first time and I think in that conversation we had you stated

what I stated and you said in quotes -- I don't mean to quote

it directly, but of course you remember.  The point was I

raised:  I don't understand the context.  You said:  I, like

you, Mr. Lowell, have a great number of questions about how it

is that the various privileges can be asserted in the context

of this case.  And then you went on to say:  I am particularly

concerned that the defendants are able to utilize certain

information in its public statements and then not have to

answer to their actions on the basis of the privilege.  And

then you went on from there.

So I guess to take it in small bite steps.  The first

thing is now that the government is intervening and they're

saying we're intervening for the purposes:  A. assert the

privilege; B. have this private case dismissed outright, I mean

the death penalty to a piece of private litigation.  Both of

those are extraordinary events.  And the question is:  Can all

of that occur with the government simply saying to your Honor

here's the things we're going to give you privately, we're

EA89RESC

1      going to make no public disclosures and, trust us, we're the

2      government.

3              What we've learned from all of these cases is that

4      you're not supposed to trust the government.  You're not

5      supposed to trust them because the history of the assertion of

6      the state privilege shows that they have overstated that

7      privilege on more than a dozen -- on more than a half a dozen

8      occasions.  One court has even said that the government's

9      assertion in this circuit was a fraud on the court because it

10     was not properly asserted.

11             So at least there's reason to be sceptical.  And we

12     can't do our job and we think you can't do your job without

13     giving the ability of some adversarial aspects which cannot

14     happen with everything being done in the darkness of an ex

15     parte proceeding.  So we'd like more information.

16             THE COURT:  Now I believe you started off by saying,

17     and you may -- I don't know whether you want to qualify this or

18     whether it's qualifiable -- but you said that you accept that

19     the state secrets privilege exists.

20             MR. LOWELL:  There's such a thing as a state secrets

21     privilege.  I get that.  They're not creating something that

22     never existed until Restis v. UANI.

23             THE COURT:  And even though, I mean I'll take you at

24     your word as I sit here that it has never happened in a case

25     involving private litigants, etc. before where the government

1    asserted the state secret privilege and provided no public

2    disclosure.  The case law seems to suggest that we can proceed

3    on that basis.  There's nothing in the case law that would

4    prevent me from relying solely on the government's disclosure.

5            MR. LOWELL:  I can't say it the way you say it, your

6    Honor.  So let me try to respond.

7            That's not a question for which I can say yes because

8    the general language that says things like:  Of course, there

9    are occasions in which the very assertion of the privilege and

10   its justification would in fact imperil the very privilege to

11   begin with, and then goes on from there.  I agree that that

12   word/phrase can be found in some case, somewhere.  Okay.

13           But then its application in every case we can find has

14   never got us to that result.  So you have a theoretical, not a

15   holding of any case, I don't think.  In fact, I think we have

16   pointed out to the court that in a couple of cases we have said

17   to you -- and I think one of these is, again, the circuit

18   cases -- where we have told you in the Second Circuit -- I may

19   not say the name of the case right -- Abuhamra case where the

20   court seems to suggest that the ex parte nature of what they

21   are allowing could occur "to corroborate" the argument that

22   occurred in open court and went on to say that it should be

23   "the sole basis" for the government's assertion.

24           So I might agree that if we were in a classroom and

25   there's a language in the original Supreme Court case or some

EA89RESC

1    other case that says it.  But then if you apply it in reality,

2    it doesn't happen.

3              So I don't know that unless we go through a lot of

4    hoops, and those hoops include the factual context of

5    explaining what the relationship between defendant UANI and the

6    government is such that this alignment -- the record should

7    show that the government is sitting at the defense table.

8              THE COURT:  The record should show there's only two

9    tables.

10             MR. LOWELL:  But they had a choice.

11             In any event, what has to happen is that for you to

12   get to apply that language in the general case, you have to at

13   least put it in the context.  So I'm loathe to disagree with

14   the Court that a theoretical ability exists.  But I believe it

15   would be error of us that uses the phraseology of the Courts

16   that says it shouldn't happen unless you do A, B, C, D and E to

17   ask you to do A, B, C, D and E.  And I think it would be error

18   for the court to just say well, you know what, because the law

19   theoretically allows an ex parte proceeding from first to last,

20   then I can do it, without making sure that this is that

21   exceptional rule.

22             One of the things we said in our motion papers to you

23   is:  Is this the case?  Is this the only case?  This is it?

24   After all the torture, rendition, eavesdropping, military

25   secrets, this is the case that stands for the proposition that

EA89RESC

1    a proceeding like this can occur totally in the dark?

2            And one more point.  And you're indulging me.  And I

3    appreciate it.

4            THE COURT:  No.  No.

5            MR. LOWELL:  The government would like this to be the

6    end of a long case that our client feels like he has never

7    gotten his proper day in court for so I must at least try my

8    best to put it all in context.

9            In that regard, what makes this case particularly

10   offensive for an ex parte assertion, without anything more, is

11   how we got here.

12           You'll remember that you asked the government in

13   April:  What is the basis of this possible interest that you

14   have?

15           And the government responded and said:  Oh, our

16   interest is that the plaintiffs have asked for documents in the

17   file cabinets of UANI and we, the government, believe that can

18   implicate an interest that we have in the, they say, in the

19   withholding of certain documents is what they told the Court.

20           You said:  What is the nature of the privilege?

21           And they responded in docket entry 107 about the law

22   enforcement privilege.  And they spent the next

23   month-and-a-half explaining the law enforcement privilege.

24           And when they explained the law enforcement privilege

25   they, accepted that:  It covers sources and methods.  It covers

EA89RESC

1    confidentiality.  It covers techniques.  We all understand

2    that.

3              But what's interesting about the law enforcement

4    privilege are three things:  One, public disclosure, of course,

5    is required because we get the right to say we have a need that

6    overcomes the qualified privilege.  It's a qualified privilege.

7              And then the third thing besides:  A. you get a public

8    disclosure; B. it's qualified privilege is the C-part which

9    says that they then have to put forward what it is that they

10   are seeking and the connection there.

11             So it's all about disclosure.  It also is a privilege

12   that basically covers government information.

13             So we pointed out in our response:  How is this law

14   enforcement privilege?  How is it a source, a method unless

15   they are going to reveal that they have this relationship with

16   UANI that's been conjectured in the press?  Is it a government

17   contractor such as the cases in which state secrets?  Probably

18   not quite like that.  Are they exchanging information?  Maybe.

19   Actually skip that.  Most definitely.

20             So what is the nature of it?  Is it of the kind that

21   is in the law enforcement privilege?  When we fought back, they

22   retreated against the law enforcement privilege and then two

23   months later they said never mind what I meant was the state

24   secrets privilege.

25             So in that context, again, is this the case where you

EA89RESC

1    can accept on the face that what used to be a qualified law

2    enforcement privilege that covered just the documents we

3    requested in the file cabinets of UANI has now risen to the

4    only case that we can find, certainly in the context of private

5    litigants, fighting over defamation to be the one case that's

6    going to stand for the proposition that the government can make

7    all of its filings in secret?  It just doesn't work.  I mean

8    there is no basis for that.

9            THE COURT:  I understand how cases have practically

10   played out.  But again as I read Reynolds, and I think these

11   are the exact words from Reynolds, not only can the government

12   move and move to dismiss the case based only on information

13   that's been provided ex parte and in camera but they can also

14   do it without even showing it to the judge under appropriate

15   circumstances.

16           MR. LOWELL:  Well I don't think that the government --

17   I'm sorry.  I don't think the executive branch can implore the

18   judicial branch to dismiss a private piece of litigation

19   without being explicit, clear, and disclosing at least to that

20   judiciary what it is that's going on.

21           One of the things we gave you, your Honor, was the

22   interesting symposium in the Fordham Law Review in which Judge

23   Sack, of all people, were opining on how the best way to do it,

24   along with advocates for the government, the appellate lawyer

25   with whom Mr. Coppolino works very closely, and one of the

EA89RESC

1   litigation heads of the ACLU, who I noticed asked the Court

2   intervene yesterday or the day before.  And in that colloquy it

3   talked about what the role of the Court should be.

4           So, again, if you find words in Reynolds that supports

5   the theoretical proposition that you don't have to do anything,

6   I won't argue with you that you can pick those words out of the

7   case.  But I will argue with you that that's not the holding of

8   the case and the actual application of that case and all the

9   others that we've put forward shows a very different procedure

10  that includes the kind of disclosure that we're asking for.

11          Remember, one of the lines in that Fordham Law Review

12  article that I think we shouldn't abandon -- I don't think the

13  government would abandon it -- because it is agreed in the

14  correspondence in the last few days that they're supposed to

15  make the most fulsome revelations that they can.  They just

16  happen to say this is the first case in which they can make

17  none.

18          But that talked about not abandoning the adversarial

19  process and doing everything possible to be as selective about

20  that as possible.  And we are here, therefor.  When they filed

21  their motion, we had a choice.  I could have written an

22  opposition to their motion to dismiss and come up with all

23  kinds of hypotheticals as to why it is the state secrets

24  privilege couldn't apply:

25          Because it's not a government defendant.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EA89RESC

1            Because it's not classified information.

2            Because if it is classified information how is it in

3    the hands of a private party without violating the criminal

4    laws on the dissemination of the classified information.

5            Because it's not a defense contractor.

6            Because it's not covering a relationship between a

7    defendant and a foreign government or people working on behalf

8    of a foreign government.

9            Look at what I've already done.  I've now taken the

10   last two minutes and given you six or seven possible

11   hypotheticals, each of which I'd have to flesh out.

12           It doesn't seem that that's helpful to the Court and

13   it's certainly not consistent with the laws of not allowing ex

14   parte when possible; allowing as much openness in the process

15   as you can; giving a plaintiff his proper day in court; and not

16   applying the death penalty to a piece of private litigation

17   unless, to use the words of the cases, it's the only

18   alternative.

19           I mean you asked me to look at a quote in Reynolds.

20   I'll ask you to look at the quote of the Courts that say that

21   what the government is asking for -- this is in the very

22   Fitzgerald case that they want us to use as precedent -- it

23   says:  That this shouldn't happen but only when there is no

24   amount of effort and care on the part of the court and on the

25   part of the parties that will safeguard the information.

EA89RESC

1          So are we saying in a private defamation case that I

2     can't be asked to refine my causes of action in such a fashion

3     not to have to rely on anything the government thinks needs to

4     be protected?  Are we saying that there is no redaction of

5     documents that occur, as to their source, or who they are from,

6     or who they are to.  I work in Criminal Espionage Act cases.  I

7     work under the Classified Information Protection Act all the

8     time.  There's not a case I've done in which -- where there's

9     not redactions, substitutions, summaries.  And if that can be

10    done in a case in which there's actual classified information,

11    I don't know how we say there's nothing more that can be done

12    here except trust the government's word when the admonition of

13    the court is that it's supposed to be narrowly applied.  It

14    should be the course of last resort.  You should exhaust all

15    reasonable alternatives and only when there is no amount of

16    effort and care on the part of the court and the parties should

17    that remedy be invoked.

18         So if that is the case law, then how do we say that we

19    can't do better then simply saying:  Okay, they gave you under

20    your door something that they have you see, I can't see, nobody

21    understands, the public have no idea about, and this case goes

22    away, and there's more that can be done.

23         THE COURT:  Except that the case law does establish

24    the procedures that courts are required to use, the three-step

25    proceeding of identifying whether it's a state secret or not

EA89RESC

1    and then as you've indicated figuring out the most narrow way

2    of protecting that privilege.  And then there is also Attorney

3    General Holder's policy from 2009, I believe, which provides

4    further guidance and further procedural safeguards for the

5    appropriate assertion of the privilege, at least from the

6    perspective of the Department of Justice.  And if you've got a

7    judicial officer who at least would help to ensure that all of

8    those steps have been taken, and then undertakes an independent

9    analysis of the information, why isn't that enough?

10            By the way by "appropriate" I mean including

11   appropriate probing of the government's submissions as

12   necessary.

13            Why isn't that enough?

14            MR. LOWELL:  Because I think that you take the state

15   secret privilege, the law enforcement privilege or any other

16   assertion that there should be less sunshine and you must

17   filter it through the constitutional prerogatives that govern

18   all judicial proceedings.

19            In other words, the state secrets privilege comes

20   after the Constitution.  Doesn't come before the Constitution.

21   The Constitution says we need due process.  The Constitution

22   says part of that is an open court.  The Constitution says

23   adversarial system should prevail.  The Constitution, all those

24   protections lie behind the application of anything you want to

25   do, state secret, law enforcement privilege, you know, whatever

EA89RESC

1    you do in terms of jury selection, comes back, etc.  There's

2    always that constitutional framework.

3          So to begin with, you have to then ask whether any

4    step you take consistent with the state privilege -- state

5    secrets privilege is consistent with some protection that is a

6    tension that doesn't have to happen.

7          And I think what all the courts have done in applying

8    this is balanced what is the normal prerogatives of openness,

9    adversarial system, etc. and applied the privilege in the most

10   consistent way.  That's what I think the courts do.

11         So even though you are skilled enough, and I might not

12   be as skilled in response to take those phrases out of Reynolds

13   or any others, then I think you look at actually the way it is

14   applied, and then we have a better body of case law.

15         You're the one who pointed out, and I'm glad you did.

16   This is what I think is even more extraordinary in applying

17   this.  You asked:  What about the new justice department

18   policy?  Well let's look at that for a second and talk about

19   what it is that they're asking to do.  That's the justice

20   department policy that basically asked whether or not a new

21   policy is announced in September of 2009 by Attorney General

22   Holder.  And it says:  In order to ensure "greater

23   accountability," in order to "strengthen public confidence" in

24   the assertion of the privilege, in order to ensure that this is

25   done "only to the extent necessary" and as to properly

EA89RESC

classified information, that it's properly so; and if it's not

classified information at stake, that it has a significant harm

to the national security interests of the United States.  And

to ensure that there's "narrow tailoring."

Now, taking the Attorney General at his word, can we

say that at this juncture that we are asking the court for more

relief; the proceedings in which they have filed only ex parte,

as against the 23 cases where that doesn't happen; the

proceedings in which it's not clear from the face of the

complaint or the relationship between the government and UANI

that they are asking that you dismiss this case on the basis of

the record as they've made it does pay attention to greater

accountability, strengthening the public confidence, ensuring

that this is being done only to the extent necessary and that

it's narrow tailoring.

So if you want to ask me to address the Attorney

General's policy, I do so back in return and a say:  How is

what they're doing giving meaning to what their boss said

they'll do.  I don't see that it does.

I guess here's what I'd like to maybe summarize this

to say.  Are we actually prepared to say that between today

where we know nothing and some remedy in the future where we

would know everything before you and the public can assess

whether this is truly a state secret there's nothing else that

could be done?  Nothing?

EA89RESC

1        I don't think we can say that.  I think if we do say

2    that, that makes this decision subject to scrutiny on appeal

3    and otherwise.  I'm not doing any job.  I cannot believe that

4    this is the case where there's nothing more that can be done.

5        One of the things I've said -- and I know that the

6    government says there is no precedent for it, I know the

7    government says it's not done -- but Judge Sack and the people

8    in the symposium talked about some alternatives.  They talked

9    about -- again, I'm cleared counsel.  I mean you talk about

10   having a need to know.  I carry the clearances necessary.  I

11   certainly have the need to at least see some of this.  I am

12   always under the restrictions of not disclosing to even my

13   clients that which I see.  Why doesn't that ensure the greater

14   amount of fairness?

15       The last thing that's similar is that Judge Sack

16   talked about the possibility of at least getting a pair of eyes

17   that are hired -- maybe not hired but appointed by the court to

18   be expert to look at this so that we have a fresh pair of eyes

19   that are looking independently, so that there's at least the

20   assurance that this isn't being done without the most scrutiny

21   possible.  All I'm suggesting is, again -- here's a nice way of

22   saying it -- if zero is where we are today and ten is some

23   place in the future that would have more total disclosure, how

24   is it we are not at the point of one, two, or three?

25       THE COURT:  Well, obviously, your -- the sense with

EA89RESC

1    which you are frustrated with all of this is palpable and I

2    want to thank you for bringing to my attention the Fordham Law

3    Review article.

4         You quoted to me the following from Judge Sack.  "I

5    think, though, that Pentagon papers teach us more broadly that

6    we should not be quick to abandon the adversary system in state

7    secrets judicial proceedings."  You were very kind to leave out

8    the very next sentence which is, "The amateur judge needs it."

9         MR. LOWELL:  I want to point out for the record that

10   were a purposeful omission on my part.

11        THE COURT:  No doubt.  And clearly seeing how very few

12   judges have dealt with this you certainly are dealing with an

13   amateur judge, but let me talk to the government.

14        MR. LOWELL:  May I say one more thing before you talk

15   to the government because I may not get a time around.

16        THE COURT:  You'll have every opportunity to make your

17   point.

18        MR. LOWELL:  I should have started with this.  And

19   it's the way I started my last correspondence with the Court.

20   And it's not unimportant.

21        In a way, it's an odd place that I'm standing.  I

22   don't mean this particular courtroom, but I mean what I'm

23   saying in this particular courtroom.  Somehow or another this

24   has turned in to be the fight that my client never intended to

25   have happen.  I mean he's a citizen of the country -- the State

EA89RESC

1   of Greece.  He's a businessman.  He cares about due process

2   because it's his case.  He's not the champion for the American

3   courts to be doing what it should do and the government of the

4   United States doing what it should do, and yet here we are.

5            And the one thing I wanted to emphasize that I did,

6   but I'd like to say it out loud is that every case the

7   defendants have cited and every case that the government has

8   used has one stark difference and it's the one you identified

9   in April.  In the case in which the pilot crashed and the

10  spouse sued the government for damages, that was the end of it.

11  The pilot wasn't going to be taken out of the ground, put back

12  in another F19, stuck up in the air, and crash again.  In the

13  rendition case the plaintiff was renditioned, released and it

14  was done.  In the torture cases, the torture policy of the

15  United States changed.  In the illegal interception of

16  eavesdropping, it ended.

17           And here's what's so unfair about the context my

18  client finds himself in.  The government's intervention in this

19  private case allows the defendant to say what they want about

20  him, whatever they want about him, and then run to the garage

21  of the government and put the door down and say but we don't

22  have to defend our conduct.  And they don't have to stop doing

23  it.  And indeed they didn't stop doing it.  At the very time

24  that they're sending you letters, basically cheering on the

25  government and saying rah, rah do what the government said, in

EA89RESC

1       either the same pleading, or on their web site, or out in their

2       press releases they continue to put out charges against

3       Mr. Restis.  And what an amazing thing the government's

4       intervention will give them:  A license to defame.  Because

5       whatever they say, when somebody has the nerve, the gumption,

6       the resources, the time, to say:  No.  Put up or shut up.  They

7       say:  Wait, Mr. Coppolino, it's time for you to come up from

8       Washington to New York and intervene and stop this proceeding.

9               How can that be right?  You asked that question in

10      April.  So I sit down and I ask:  How can that be right?

11              THE COURT:  Thank you, Mr. Lowell.

12              Mr. Byars.

13              MR. BYARS:  Good afternoon, your Honor.

14              THE COURT:  Good afternoon.

15              MR. BYARS:  Let me just start by saying the United

16      States has made its state secrets assertion solely to protect

17      national security interests of the United States, not anyone

18      else's interests.  And that's really fundamental to our

19      presentation to you.

20              As we've noted in our letter, I'm greatly constrained

21      in what I can say in open court.  So a lot of what I have to

22      say will be limited to what I've already said in the

23      submissions.  I will try to keep it as short as possible and

24      I'd like to respond to some of the things that Mr. Lowell has

25      raised.

EA89RESC

1    The submissions that we presented to the court were

2  carefully calibrated to be as open as possible without risking

3  the disclosure of the classified and privileged information

4  that we seek to protect.

5    THE COURT:  Are we talking about what you have filed

6  publicly?

7    MR. BYARS:  It's our submissions as a whole, your

8  Honor.  We filed information both ex parte in camera and

9  publicly.  And I don't think that the court should dismiss the

10  importance of our public filings here.  We have given public

11  notice of the privilege that we intend -- that we have asserted

12  here.  We have given public notice of our views of the law, the

13  applicable law here.  And that provides a framework for the

14  parties as well as proposed amici here, to come in and provide

15  additional information to the court.

16    Let me just go back to the scope of our submissions

17  and specifically our ex parte submissions.  Our ex parte

18  submissions have basically done at least three things.  One is

19  to put the necessary facts and circumstances underlying our

20  claim of the state secrets privilege before the court.

21    There is no need, as Mr. Lowell suggested, for an

22  adversarial process to come up with additional speculative

23  reasons as to why the government has asserted the privilege.

24    Mr. Lowell said he took two minutes out to give you

25  lots of different scenarios.  You don't need to have the

EA89RESC

1    benefit of adversarial argument over what additional

2    possibilities there are.  You have the information before you.

3          The second --

4          THE COURT:  I have the information before me but his

5    point is if we are going to have a true adversarial system, if

6    this judge is going to be put in a position to have the best

7    information possible in order to make a decision, why shouldn't

8    we allow plaintiffs some measure of information that will allow

9    them to better tailor an argument?

10         Because from what I have seen, plaintiff lawyers are

11   rather imaginative folks.  They've come up with some wonderful

12   hypotheticals.  I have no doubt that if given an opportunity

13   and some greater information they can further tailor those

14   arguments and perhaps even make compelling arguments that would

15   cause me to consider the information that you've provided.

16         MR. BYARS:  Well I think, your Honor, we have to go

17   back to the basic principle articulated in Reynolds, which is

18   that our privilege assertion and the court's evaluation of that

19   assertion must not force a disclosure of the very thing the

20   privilege is designed to protect.

21         Now as your Honor referenced earlier, the privilege

22   assertion the government has made here, and our motion here has

23   been made in full compliance with the 2009 Attorney General

24   memorandum.  This was extremely well considered by multiple

25   layers within the government and we are bringing this in full

EA89RESC

1    compliance with the principles for doing so.

2            Another point is that Mr. Lowell has said he can't

3    find any other cases that are on all fours with this case.  I

4    submit that this assertion is not about statistics.  We're not

5    looking for how many cases are defamation cases or how many

6    cases have X number of public filings and Y number of ex parte

7    filings.

8            The determination made in this case, as in every state

9    secrets case, is a fact-by-fact, circumstance-by-circumstance,

10   case-by-case determination and it's unique to the circumstances

11   presented here.

12           THE COURT:  So you're agreeing with the plaintiffs'

13   findings that this case is unique?  That you haven't found

14   another case where the assertion of the states secrets

15   privilege has been asserted by the government in an action

16   solely between private individuals where no public disclosure

17   is made?

18           MR. BYARS:  I think, your Honor, we would like to

19   respond to that in more depth.  But to the extent that you

20   qualify this case as being about a defamation case between

21   private parties where certain types of filings were made.

22   Every case is unique.  But I don't think that that means that

23   you cannot proceed as your Honor has suggested from looking at

24   the case law on the basis that the government has presented

25   this case.

EA89RESC

```
 1              In fact, for example, the Fourth Circuit opinion in
 2    El-Masri expressly talks about the role that the court plays
 3    when there is not a full adversarial process that is possible
 4    in a particular case, and talks about the frustration that your
 5    Honor observes is the, perhaps, the normal course for parties
 6    who are not subject to full information.  And if the case were
 7    a hundred percent ex parte, it would be sealed and we wouldn't
 8    have that information, wouldn't be able to point to that case
 9    anyway.
10              THE COURT:  My concern is this.  My concern is that
11    even with the considerable legal powerhouse that is the federal
12    government and my chambers that we together may not be
13    sufficiently the imaginative to conceive of a way forward that
14    would allow plaintiffs to have some measure or some role in
15    advocating on behalf of -- advocating on behalf of the clients
16    and that we might benefit from some additional insight.
17              Let me ask you this.  Obviously all of these secrets
18    can only be maintained by human beings.  Putting myself aside
19    for the second because constitutionally I'm in a different
20    role.  But as Mr. Lowell has indicated, there are any number of
21    cases where he has been granted the appropriate level of
22    clearance to view classified information.  My clerk, who is me
23    for all of a year or less than a year, has been granted the
24    appropriate clearance to be able to help me review the
25    information that you are asserting is classified and should be
```

1  classified as state secret.

2          We all depend on human beings to keep these secrets.

3  Why in this case shouldn't we allow defense counsel, under

4  appropriate guidance and under appropriate strictures, the

5  opportunity to view this evidence.

6          MR. BYARS:  That type of clearance may happen in CIPA

7  cases.  It does not happen in civil cases, at least not to my

8  knowledge.  This is not -- we do not grant clearances in these

9  type of cases.  We don't.

10          THE COURT:  Is that a matter of policy, or it's a

11  matter of statute or --

12          MR. BYARS:  I need to consult on that, your Honor.

13          THE COURT:  Okay.

14          (Pause)

15          THE COURT:  I am correct, right, Mr. Lowell.  That you

16  received clearance sufficient to view classified information in

17  the past?  You've worked in SCIFs in the past, etc.?

18          MR. LOWELL:  I presently am working in two different

19  SCIFs, your Honor, as we speak here today and hold, I'm sure,

20  the clearances necessary for whatever would be included here.

21  So that answers your question.  The answer is yes.

22          MR. BYARS:  The answer is it's not done in these types

23  of civil cases.  It's not done under justification of the

24  states secrets case law as a matter of common law.

25          THE COURT:  Okay.

1          MR. BYARS:  The other areas that I think the ex parte

2    submissions may be helpful to the court in reviewing are

3    understanding better the government's reasons for the extent of

4    its public disclosures, as well as providing the court, as I

5    said before, with the information necessary to evaluate the

6    different speculative claims that have been made about the

7    subject matter of the privilege.

8          So, to the extent -- as to the extent of our public

9    disclosures, we rely on the arguments made in these ex parte

10   submissions as well as the legal justification set forth in our

11   public filings.  And if the Court has concerns in this regard

12   we are available to discuss those concerns, but such discussion

13   would need to be ex parte.

14         I also note that just to take -- I don't have the

15   benefit of Mr. Lowell's chart, but --

16         MR. LOWELL:  Hold on, your Honor.

17         MR. BYARS:  Just to --

18         MR. LOWELL:  I can remedy that one.

19         THE COURT:  It's going to take him a while to digest,

20   so let's proceed.

21         MR. BYARS:  Let me start with a couple of the cases

22   that Mr. Lowell has pointed to as justification for his premise

23   that there needs to be some sort of public filing.  In the

24   Fitzgerald case, the marine mammal program was public

25   knowledge.  There was something to be said about that program

EA89RESC

1    on the public record.  Classified aspects of that were not on

2    the public record.

3              In the Reynolds case, there was a plane crash.  There

4    were certain facts that were already made public in a lot of

5    these cases.  And those facts can serve as the basis for public

6    comment.  The notion that that has to happen in every case is

7    just wrong.  We have to go back to the fundamental principle

8    that Reynolds articulates and flows through all of these cases,

9    which is that disclosure -- public disclosure must not risk the

10   secrets at issue.

11             Mr. Lowell also raised the Abuhamra case.  I've

12   already talked a little bit about CIPA.  For reasons in our

13   letter, we believe that criminal cases are inapposite here

14   largely for the principle that Mr. Lowell is advocating.  There

15   are all sorts of liberty interest concerns in those cases that

16   the courts have referred to as the basis for their decisions.

17   And it's clear, even in Reynolds, that criminal cases and civil

18   cases are to be considered differently.

19             As for the symposium, I note that -- you mentioned a

20   part that Mr. Lowell didn't cite, we also cited in our letter,

21   further comment by Judge Sack where he recognized that there

22   may be reasons why the lawyer for the nongovernment party

23   cannot participate, the danger that such participation alone

24   will endanger the secrets.

25             So, I don't think that --

EA89RESC

1          THE COURT:  I recall that as well.  What I'm trying to

2     determine is why is this such a case?  Why is this a case where

3     even defense lawyer or lawyers under appropriate strictures

4     can't be given the opportunity to review that information?

5          MR. BYARS:  Because that's not -- that is not what's

6     done in state secrets cases in this context.  And if the court

7     needs further information on that, I'd ask that we discuss it

8     ex parte in camera.

9          THE COURT:  Could that be part of what is briefed

10    before the court?  Because I am going to give the plaintiffs

11    the opportunity to brief this issue.  Obviously, their hands

12    will be tied somewhat behind their backs because they will be

13    swinging at moving targets or shadow targets or no targets.  I

14    mean I don't know what they'll argue but I look forward to

15    their papers.

16         But I would like a discussion as well as to what

17    policy considerations would prevent us in this case from giving

18    the plaintiffs' lawyers the ability under appropriate clearance

19    and under appropriate strictures of reviewing the information.

20         MR. BYARS:  Your Honor we will certainly brief that

21    and anything else that the Court would like.

22         Again, the government's role here, particularly in a

23    state secrets case, is to be as helpful to the court as

24    possible and we obviously intend to do so here.

25         Unless your Honor has further questions, the

EA89RESC

 1    government will conclude.

 2                 THE COURT:  Not at this point.

 3                 Mr. Wolosky, I don't know whether you wish to be

 4    heard.

 5                 MR. WOLOSKY:  Thank you, your Honor.  Just briefly.

 6                 First as we indicated in our October 1 letter

 7    defendants have no position on the adequacy or the amount of

 8    information that the government should be required to disclose

 9    in connection with this privilege application.

10                 Secondly, just a factual clarification.  To the extent

11    that your Honor is concerned about what plaintiffs' counsel has

12    suggested is some type of ongoing campaign.

13                 THE COURT:  That's a very strong concern at this

14    point.

15                 MR. WOLOSKY:  Well, I can just provide a factual

16    clarification which is that UANI has made no statements

17    whatsoever about Victor Restis or his companies, about any

18    subject, doing business with Iran or any subject since February

19    of 2014.  The statements that were made historically have been

20    moved in the normal course to our client's press archives on

21    his web page.

22                 THE COURT:  Thank you.

23                 MR. LOWELL:  I'll be brief, your Honor.

24                 I spent a lot of time before and I appreciate your

25    giving me that time.  I just want to respond specifically to

EA89RESC

1  the points made by the government counsel and one point just

2  made by Mr. Wolosky.

3          The government started by saying that we should be

4  satisfied and be able to act based on the government's public

5  filings.  You asked:  You mean the public filings?  He said:

6  The totality.

7          I understand he's done something ex parte.  So it

8  leaves us, the world, the press, the public and everybody to

9  actually make sure that we understand what Mr. Byars was

10  saying.  So I did.

11          So I went to his brief, which is the only thing they

12  have filed publicly.  And this is all they said, as to what we

13  should feel assured about, the government is handling this the

14  right way.

15          "As the state secret privilege declaration also

16  explains the identity of the concerned federal agency, the

17  particular information at issue, and the bases for the

18  assertion of the state secrets privilege cannot be disclosed

19  without revealing classified and privileged matters.  This

20  determination is entitled to 'the utmost deference' by the

21  Court."

22          I don't know about you but I'm not very reassured that

23  that's enough of a public disclosure to allow you to do your

24  job and me to assist you in doing your job, and paying more

25  than lip service to the concept of what is supposed to be in

EA89RESC

1    the adversarial process.  But that's all it says.

2            As to the issue of whether or not there is any law or

3    statute that prohibits a court doing justice by framing relief,

4    that tailors that relief to the issues before it, for example

5    private counsel being given access.  As the government had to

6    point out, there is no law.  There is no statute.  There's not

7    even a rule.  It may be their policy but it's not a policy that

8    they apply across the board.  As I sit here and stand in front

9    of you, there are dozens, if not hundreds, of cases that have

10   been filed over the detentions at Guantanamo which include

11   civil cases in which the private counsel have been given

12   clearance to participate in those cases.

13           The next thing they said is, in terms of the relief

14   being sought.  One of the things that should be addressed by us

15   to you and by the government to you and I'd ask the court to

16   consider is, again, the framework.  I don't know what it is the

17   government is trying to protect.  But whatever it's trying to

18   protect, is it possible that the defendants were able to

19   utilize that information in their campaign against Mr. Restis

20   in any way shape, manner, or form?  Whatever reason.  It was

21   the way they got information.  It helped them confirm the

22   information.  It was a relationship that provided them the

23   information.  Again, I don't know.  Because I have to

24   hypothesize.

25           But assuming that that's the case, and looking at the

EA89RESC

symposium and the case law, then why isn't the right remedy to
put it on them and not Mr. Restis?  How can they have the
ability to use information that the government now -- when I
say "now" remember, this case was filed in July of '13.  It
wasn't until February of '14 that the government said by the
way we might have an interest.  Then it was only about
documents.  Now I don't know what it's about.

        But how is it possible that if they in any way used
the information or the relationship or whatever it is that the
government -- that it isn't on them to be able to use that in
the defense.  In other words, before there's dismissal of the
case the court has to be satisfied that I, the plaintiff, can't
pursue any of my causes of action without reliance on whatever
it is the state secret is covering; and in addition, that the
defendant can't defend themselves adequately without access to
that information as well.

        Now if it were in that latter category and their
campaign against the plaintiffs in some fashion trampled into
the area that the U.S. Government says is now sacrosanct, it
doesn't seem to me that the remedy is the dismissal of the case
or even the prohibition of the plaintiff.  It ought to be
scrutinized to how that information found its way, as an
example, in the plane crash case.  Boeing or General Dynamics
couldn't defend itself by doing anything but showing the
specifications of how they built the plane according to the Air

EA89RESC

1    Force or the Navy.

2            So is UANI saying that there's that same relationship

3    that exists, that I can say that Mr. Restis is an X, Y, or Z

4    that implicates the government's privilege?  But then I can't

5    be made to defend myself without them going behind that?

6            I don't know.  But that's one of the things I think

7    we'll address and we'll ask the Court.

8            In terms of the public facts that the government then

9    said that we could look to Reynolds and Fitzgerald to go.  They

10   said:  Well, the reason we can make a public disclosure in that

11   case was because there was a plane crash, and everybody knew

12   there was a plane crash.  Well, everybody knows there's an

13   allegation against the plaintiffs that they are a number of

14   things which the plaintiffs say they are not.  I don't

15   understand how the fact that there was a plane crash that

16   implicated something that wasn't known, how the plane crashed,

17   why it crashed, was that secret part of it part of the reason

18   it crashed?  That's just obviating the issue.  You can always

19   say something is public.  But in that case there was an

20   affidavit by the Secretary of Defense or the Head of the Air

21   Force.

22           And finally, as to the government, this is what

23   happens.  It is like being in a dark room, blindfolded, with a

24   moving target.  Because not only did they switch from law

25   enforcement to state secret privilege but now in front of you

1    they said they can't do any public disclosures because even

2    doing that would in some way impair the material.  And then

3    they said but we can't do any private disclosures in which we

4    can find any remedy in which the plaintiffs can have any

5    participation because we just never do it.

6         So I'm just being whipsawed between them saying what

7    it is because they say what it is.  And they are not Humpty

8    Dumpty.  They don't get to say that the language means whatever

9    it means whenever they say it means.  There is no rule.  There

10   is no law.  There is no statute that says we can't find a

11   remedy including myself.

12        As to Mr. Wolosky, I'd just let the record show that I

13   get it.  We haven't made any allegations against Mr. Restis

14   until after February 10 when all this started except for the

15   fact that you can go to our website and they're still there,

16   except for the fact that they're reiterated in every pleading,

17   except for the fact that people on their behalf make statements

18   about him.  That is the unfairness that I'm left with, which is

19   at the end of the day, however we brief this issue, it just

20   cannot be that if we're not allowed to pursue this case it's

21   the equivalent of the cases in which the tort, having been

22   committed, has been committed and it's done.  And that's what

23   we're trying to avoid.

24        THE COURT:  That suggests another issue that I would

25   appreciate the parties weighing in on and that is the

EA89RESC

1    possibility, assuming that the case can't go forward, of some

2    sort of injunctive relief against the defendants.

3              MR. WOLOSKY:  Your Honor, the defendants would

4    vociferously object to any infringement of their First

5    Amendment rights to raise questions with respect to any party's

6    business transactions with Iran.

7              THE COURT:  I assumed that to be the case, which is

8    why I would want some briefing on it.  But you can finish your

9    point.

10             MR. WOLOSKY:  It is undisputed now, your Honor, that

11   Mr. Restis and his companies do business in Iran.  This is an

12   undisputed point.  There is public debate now in part, we

13   believe, as a result of the disclosures that UANI has made

14   about his conduct in Iran, about what that conduct is.

15             Mr. Lowell and Mr. Restis maintain that those are

16   legal grain shipments.  They are very upset that there's

17   questioning of Mr. Restis' business transactions in Iran.  If

18   Mr. Restis would like to stop that public debate, he should

19   stop doing business in Iran.  Our clients are not going to

20   permit Mr. Restis to use his economic power, his unlimited

21   resources, his threats of litigation, to squelch their First

22   Amendment rights.

23             Now we think that the public debate that exists and is

24   ongoing about Mr. Restis' conduct and his business

25   relationships in Iran, his transactions in Iran, which took

EA89RESC

1    place, continue to take place as recently as this week, is fair

2    public discourse.  We're not going to knock ourselves out of

3    the public debate arena with respect to that subject.

4              THE COURT:  You just proved Mr. Lowell's point.

5              MR. LOWELL:  I'm sorry?

6              THE COURT:  I'm saying he just proved your point, that

7    despite the fact that you haven't said anything since February

8    here again --

9              MR. WOLOSKY:  When I made the point that we -- that

10   UANI has not made any public comments since February of 2014,

11   and I don't know what this business about having other people

12   acting on its behalf relates to, but the fact is that there

13   have been no public comments by UANI about Mr. Restis since

14   February 2014.  That was meant to address the point that there

15   is ongoing activity with respect to Mr. Restis.  UANI has other

16   institutional priorities.  It has largely moved on from Mr.

17   Restis.

18             My point only with respect to injunctive relief is we

19   don't want to knock ourselves out of the debate entirely if

20   UANI concludes in the future that it is appropriate to make

21   commentary on Mr. Restis' activities in Iran which, as I said,

22   are ongoing as recently as this week.

23             MR. LOWELL:  May I briefly respond?

24             I didn't know if what he said about making new

25   allegations against Mr. Restis was actually responsive to your

EA89RESC

1    question about briefing the legal issues involved in an

2    injunction when a party seeks to use a privilege as both a

3    sword a shield, because that is the legal framework.  But since

4    he decided to say he said, I'd be remiss in not responding.

5         If UANI had simply said that companies in which

6    Mr. Restis have an interest allow, as the law allows, for their

7    ships to be used by American, as well as other but very much

8    American companies, to ship food and medical supplies and other

9    humanitarian aid to the people of Iran pursuant to the United

10   Nations program that allows it, a lot of trees would be saved

11   than is what are the briefs that have been filed in this case

12   and your time wouldn't be taken today or at any time before.

13        But when UANI doesn't say that, because I won't

14   contest -- although he likes to spin it in the way that he

15   likes to spin it; I said it the accurate way -- that ships that

16   are in the companies or chartered by American grain producers

17   to provide food relief to the people of Iran and other places

18   pursuant to United Nations ability to do so, if that's what

19   they said, wow, I'd have a different case to be talking about

20   and you and I would have never met.  But that's not what they

21   said.

22        What they said is Victor Restis is a frontman for Iran

23   and the regime, uses his bank in ways that are illegal, commits

24   illicit conduct, is involved in sanctions, things that violate

25   the sanctions.

EA89RESC

1       Now I understand that they changed that once
2   Mr. Restis sued.  And now:  All we ever said was that he does
3   business in Iran.  That's even a change because they used to
4   say he does business with Iran.  In fact, he does business with
5   the United States companies who are doing business with Iran.
6       That said, that's not what they had indicated.  And
7   that's not why we sued.  I have to assure your Honor that if
8   all they said was what Mr. Wolosky just said, we would have
9   never bought a defamation action.  That's not what they said.
10      So if they're going to be able to continued to defame
11  him by saying he violates the law, he's involved in
12  sanctionable conduct, that he's doing things that are illicit,
13  etc. that's what the fight was about.  That's why he brought a
14  lawsuit.  If they are going to rely on whatever the government
15  is trying to protect in order to defend themselves, they
16  shouldn't be able to do that.  And so now having made the
17  factual record correct, we'd be delighted to brief the issue of
18  whether a party is allowed to use a privilege, especially one
19  that they don't own, as both a sword and shield.
20      THE COURT:  Okay.  Anything else?
21      Mr. Wolosky?
22      MR. WOLOSKY:  May I consult for one moment with my
23  colleagues from the government.
24      THE COURT:  Certainly.
25      (Pause)

EA89RESC

1          MR. BHARGAVA:  Your Honor, may I submit to the Court

2     the exhibits?

3          THE COURT:  I take it did all parties receive the

4     correspondence from the ACLU?

5          MR. LOWELL:  We did last night or yesterday afternoon,

6     we did get it.

7          THE COURT:  Do we have a representative from the ACLU

8     here?

9          No.  Okay.

10          MR. WOLOSKY:  Your Honor, we did make a number of

11     other arguments for dismissal under Rule 37.  Would the Court

12     like to hear from us on those subjects?

13          THE COURT:  I don't think so.  Let's keep this as

14     focused as we can.  There are plenty of issues to deal with.

15     And I don't have the benefit of Magistrate Fox's background

16     with respect to those disputes.  So I would probably want, in

17     the first instance, to receive a report and recommendation from

18     him.  So I don't want to deal with the sanctions issues at this

19     time.

20          MR. LOWELL:  We have one clarification that I need

21     your help on and it will probably streamline things for

22     whatever may happen afterwards.

23          So your Honor made some decisions on pending motions

24     for the filing of an amended complaint and motions to dismiss.

25          THE COURT:  Correct.

EA89RESC

```
 1              MR. LOWELL:  The amended complaint that is required to
 2    be attached was attached, and it included -- because you hadn't
 3    ruled on the motions to dismiss at that point -- some of the
 4    same claims that you have now ruled don't go forward.  So it
 5    made no sense to file the amended complaint as it was attached
 6    with --
 7              THE COURT:  Okay.
 8              MR. LOWELL:  So we would like the ability,
 9    therefore -- and it makes sense, again, who knows how this case
10    will go -- but to file the amended complaint that you've given
11    us the right to file but now trimmed down, not to include
12    things which would obviate them having to file a new motion to
13    say the things that you did.  Does that make sense?
14              THE COURT:  That makes perfect sense.
15              MR. LOWELL:  Thanks.  And we'll do that by the end of
16    the week.
17              THE COURT:  Thank you.
18              Anything else?
19              MR. LOWELL:  Not from us, your Honor.
20              THE COURT:  There being nothing further, we are
21    adjourned.
22              (Adjourned)
23
24
25
```