# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTOR RESTIS and ENTERPRISES SHIPPING AND TRADING, S.A.,<br><br>                    Plaintiffs,<br><br>          Against<br><br>AMERICAN COALITION AGAINST NUCLEAR IRAN, INC., a/k/a UNITED AGAINST NUCLEAR IRAN, MARK D. WALLACE, DAVID IBSEN, NATHAN CARLETON, DANIEL ROTH, MARTIN HOUSE, MOLLY LUKASH, LARA PHAM, and DOES 1-10,<br><br>                    Defendants. | No. 13-cv-5032 (ER) (KNF) |
| UNITED STATES OF AMERICA,<br><br>                    Intervenor. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE UNITED STATES AND DEFENDANTS TO PROVIDE ADDITIONAL INFORMATION RELATING TO THE ASSERTION OF THE STATE SECRETS PRIVILEGE AND OPPOSING DISMISSAL OF THE CASE**

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022

5301 Wisconsin Avenue, NW
Washington, District of Columbia 20015

300 South Fourth St.
Suite 800
Las Vegas, Nevada 89101

STACK FERNANDEZ ANDERSON & HARRIS, P.A.
Brickell Bay Office Tower
1001 Brickell Bay Drive, Suite 2650
Miami, Florida  33131-4940

*Attorneys for Defendants, American Coalition Against Nuclear Iran, Inc. a/k/a United Against Nuclear Iran, Mark D. Wallace, David Ibsen, Nathan Carleton, Daniel Roth, Martin House, Molly Lukash, and Lara Pham*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

LEGAL ANALYSIS .......................................................................................................... 7

   I.   Plaintiffs Concede They Cannot Enjoin Defendants from Exercising Their First
Amendment Rights. .......................................................................................................... 7

      A.   Defendants Statements Are True and Therefore Could Never Provide a Basis for
Enjoining Defendants' First Amendment Rights.................................................................. 7

      B.   If the SAC Is Dismissed on State Secrets Grounds, Plaintiffs Will Not Be Entitled to
Injunctive Relief as a Matter of Law. ............................................................................... 10

      C.   Enjoining Defendants from Speaking About Plaintiffs' Business Activities in and
with Iran Would Be an Unconstitutional Prior Restraint of Their First Amendment Rights. ..
13

   II.   Plaintiffs Are Not Entitled to Any Of Their Proposed Alternative Remedies. ............. 14

   III.   Plaintiffs Fail to Distinguish UANI's 2013 Statements and 2014 Statements............... 17

      A.   2013 Statements ............................................................................................... 18

      B.   2014 Statements ............................................................................................... 18

   IV.   The Court Should Reject Plaintiffs' Request for Disclosures from Defendants............ 21

   V.   Defendants Oppose Any Further Disclosure to Plaintiffs of the Government's *Ex Parte*
Submission. ...................................................................................................................... 22

   VI.   The Court Must Dismiss This Case if the State Secrets Privilege Would Deny
Defendants a Valid Defense .............................................................................................. 23

CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*American Malting Co. v. Keitel,*
    209 F. 351 (2d Cir. 1913)................................................................ 11

*Bentzlin v. Hughes Aircraft Co.,*
    833 F. Supp. 1486 (C.D. Cal. 1993) .............................................. 25

*Bihari v. Gross,*
    119 F. Supp. 2d 309 (S.D.N.Y. 2000)....................................... 11, 13

*Bray v. City of New York,*
    356 F. Supp. 2d 277 (S.D.N.Y. 2004)............................................ 11

*Cardillo v. Doubleday & Co.,*
    518 F.2d 638 (2d Cir. 1975)........................................................... 13

*CBS, Inc. v. Davis,*
    510 U.S. 1315 (1994)..................................................................... 13

*Crosby v. Bradstreet Co.,*
    312 F.2d 483 (2d Cir. 1963)........................................................... 17

*Davis v. New York City Hous. Auth.,*
    166 F.3d 432 (2d Cir. 1999)..................................................... 10, 13

*Dombrowski v. Pfister,*
    380 U.S. 479 (1965)....................................................................... 16

*Farnsworth Cannon, Inc. v. Grimes,*
    635 F.2d 268 (4th Cir. 1980) ......................................................... 23

*Firth v. State,*
    775 N.E.2d 463 (N.Y. 2002).......................................................... 17

*Fitzgerald v. Penthouse Int'l, Ltd.,*
    776 F.2d 1236 (4th Cir. 1985) ....................................................... 24

*Gregoire v. G. P. Putnam's Sons,*
    81 N.E.2d 45 (N.Y. 1948).............................................................. 17

*Guccione v. Hustler Magazine, Inc.,*
    800 F.2d 298 (2d Cir. 1986)........................................................... 11

*In re Sealed Case,*
    494 F.3d 139 (D.C. Cir. 2007)....................................................... 24

*Jolly Grp., Ltd. v. Medline Indus., Inc.,*
    435 F.3d 717 (7th Cir. 2006) ........................................................... 3

*Kasza v. Browner,*
    133 F.3d 1159 (9th Cir. 1998) ................................................................ 24

*Knox v. Salinas,*
    193 F.3d 123 (2d Cir. 1999).................................................................. 10

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994).......................................................................... 15

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union,*
    239 F.3d 172 (2d Cir. 2001)........................................................ 11, 13, 17

*Molerio v. F.B.I.,*
    749 F.2d 815 (D.C. Cir. 1984) ............................................................ 25

*Mounsey v. Allied-Signal et al.,*
    No. CV95-4309SVW, 2000 WL 34017116 (C.D. Cal. Apr. 10, 2000).................... 25

*N.Y. State Nat'l Org. for Women v. Terry,*
    886 F.2d 1339 (2d Cir. 1989).............................................................. 10

*Nebraska Press Ass'n v. Stuart,*
    427 U.S. 539 (1976).................................................................. 13, 14, 16

*New York Times Co. v. United States,*
    403 U.S. 713, 714 (1971).................................................................. 14

*Org. for a Better Austin v. Keefe,*
    402 U.S. 415 (1971).......................................................................... 13

*Peacock v. Thomas,*
    516 U.S. 349 (1996).......................................................................... 15

*PRC Harris, Inc. v. Boeing Co.,*
    700 F.2d 894 (2d Cir. 1983)................................................................ 17

*Roach v. Morse,*
    440 F.3d 53 (2d Cir. 2006)................................................................ 10

*Tenenbaum v. Simonini,*
    372 F.3d 776 (6th Cir. 2004) .............................................................. 24

*United States v. Gilman,*
    341 F. Supp. 891 (S.D.N.Y. 1972) ........................................................ 7

*United States v. Reynolds,*
    345 U.S. 1 (1953)............................................................................ 22

*Zuckerbraun v. Gen. Dynamics Corp.*,
   935 F.2d 544 (2d Cir. 1991)........................................................................................ 22, 24

**Statutes**

Fed. R. Civ. P. 30……………………………………………………………………….6

Fed. R. Civ. P. 41(b)……………………………………………………………….. 10

Fed. R. Civ. P. 65…………………………………………………………..…..7, 10

N.Y. C.P.L.R. § 215(3)…………………………………………………………..17

Defendants, American Coalition Against Nuclear Iran, Inc. a/k/a United Against Nuclear Iran ("UANI"), Ambassador Mark D. Wallace, et al. (collectively, "Defendants"), submit this Memorandum of Law in Opposition to the Memorandum of Law in Support of Plaintiffs' Motion to Compel the United States and Defendants to Provide Additional Information Relating to the Assertion of the State Secrets Privilege and Opposing Dismissal of the Case, Oct. 29, 2014 [ECF No. 292] ("Motion to Compel").

## INTRODUCTION

On October 9, 2014, the Court ordered the parties to brief whether "(1) Plaintiffs' counsel should, subject to required clearance(s), be allowed access to the relevant classified materials, and (2) the Court can grant Plaintiffs injunctive relief in the event it determines that the state secrets privilege applies."  Opinion and Order, Oct. 9, 2014 [ECF No. 273].

Plaintiffs—who have declined to comply with their discovery obligations in a case they initiated—now seek to turn the Government's state secrets invocation on its head.  Plaintiffs are not entitled to injunctive relief, a point they concede.  Mot. to Compel at 24 n.11.  Yet while admitting that injunctive relief would amount to an unconstitutional prior restraint, Plaintiffs nevertheless seek the functional equivalent of an injunction.  Without any finding of liability, Plaintiffs ask the Court to compel Defendants to retract their prior statements and muzzle them from ever again uttering Victor Restis' name, absent which they threaten to use their unlimited resources to wage a campaign of endless litigation in this Court to bankrupt a small, not-for-profit organization and its unpaid or low-paid young staff members.

Plaintiffs' strategy of using their vast wealth to fund litigation to prevent public discourse on a matter of significant public policy interest and concern has a name:  It is called a Strategic Lawsuit Against Public Participation, or "SLAPP," suit.  SLAPP suits have been roundly

criticized as an abuse of the judicial system, since they enable wealthy litigants to use the courts to silence advocacy groups—and public debate—to further their own private interests.  *See What Is a SLAPP Suit?*, ACLU of Ohio, http://www.acluohio.org/slapped/what-is-a-slapp-suit (last visited Nov. 17, 2014) (Ex. 1, L. Wolosky Decl.) ("At its most basic definition, a SLAPP suit is a civil complaint or counterclaim filed against people or organizations who speak out on issues of public interest or concern.").[1]  Restis, a notorious litigant who aims to quash real and perceived enemies in the Greek courts, now brings this tactic here and goes so far as to assert that he will continue to file additional actions against UANI and its staff unless and until they are pressured into silence.

Plaintiffs ask the Court to retain jurisdiction over Defendants so that if Defendants continue "making defamatory statements about Plaintiffs (including repeating prior defamatory statements or keeping those defamatory statements on UANI's website), Defendants will be walking into future litigation with their eyes wide open."  Mot. to Compel at 23.  Defendants also threaten that unless they succeed in silencing UANI and causing it to retract its prior statements, "Plaintiffs will sue to vindicate their rights."  *Id*.

Even though the Court has not found Defendants' statements to be defamatory (and even though they are in fact true), Plaintiffs' proposed relief seeks to use the Government's privilege invocation and the possible dismissal of the lawsuit as a sword to obtain a retraction— threatening UANI with future litigation for "keeping those defamatory statements on UANI's

---

[1] The American Civil Liberties Union—an *amicus* in this matter—has been at the forefront in opposing SLAPP litigation throughout the United States.  The cases in which they have participated on behalf of defamation defendants include:  a suit against an anti-gambling advocate brought by a company that operated a racetrack, *Superior Court Dismisses Defamation Case Against Opponent of Racetrack Gambling*, ACLU of Massachusetts, Dec. 17, 2012, https://www.aclum.org/news_12.17.12 (Ex. 2, L. Wolosky Decl.); and a defamation suit brought by a climate scientist against a journalist who had criticized the scientist's work, Jonathan H. Adler, *Mann v. Steyn – Steyn Goes His Own Way*, Volokh Conspiracy: Washington Post, June 9, 2014, http://www.washingtonpost.com/news/volokh-conspiracy/wp/2014/06/09/mann-v-steyn-steyn-goes-his-own-way, (Ex. 3, L. Wolosky Decl.)

website."  *Id.*  However, Plaintiffs are not entitled to a retraction, or to any relief whatsoever.  By threatening SLAPP-style litigation campaigns in perpetuity, Plaintiffs lay bare their intent to use their unlimited resources simply to harass UANI into silence.[2]  And by seeking to muzzle UANI without ever having to produce in discovery inculpatory documents from their own files or to appear for duly noticed depositions, Plaintiffs look to use the Government's privilege invocation as a shield to protect their ongoing business dealings in Iran from the public or this Court's scrutiny.  Plaintiffs embrace any litigation outcome that shields them from scrutiny or excuses them from complying with their continuing duty to disclose incriminating evidence.  *See, e.g.*, *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).  For the reasons set forth below, Plaintiffs' Motion must be denied.

## FACTUAL BACKGROUND

On May 13, 2013, UANI sent Restis an open letter, copying and petitioning various public officials in the United States, Greece and Iran (the "May 13 Letter").  Second Am. Compl. Ex. A ("SAC").  The May 13 Letter disclosed "the apparent business dealings" of Restis, Plaintiff Enterprise Shipping & Trading ("EST"), and First Business Bank, a bank controlled at that time by Restis, with "sanctioned-designated individuals and Iranian oil and shipping entities."  *Id.* at 1.  In particular, UANI pointed to Plaintiffs' improper business dealings with Dimitris Cambis ("Cambis"), a Greek businessman blacklisted by the United States for helping "Iran evade international oil sanctions."  "United States Exposes Iranian Shipping Scheme," Press Release, United States Department of the Treasury, Mar. 14, 2013,

---

[2] The fact that Restis uses his vast resources to employ armies of lawyers, public relations professionals and friendly or controlled media outlets to silence his critics is well known.  Greek prosecutors warned about such conduct in other contexts, testifying before the Greek Parliament that "[w]e had a delirium of criminal acts.  The action was manipulated and there were legal teams behind the scenes . . . . This type of criminal does not use Kalashnikovs or masks, but hides behind the Media.  There is corruption and interweaving of interests everywhere."  *Parliament: Nikoloudis Targets Proton and FBB*, To Vima, Mar. 6, 2014 (Ex. 4, L. Wolosky Decl.).

http://www.treasury.gov/press-center/press-releases/Pages/jl1879.aspx (Ex. 5, L. Wolosky

Decl.).  UANI asked Plaintiffs to clarify their involvement with Cambis, and called on them to

terminate any and all business relationships with Iran.  May 13 Letter at 3-4.  On May 14, 2013,

Restis issued a public statement that "unequivocally and categorically" denied "any involvement,

arrangement or transaction of any kind whatsoever" with Cambis or any other sanctioned entity.

*See* Press Release, Enterprise Shipping & Trading, May 14, 2013,

http://www.marketwired.com/press-release/statement-by-enterprises-shipping-trading-

1790827.htm (Ex. 6, L. Wolosky Decl.) ("EST Press Release").  On May 16, 2013, Restis'

counsel wrote to UANI that "Mr. Restis does not do business with Iran nor does he sanction

others who do."  Letter from T. Margolis to Amb. M. Wallace, May 16 2013 (Ex. 7, L.

Wolosky Decl.); *see also* Compl. ¶¶ 15, 79.  Both such statements are false.

At the same time he was categorically denying to the world that he ever "had dealings

with the Iranian government, ministry or any Iranian people, period," Aaron Kelley, *Restis

Torpedoes Allegations*, Tradewinds, May 15, 2013 (Ex. 8, L. Wolosky Decl.),[3] and representing

the same to the Court, Compl. ¶¶ 15, 79,[4] Restis's ships were delivering cargo to Bandar Imam

Khomeini, Iran.[5]

In August 2013, almost immediately upon commencing this action and a similar Greek

defamation action against UANI and Ambassador Wallace in Athens, and after trying to gin up

---

[3] *See also Victor Restis vs. UANI*, New Europe, July 17, 2013, http://www.neurope.eu/article/victor-restis-vs-uani (Ex. 9, L. Wolosky Decl.) ("New Europe: Do you have or did you ever have any business or other relation with Iran? Victor Restis: No, absolutely not.").
[4] Plaintiffs repeated that express allegation in their December 11, 2014 First Amended Complaint.  Am. Compl. ¶¶ 15, 78 ("Mr. Restis does not do business with Iran nor does he sanction others who do.").
[5] The grain terminal at Bandar Imam Khomeini port is operated by Tidewater, an entity sanctioned by the United States.  "Fact Sheet: Treasure Sanctions Major Iranian Commercial Entities," United States Department of the Treasury, June 23, 2011, http://www.treasury.gov/press-center/press-releases/Pages/tg1217.aspx (Ex. 10, L. Wolosky Decl.).

news stories regarding the filing of those lawsuits,[6] Restis sought to settle this matter by paying six-figure sums to the Defendants.  In December 2013, he again offered money and also stock options and board seats on related companies if UANI and its staff would retract their statements and give him a clean bill of health.  *See* Letter from L. Wolosky to Hon. E. Ramos, Feb. 6, 2014 [ECF No. 51].  UANI and its staff maintained then, as they do now, that no amount of money paid by Restis will convince them to whitewash Restis' business dealings in Iran.  *Id.*  Yet, at the same time he was categorically representing to UANI that he would not do business with Iran in the future, Restis' ships were still delivering cargo to the Bandar Imam Khomeini port.

In light of Restis' false denials and false representations, UANI published a series of press releases in February 2014, calling on Restis to clarify his business dealings in Iran and his multiple prior assertions that he does not do any business in Iran.  SAC Exs. M-FF.  In a hearing on February 14, 2014, Plaintiffs finally admitted that "[Defendants] have shown evidence that certain ships managed by Enterprise Shipping & Trading have gone to ports in Iran.  That is true, or at least some elements of what they are saying are true."  Pre-Trial Conf. Tr. at 15:9-12, Feb. 14, 2014 (Ex. 12, L. Wolosky Decl.).  The Court asked Plaintiffs, "Why wasn't that just included in the complaint?"  *Id.* at 16:16-17.

In May 2014, Plaintiffs moved to amend their complaint a second time [ECF No. 146].  The SAC added allegations that the February 2014 statements constituted a "new wave of [defamatory] allegations," SAC at ¶ 84, that "*implie[d]* that Plaintiffs were engaging in business with a sanctioned entity," *id.* at ¶ 89 (emphasis added).  The SAC acknowledged for the first time that Restis-owned vessels have made shipments to Iran.  *Id.* at ¶ 82.

---

[6] *See The Athens Greece Prosecutor Has Confirmed a Criminal Libel Complaint Against Mark D. Wallace and the Non-Governmental Organization, United Against Nuclear Iran ("UANI")*, PR Newswire, July 17, 2013 (Ex. 11, L. Wolosky Decl.).

After being forced to admit the truth concerning their business in Iran, Plaintiffs thereafter began a systematic effort to shut down attempts to reveal incriminating evidence about their business dealings in Iran and with Cambis.  On January 9, 2014, Defendants noticed both EST and Restis to appear for depositions in this District on February 10 and 11, 2014, respectively, pursuant to Fed. R. Civ. P. 30.  Defendants' Notice of Dep. of Victor Restis, Jan. 9, 2014 (Ex. 13, L. Wolosky Decl.).  On February 7, 2014—one business day before the first scheduled deposition—Plaintiffs notified Defendants that Restis would not appear for his scheduled deposition, *see* Email from M. Bhargava to L. Wolosky, Feb. 7, 2014 (Ex. 14, L. Wolosky Decl.), and wrote to the Court requesting leave to file a motion for a protective order, Letter from M. Bhargava to Hon. E. Ramos, Feb. 7, 2014 (Ex. 15, L. Wolosky Decl.).  In a hearing on February 14, 2014, the Court ordered that EST's 30(b)(6) deposition should proceed, and directed Defendants to file a motion to compel Restis' deposition, *see* Ex. 12, Pre-Trial Conf. Tr. at 46:18-25, Feb. 14, 2014, which Defendants filed with the Court on February 24, 2014 [ECF 61].  On April 25, 2014, the presiding magistrate judge ordered Restis to appear for deposition in New York [ECF No. 126], which order Plaintiffs have asked to be reconsidered because they "neglected" to attach certain Greek documents in their original opposition memorandum [ECF No. 127].  However, Plaintiffs have not produced Restis or any other witness for deposition.

Moreover, while Plaintiffs have produced certain documents only from a sole email account of Restis (vr@goldenenergy.gr), Plaintiffs have failed to produce any documents from several other key email addresses used by Restis, including viresath@gmail.com, vires@attglobal.net and vrgroup.gr@gmail.com, despite being placed on notice that those email accounts would contain case-dispositive emails establishing the truth of Defendants' statements

concerning Restis' involvement in an illicit conspiracy with Cambis, among others.

## LEGAL ANALYSIS

I.   **Plaintiffs Concede They Cannot Enjoin Defendants from Exercising Their First Amendment Rights.**

Although they now seek functionally equivalent relief, Plaintiffs expressly state that they are not asking the Court to enjoin Defendants "from speaking" if the Government's motion is granted and the SAC is dismissed on state secrets grounds.  Mot. to Compel at p. 24 n.11.  Nor could they.  Plaintiffs are not entitled to an order enjoining Defendants from exercising their First Amendment rights to speak concerning Plaintiffs' business dealings in and with Iran for at least three reasons.  First, Plaintiffs cannot prove that UANI's statements were false, and the Court cannot rely on Plaintiffs' mere denials.  Second, Plaintiffs cannot establish, as is their burden under Fed. R. Civ. P. 65, the essential elements of injunctive relief.  *E.g.*, *United States v. Gilman*, 341 F. Supp. 891, 907 (S.D.N.Y. 1972) (burden of proof for injunctive relief falls on plaintiff).  Third, as a matter of law, enjoining Defendants from speaking about Plaintiffs' business activities in and with Iran would be an unconstitutional prior restraint in violation of the First Amendment.

### A.   Defendants Statements Are True and Therefore Could Never Provide a Basis for Enjoining Defendants' First Amendment Rights.

Plaintiffs are not entitled to any form of relief under the SAC, whether injunctive or monetary, because Defendants' statements about Plaintiffs' business dealings in and with Iran are true.

Former business partners and associates of Restis, as well as former employees of EST, will testify, and other evidence will establish, that Restis entered into conspiracies with Dimitris Cambis, Victor Olsen, and other individuals and entities for the purpose of buying Iranian crude oil and shipping it to China and other countries for resale.  Restis' own documents, and the

evidence provided by his former co-conspirators and others (including former EST employees),

will establish, *inter alia*, the following, and fully describe the oil smuggling conspiracy[7]:

- By at least mid-2010, Restis was conspiring with Cambis to devise a web of business entities and relationships to buy crude oil from Iran and sell it to Chinese buyers.

- Restis and Cambis cultivated a business relationship with Victor Olsen, who was an agent for the Iran Investment Company, a holding company used by the government of Iran to engage in oil, gas, and petrochemical projects, including the sale of crude oil.  Olsen had the right to purchase large volumes of Iranian crude oil for resale in international markets.

- Restis viewed himself as the strategic partner in the business plans because he had the knowledge and resources to provide and manage a fleet of tankers capable of reliably and consistently transporting large volumes of crude oil globally.

- By late 2010, Restis and his co-conspirators had tasked a team of people to locate ships that could be purchased and operated in furtherance of the conspiracy.

- Restis had one or more Restis Group employees or associates working in Iran and assisting with the plans to purchase Iranian crude oil and sell it to Chinese buyers.

- Restis personally met with Iranian and Chinese representatives involved in the business dealings to sell Iranian oil to Chinese buyers.

- Restis participated in the operational planning involved with the transoceanic shipment of oil in maritime tankers.

- Restis agreed to use FBB to finance portions of the project, provide deposit services and trade financing to the group, and syndicate loan facilities.

- Restis knew and understood that buying and reselling Iranian oil directly violated international economic sanctions.

- Restis concealed his role and involvement in the project from outsiders by having other people send emails in his name or sign documents in his stead.

- Cambis, a professor of business at the University of Piraeus in Athens, Greece, and a person with no prior experience in the maritime shipping or oil industry, coordinated the work of the other conspirators, including Restis.

---

[7] Defendants' counsel has carefully relied only on information that could not be subject to the Government's state secrets privilege and accordingly has only referred to such non-privileged information herein.

- Between September and November 2012, eight very large crude carriers ("VLCC") were purchased for use in the Iranian oil scheme.  Each tanker could carry approximately two million barrels of oil.

- On March 13, 2013, the U.S. Government blacklisted Cambis and various shell companies used to own and operate the tankers for helping Iran evade international economic sanctions.

- On May 13, 2013, UANI disclosed Restis' involvement in Cambis' business dealings to help Iran evade international economic sanctions.

- In the summer of 2013, after the U.S. Government action against Cambis and after UANI focused public attention on Restis' involvement with Cambis and the sale of Iranian oil to China, the conspirators began selling some of the VLCCs for demolition and scrap.  As of today, all but three of the tankers originally purchased for the Iranian oil project have been sold for scrap or are inactive within the territorial waters of Iran.[8]

Much of the direct evidence of the conspiracy is located in Restis' and EST email accounts and computer servers.  Restis, who has publicly and vociferously denied any "involvement" with Cambis "whatsoever," *see* Ex. 6, EST Press Release, communicated freely and frequently with Cambis and his other co-conspirators through several personal and company email accounts, including, at a minimum, viresath@gmail.com, vires@attglobal.net and vrgroup.gr@gmail.com.  Defendants alerted Plaintiffs' counsel that these accounts contained incriminating evidence revealing Restis' involvement in the oil smuggling conspiracy.  Ex. 18, Letter from D. Mitchell to A. Lowell, June 30, 2014.  Nevertheless, Plaintiffs have not produced to Defendants any of the emails from those accounts.  Plaintiffs claim that they are under no obligation to produce the emails in light of the stay on party discovery.  Letter from A. Lowell to Hon. E. Ramos, July 28, 2014 [ECF No. 208].  But even if the stay relieved Plaintiffs of their

---

[8] Defendants are not attaching documentary evidence relating to the foregoing assertions for several reasons.  First, Defendants are concerned that disclosing this information at this time will put Restis' business partners and associates and the former EST employees in Greece at risk of physical violence.  Restis has been accused of using violence and intimidation against those individuals in Greece who oppose him.  *See, e.g.*, Criminal filing by Ioannis Dritsas, dated July 18, 2013 (Ex. 16, L. Wolosky Decl.); Criminal Complaint filed by Alexandros Kapellaris, dated March 11, 2011 (Ex. 17, L. Wolosky Decl.).  Second, disclosing this evidence could help Restis conceal corroborative evidence which Plaintiffs are under an obligation to collect and produce.  To date, that obligation is unfulfilled.  Letter from D. Mitchell to A. Lowell, June 30, 2014 (Ex. 18, L. Wolosky Decl.).

obligation to produce these documents, they certainly cannot make representations to the Court

that are flatly contradicted by the documents.  Emails from Restis' accounts not only confirm

Restis' involvement in the conspiracy, but demonstrate that the allegations contained in each of

Plaintiffs' complaints are false.

### B.  If the SAC Is Dismissed on State Secrets Grounds, Plaintiffs Will Not Be Entitled to Injunctive Relief as a Matter of Law.

#### 1.  Restis Cannot Meet the Standard for Injunctive Relief

Even if one did not consider the evidence establishing the truth of Defendants' statements

about Plaintiffs' business dealings with Iran, and even before reaching the constitutional

protections implicated here, Plaintiffs are still not entitled to injunctive relief.  It is well-

established that a court can only issue a permanent injunction if the party seeking injunctive

relief "succeed[s] on the merits and show[s] the absence of an adequate remedy at law and

irreparable harm if the relief is not granted."  *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006)

(citing *N.Y. State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1362 (2d Cir. 1989)); *see also*

Fed. R. Civ. P. 65.  Dismissal of this action and the sole remaining claim for damages on state

secrets grounds would preclude Plaintiffs from meeting its burdens.

As a matter of black letter law, the dismissal of the SAC would mean that Plaintiffs did

not "succeed on the merits."  Fed. R. Civ. P. 41(b) (involuntary dismissal "operates as an

adjudication on the merits").  Dismissal would mean that Plaintiffs did not meet their burden of

proving that UANI's statements were defamatory.  Dismissal at this stage would also mean the

Court could not have made the required "special findings of fact and conclusions of law in

support of a permanent injunction."  *Knox v. Salinas*, 193 F.3d 123, 129 (2d Cir. 1999); *see also*

*Davis v. New York City Hous. Auth.*, 166 F.3d 432, 435 (2d Cir. 1999).

Likewise, Plaintiffs—who are reportedly pursuing defamation claims against Defendants in Greece arising out of the same core factual allegations as here—will not have established (and, as a matter of law, could not establish) the absence of an adequate remedy at law. *Bray v. City of New York*, 356 F. Supp. 2d 277, 286 (S.D.N.Y. 2004) ("[I]njunctive relief is proper only if the party seeking it has no adequate remedy at law, not when it would be merely 'helpful.'"). Courts in this Circuit "have long held that equity will not enjoin a libel" no matter how "great the injury to property may be." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001) (citing *Am. Malting Co. v. Keitel,* 209 F. 351, 354 (2d Cir. 1913)); *Bihari v. Gross*, 119 F. Supp. 2d 309, 324-25 (S.D.N.Y. 2000).

### 2.  *Restis is Libel-Proof*

Moreover, as a consequence of his criminal acts and criminal investigations unrelated to Defendants' statements, Restis is libel-proof as a matter of law and is, therefore, not entitled to damages. The Second Circuit has held that "in those instances where an allegedly libelous statement cannot realistically cause impairment of reputation because the person's reputation is already so low . . . even nominal damages are not to be awarded. Instead, the claim should be dismissed so that the costs of defending against the claim of libel, which can themselves impair vigorous freedom of expression, will be avoided." *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986).

Long before UANI ever said anything about Restis, his reputation had already been irretrievably damaged because of his participation in many criminal activities, including the attempted murder of EST's former head Ship Security Officer, Ex. 16, Criminal filing by Ioannis Dritsas, the beating of his former attorney, Ex. 17, Criminal Complaint filed by Alexandros Kapellaris, his participation in a "real estate mafia" comprised of "an illegal judicial network" formed to obtain valuable commercial real estate surreptitiously, *Restis, the Prime Forest*

11

*Property and the Real Estate Mafia!*, Dimokratia, July 26, 2011 (Ex. 19, L. Wolosky Decl.), and

a "colossal" tax evasion scheme which resulted in a €31.5 million fine against one of Restis'

companies, *Colossal Tax Evasion by Restis According to the Financial and Economic Crime*

*Unit's Report on the "Karouzos Gate"*, iefimedira, Sept. 30, 2012 (Ex. 20, L. Wolosky Decl.).

Since May 2013—when UANI first made statements about Restis—his legal troubles

have only worsened.  In July 2013—before the Complaint was even served on some

Defendants— Restis was imprisoned in Greece on money laundering and embezzlement charges

relating to bad loans of up to €500 million from FBB, a bank which Restis controlled.  His arrest

and incarceration were highly publicized in Greece and internationally.  *Greek Shipowner Jailed*

*Pending Money Laundering Trial*, Reuters, July 26, 2013 (Ex. 21, L. Wolosky Decl.).  This year,

Restis was publicly identified as a "new model of criminal" by Greece's Chief Anti-Money

Laundering Prosecutor in testimony to the Greek Parliament, assertions that were also highly

publicized.  Ex. 4, *Parliament: Nikoloudis Targets Proton and FBB*.  Restis was convicted and

sentenced to a six-month suspended sentence of imprisonment in April 2014 for making false

statements relating to the possession of firearms.  Vasilis Tzimtsos, *Shipowner Victor Restis*

*Convicted on Charges of False Declarations*, DirectNews, Apr. 5, 2014 (Ex. 22, L. Wolosky

Decl.).  In addition, Restis is involved in high-profile civil lawsuits in which various former

partners and business associates accuse him of pervasive fraudulent activities.  *See, e.g.*, *The*

*Businessman Alleges He Was Deceived by His Associates*, Philenews, Sept. 10, 2012 (Ex. 23, L.

Wolosky Decl.); *The Portrait of Gianna and the Revenge*, AxiaPlus, Aug. 12, 2012 (Ex. 24, L.

Wolosky Decl.).

Restis' long and very public history of criminality and other legal troubles has

irremediably compromised his ability to claim that his reputation was damaged by UANI's

statements, and has rendered Restis libel-proof.  *See Cardillo v. Doubleday & Co.*, 518 F.2d 638, 639 (2d Cir. 1975) (a plaintiff is libel-proof when he is "so unlikely by virtue of his life as a habitual criminal to be able to recover anything other than nominal damages").

### C.  Enjoining Defendants from Speaking About Plaintiffs' Business Activities in and with Iran Would Be an Unconstitutional Prior Restraint of Their First Amendment Rights.

Plaintiffs' Motion to Compel demonstrates their recognition that any request to enjoin Defendants "from speaking" about Plaintiffs' business activities in and with Iran would be faced "with a 'heavy presumption' against its constitutional validity."  *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994), cited by Mot. to Compel at 24 n.11.  It is a presumption Plaintiffs cannot overcome.

Any injunction prohibiting Defendants "from speaking" about Plaintiffs' business activities in Iran would constitute an impermissible prior restraint on Defendants' First Amendment right to make the public aware of those activities.  *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).  Prior restraints on speech and publication "are *the most serious and the least tolerable infringement on First Amendment rights*."  *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (emphasis added).  Prior restraints are especially disfavored when, as is the case here, the subject of the speech is "within the sphere of legitimate public concern."  *Bihari*, 119 F. Supp. 2d at 325.  Indeed, no prior decisions "support the claim that the interest of an individual in being free from public criticism of his business practices . . . warrants use of the injunctive power of a court."  *Keefe*, 402 U.S. at 419; *Metro. Opera Ass'n, Inc.*, 239 F.3d at 176.  While prior restraints may take many forms, "the risk of infringing on speech protected under the First Amendment" becomes more acute when the "prior restraint takes the form of a court-issued injunction."  *Metro. Opera Ass'n, Inc.*, 239 F.3d at 176.

Even in extreme circumstances, such as the seminal Pentagon Papers case, the Supreme Court has refused to enjoin the publication of classified national security information.  *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971).  If the Supreme Court would not authorize a prior restraint injunction over classified national security information, a prior restraint injunction is clearly improper here.

There has been no finding of liability in this case, which alone is sufficient to defeat any injunctive relief.  Indeed, the subject of UANI's speech—Restis' commercial activities in and with Iran, a state sponsor of terrorism—is a matter of great public concern and participation.  An injunction barring this kind of speech would not only unconstitutionally "freeze" UANI's First Amendment rights, but improperly "chill" similar groups from exercising constitutional protected rights as well.  *Nebraska Press Ass'n.*, 427 U.S. at 559 ("If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time.").

## II.   Plaintiffs Are Not Entitled to Any Of Their Proposed Alternative Remedies.

Recognizing they cannot enjoin Defendants' First Amendment rights to speak about Plaintiffs' business activities in Iran, Plaintiffs ask the Court for several alternative—but equally unconstitutional—remedies if the Court dismisses the SAC on the basis of the Government's invocation of the state secrets privilege.  Their proposed remedies are contrary to well established law, would have the same effect as a prior restraint, would "chill" constitutionally protected freedoms, and must be rejected.

Plaintiffs first ask the Court to "retain jurisdiction" over the case if it dismisses the SAC so that they may "bring new claims" if Defendants make statements about them "in the future"— a stunning admission of their intention to use their vast wealth and unlimited resources to continue to SLAPP their critics into silence.  Mot. to Compel at 23.  However, Plaintiffs'

suggested remedy would exceed the Court's authority and, in any event, Plaintiffs need no special dispensation to "bring new claims" relating to future statements.

Plaintiffs' request that the Court use this lawsuit to retain or assert jurisdiction over hypothetical future claims has no basis in law.  Once a complaint is dismissed, the Court loses jurisdiction over the parties and the claims for relief, subject to narrow exceptions not applicable here.[9]  Courts do not retain jurisdiction to preside over new claims that arise from new conduct occurring after dismissal, even if those claims involve the same parties and the same kinds of conduct.  *See Peacock v. Thomas*, 516 U.S. 349, 358 (1996).  Plaintiffs' remedy is to file a new lawsuit.

Plaintiffs also ask the Court to (1) put Defendants "on clear notice" that they will be subject to future defamation claims if they either repeat prior statements or keep those prior statements on UANI's website and (2) "make clear" that Defendants will be required to defend those future claims without any of the evidence subject to the Government's state secrets privilege.  Mot. to Compel at 23-24.  Plaintiffs' suggestion is little more than an attempt to use the power of a federal court to censor their critics, without any finding of fault.  If adopted,

---

[9] In certain very narrow circumstances not applicable to this case, federal courts may exercise "ancillary jurisdiction."  The doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters *properly* before them."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80 (1994) (emphasis added).  Broadly speaking, federal courts exercise ancillary jurisdiction "for two separate, though sometimes related, purposes:  (1) to permit disposition by a single court of *claims* that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its *proceedings,* vindicate its authority, and effectuate its decrees."  *Kokkonen,* 511 U.S. at 379–80 (emphasis added).  Neither purpose applies here.  This Court's authority to resolve subsequent and even factually intertwined claims in a single action vanishes once the Court dismisses the SAC.  *Cf. Peacock v. Thomas*, 516 U.S. 349, 355 (1996).  "Neither the convenience of litigants nor considerations of judicial economy" can justify extending ancillary jurisdiction to new defamation claims that Plaintiffs might contemplate filing against Defendants in the future.  *Id.*  Federal courts do not have authority to apply ancillary jurisdiction over subsequent claims that are "entirely new and original or where the relief sought is of a different kind or on a different principle" than that of the prior decree.  *Id.* at 358 (internal quotation marks and citations omitted).  Similarly, if the Court dismisses the SAC, there will be no judgment or decree to manage, vindicate, or effectuate.  *Cf. Kokkonen,* 511 U.S. at 380-81 ("[T]he only order here was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement.").

Plaintiffs' requested relief would compel Defendants to retract their existing statements without any adjudication that those statements were false and defamatory. Plaintiffs' requested relief would also require the Court to pre-determine *in this case* which defenses would or would not be available to Defendants, and what privilege invocations would or would not be available to the Government, *in any future cases* before Plaintiffs' hypothetical "new claims" even arise. *Id.* Retaining jurisdiction specifically for the purpose of policing restrictions on UANI's speech without any finding of liability would impermissibly chill the constitutionally protected freedoms of advocacy groups such as UANI. *Nebraska Press Ass'n.*, 427 U.S. at 559 ("[A] threat of criminal or civil sanctions after publication 'chills' speech . . . ."); *cf. Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965) ("The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure."). Plaintiffs stated desire to bring repeated lawsuits against Defendants is a remarkable admission of the harassing purpose behind this litigation.[10] Adopting Plaintiffs' request would enable this kind of SLAPP harassment in perpetuity.

Plaintiffs' request to enjoin Defendants indirectly by compelling them to retract their prior statements fails for an additional and important legal reason—those statements are no longer actionable under New York law, which applies here. SAC at ¶ 144 (asserting that the

---

[10] Plaintiffs also use litigation to lodge inflammatory accusations against Defendants, which they then peddle to their one friend in the "media." Recent media articles have claimed that UANI is "actively engaged in spreading false information" about Restis, Ali Gharib and Eli Clifton, *Is the Justice Department Shielding an Anti-Iran Smear Campaign?*, The Nation, Nov. 4, 2014, http://www.thenation.com/blog/188041/justice-department-shielding-anti-iran-smear-campaign (Ex. 25, L. Wolosky Decl.), that UANI is promoting unrest in the Middle East for the financial benefit of Ambassador Wallace, Eli Clifton, *Billionaire's Sketchy Middle East Gamble*, Salon, Aug. 11, 2014, http://www.salon.com/2014/08/11/billionaires_sketchy_middle_east_gamble_meet_the_man_betting_on_war_with_iran (Ex. 26, L. Wolosky Decl.), and that UANI is purposefully attacking companies that make legal shipments to Iran, Eli Clifton and Ali Gharib, *Pro-Sanctions Group Targets Legal Humanitarian Trade with Iran*, The Nation, Nov. 13, 2014, http://www.thenation.com/blog/190601/pro-sanctions-group-targets-legal-humanitarian-trade-iran (Ex. 27, L. Wolosky Decl.). Plaintiffs, their counsel, and their PR team should explain their obvious, peculiar and inappropriate relationship with this "media" outlet.

defamation claim arises under New York common law).  New York adheres to the "single publication" rule.  Under that rule, the publication of a defamatory statement in a mass medium, even though it may be widely redistributed, "is, in legal effect, one publication which gives rise to one cause of action."  *Gregoire v. G. P. Putnam's Sons*, 81 N.E.2d 45, 47 (N.Y. 1948).  The single publication rule applies to statements published on a website.  *Firth v. State*, 775 N.E.2d 463, 466 (N.Y. 2002).  Thus, Defendants are not committing new torts against Plaintiffs simply by leaving the statements (even allegedly defamatory statements) that they published over a year ago on the archived portions of UANI's website.[11]

Moreover, even if the single publication rule did not apply, and even if Defendants were publishing "new statements" by leaving past statements on UANI's website, a federal court cannot restrain future speech by ordering Defendants to remove the statements on a prospective basis without, at a minimum, first finding that the statements were defamatory.  *Metro. Opera Ass'n, Inc.*, 239 F.3d at 176 (reversing a preliminary injunction that "risk[ed] contempt sanctions for speech that may ultimately, after full appellate review, [have been] found constitutionally protected"); *Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963) (refusing to enforce an injunction that regulated future speech even after a finding of libel in past statements).

## III.   Plaintiffs Fail to Distinguish UANI's 2013 Statements and 2014 Statements.

Plaintiffs' argument for retaining jurisdiction rests, in part, on the erroneous premise that *any* past or future UANI utterance about Restis or EST is not only defamatory, but that each statement about them relates back to the original 2013 statements and therefore constitutes a continuing tort.  In reality, Defendants' past statements about Restis and EST fall into two

---

[11] If Plaintiffs initiated a new lawsuit based on Defendants prior statements, it would be barred both by the statute of limitations, *see* N.Y. C.P.L.R. § 215(3), and the doctrine of *res judicata*, *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 896 (2d Cir. 1983).

categories—2013 statements and 2014 statements.  Plaintiffs conflate the 2013 statements and the 2014 statements in an attempt to convince the Court that Defendants—no matter what statements that they make about Restis—are somehow continuing to defame him.

### A.  2013 Statements

UANI's 2013 statements related to Restis' involvement in a conspiracy with Cambis, among other individuals, and the Iranian government to smuggle Iranian oil in violation of international sanctions.  UANI believes that following the public disclosure of the conspiracy resulting from UANI's statements and the U.S. Government's designation of Cambis, Restis ended his participation in the conspiracy.  Consequently, UANI has not made any statements about this conspiracy since July 2013.  Absent evidence of its renewal, UANI would not publish statements in the future related to the conspiracy's continuation.

### B.  2014 Statements

UANI's 2014 statements relate to Restis-owned ships that made port calls to Bandar Imam Khomeini Terminal in Iran.  The 2014 statements do not assert that these ships were violating international sanctions or that these shipments were part of a conspiracy between Restis, Cambis, and the Iranian government.  Plaintiffs concede that the 2014 statements are true—that Restis' ships, in fact, made repeated calls on Iranian ports—but claim they that these port calls were made to deliver foodstuffs to Iran in compliance with the international sanctions regime.  UANI has not stated that these shipments—if they are in fact as described—are contrary to U.S. and other laws, but that they are appropriately subject to intensive scrutiny and circumspection, and has stated as much.

Restis' recent business activities in Iran merit particular attention because of Restis' previous false statements to the world media (and to the Court) that he had "never had dealings with the Iranian government, ministry or any Iranian people, period," Ex. 8, Aaron Kelley, *Restis*

*Torpedoes Allegations*; Compl. ¶¶ 15, 79; Am. Compl. ¶¶ 15, 78, statements that are incompatible with evidence showing that Plaintiffs' vessels have frequently and regularly visited Iranian ports, a fact that Plaintiffs now concede.

Restis' business activities in Iran also merit close attention because of his prior attempts to conceal his involvement with U.S. sanctioned-designated Dimitris Cambis. Restis repeatedly stated that he had no involvement "whatsoever" with Cambis. *See* Ex. 6, EST Press Release. But emails sent to and from Restis' personal email accounts demonstrate that Restis communicated with Cambis, Victor Olsen, and others to develop and implement a scheme to buy Iranian crude oil and sell it to China.

Finally, Restis' uncorroborated claim that his business activities in Iran are not unlawful merits scrutiny because of Restis' multiple criminal entanglements, including a criminal conviction for making false statements to governmental authorities. Ex. 22, Vasilis Tzimtsos, *Shipowner Victor Restis Convicted on Charges of False Declarations*.

Restis' demonstrated mendacity undercuts his credibility, including his self-serving denials of improper business dealings. UANI and others have called on Restis to clarify his past inconsistent statements about his Iran dealings. The Court has also recognized that Plaintiffs' unsuccessful attempts to conceal their business in Iran have raised questions regarding the nature of their activities in Iran. Ex. 12, Pre-Trial Conf. Tr. at 16:13-17:2, Feb. 14, 2014. UANI's 2014 statements relate to this credibility gap—not to Restis' past involvement in a conspiracy to violate international sanctions.

Given the foregoing, the Court should not accept Plaintiffs' argument that the 2014 statements are legally problematic because they "*implied* that [Restis'] activities violated the sanctions against Iran." SAC ¶ 87 (emphasis added). This strained reading not only

misconstrues the 2014 statements, but also ignores the fact that UANI raised questions in 2014 because of Restis' repeated misrepresentations regarding his business dealings in and with Iran.

Moreover, the 2014 statements on their face are clearly not defamatory. Not even Restis denies that the 2014 statements accurately report that his ships are calling on Iran ports. Nevertheless, Plaintiffs believe that they should be immune from any criticism, scrutiny, or comment about their ongoing business in Iran—period. That view squarely rejects the idea of vigorous public debate that is rightly safeguarded in the United States. Plaintiffs want the Court to bar UANI from saying anything about Restis going forward—the very epitome of a SLAPP suit. Yet, Restis continues to conduct business in Iran and UANI has a constitutional right to continue to speak out if it has questions about, or criticisms of, Restis' ongoing business activities there. As Defendants' counsel noted in a recent hearing, "[i]f Mr. Restis would like to stop [public questioning about his business in Iran], he should stop doing business in Iran." Pre-Trial Conf. Tr. at 40:17-19, Oct. 8, 2014 (Ex. 28, L. Wolosky Decl.).

Plaintiffs claim that Defendants' mere mention of Restis' ongoing business in Iran in a recent hearing constituted an example of continuing wrongful conduct on the part of Defendants. Mot. to Compel at 1 n.1. But the world in which Restis wishes to live—in which no one questions his conduct—does not exist, at least not in the United States. Restis may not like questions about his business activities in Iran, but suggesting that scrutiny equates to defamation demonstrates a great deal both about Restis' world view and his motivations in pursuing litigation here and in Greece against his numerous detractors, including many former business partners. *See, e.g.*, *Shipowner V. Restis Arrested for Money Laundering*, Eleftheria, July 24, 2013 (Ex. 29, L. Wolosky Decl.) (Restis sued former FBB employees after being arrested on charges of money laundering); Ex. 19, *Restis, the Prime Forest Property and the Real Estate*

*Mafia!* (Restis sued eleven business associates who were implicated along with Restis in a real estate bribery scheme).

## IV.    The Court Should Reject Plaintiffs' Request for Disclosures from Defendants.

In their Motion to Compel, Plaintiffs treat Defendants, a private U.S. not-for-profit organization and its employees, as an arm of the Government, and argue that Defendants have an obligation to disclose information before the Court can determine the effect of the state secrets privilege.  This position is reflected in the full title of Plaintiffs' motion:  "Motion to Compel the United States *and Defendants* to Provide Additional Information Relating to the Assertion of the State Secrets Privilege and Opposing Dismissal of the Case" (emphasis added).  Likewise, Plaintiffs argue that "more information is needed from the Defendants" before the Court can decide whether to dismiss the case based on state secrets.  Mot. to Compel at 16.  Indeed, Plaintiffs go so far as to suggest that the Government and Defendants must jointly disclose what valid defenses would be impacted by the state secrets claim and "how the state secrets evidence would support" any valid defense.  *Id.* at 20.

Defendants are not the Government, have not seen the Government's *ex parte* submissions, and do not know the extent of the information over which the Government has claimed privilege.  To the extent that Plaintiffs want Defendants to disclose privileged information, this is simply an attempt to circumvent the Government's invocation of the state secrets privilege.[12]  If Defendants possess information that could be subject to the state secrets privilege, Defendants cannot disclose that information until the Government has fully litigated its claim of privilege.  The Government has sole control over the exercise of the privilege.  *See*

---

[12] To the extent that Plaintiffs are seeking non-privileged materials from Defendants, such disclosure is only appropriate if it is reciprocal.  The Amici Brief suggests that the Court should order non-privileged, "controlled" discovery.  Br. Of Amici Curiae at 16, Oct. 29, 2014 [ECF No. 294] ("Amici Br.").  If so, it must come from both parties.  This would include both document productions from, and depositions of, Plaintiffs.

*United States v. Reynolds*, 345 U.S. 1, 7 (1953) ("The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party."); *Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 546 (2d Cir. 1991) (holding that "[t]he privilege may be invoked only by the government").

Although the Government's decision to invoke the state secrets privilege is the Government's alone, Plaintiffs would like the Court to believe that Defendants had the capacity to "graymail" the Government into invoking the state secrets privilege, Mot. to Compel at 1-2, or that the Government was forced to invoke the privilege because of Defendants' improper use of classified information, speculating that Defendants either mishandled properly obtained classified information, improperly and "potentially criminally" obtained classified information, or that Defendants participated in an "unlawful conspiracy" with the Government against Plaintiffs, *id.* at 20-21.  Defendants categorically deny Plaintiffs' wild-eyed allegations. Defendants are law abiding U.S. citizens with well-known and highly regarded public reputations for public service, accuracy and integrity.  By contrast, only Restis has been convicted of serious crimes and only Restis is under active investigation for committing a vast array of even more serious crimes that could carry a sentence of life imprisonment.

## V.    Defendants Oppose Any Further Disclosure to Plaintiffs of the Government's *Ex Parte* Submission.

While Defendants take no position on what, if any, additional public disclosure is required of the Government, Defendants oppose the disclosure to Plaintiffs of the Government's *ex parte* submission.  UANI accepts the Government's representation that the privileged materials contain highly classified national security information.  That information should not be released to Plaintiffs.  Restis is a convicted criminal and his own government has branded him a "new model of criminal."  He should not be given any material that affects the national security

interests of the United States, whether or not such material mentions UANI or the other

Defendants.  Nor should such material be disclosed to Restis' counsel,[13] especially in light of

Plaintiffs' use of multiple public relations firms to plant false information about UANI and its

supporters in the public domain here and abroad.[14]

## VI.     The Court Must Dismiss This Case if the State Secrets Privilege Would Deny Defendants a Valid Defense.

As an alternative to dismissal, Plaintiffs suggest that any privileged evidence can simply

"fall out" of the case, even if Defendants could use it to establish a valid defense, and both sides

can continue to litigate without the privileged evidence.  Mot. to Compel at  23.  Regardless of

whether the state secrets privileged information impacts Plaintiffs' ability to establish a *prima*

*facie* case, the Court must still dismiss the case if it determines that the state secrets privilege

would deny Defendants the opportunity to present a valid defense.  As a threshold matter,

Plaintiffs have misleadingly cited *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d. 268 (4th Cir.

1980), to support their position.  In *Farnsworth Cannon*, a panel of the Fourth Circuit reversed a

trial court's dismissal of an action based on state secrets grounds.  *Id.* at 271.  Plaintiffs cited this

panel opinion for the proposition that the loss of evidence due to the state secret invocation is a

neutral consideration that should fall upon Defendants, suggesting that *Farnsworth Cannon*

---

[13] Plaintiffs argue that their counsel should "have access to the Government's submissions claiming a privilege is appropriate," but do not appear to believe that Defendants' counsel is entitled to similar access.  Mot. to Compel at 11.  By contrast, the Amici argue that disclosure to counsel, if any, should be symmetrical.  Amici Br. at 6 (arguing that the Government should be required "to disclose" any additional information "to security-cleared counsel *for the parties*") (emphasis added).  To the extent the Court were to order any disclosure, that disclosure must be equally provided to Plaintiffs and Defendants.

[14] Among other things, UANI and its supporters have been called a foreign intelligence front, *see, e.g.*, Matt Apuzzo, *Justice Department Moves to Shield Anti-Iran Group's Files*, New York Times, July 27, 2014, http://www.nytimes.com/2014/07/28/us/politics/us-justice-dept-moves-to-shield-anti-iran-groups-files-united-against-nuclear-iran.html (Ex. 30, L. Wolosky Decl.), graymailers, Mot. to Compel at 1-2, blackmailers, Ex. 8, Aaron Kelley, *Restis Torpedoes Allegations*, "crooks" carrying out "organized crime at the highest level," *id.*, war profiteers, Ex. 26, Eli Clifton, *Billionaire's Sketchy Middle East Gamble*, criminal abusers of classified information, Mot. to Compel at 21-22, and co-conspirators with the Government to violate Restis' civil rights, *id.* at 22.  Plaintiffs also falsely claim that UANI is responsible for Restis' criminal problems and caused him to be incarcerated in Greece.  Letter from A. Lowell to Hon. K. Fox (M.J.), May 27, 2014 [ECF No. 155].

advises against dismissal of this action.  Mot. to Compel at 18.  Plaintiffs fail to acknowledge, however, that upon rehearing *en banc*, the Fourth Circuit reversed the panel opinion and affirmed the trial court's dismissal of the case.  *Farnsworth Cannon*, 635 F.2d at 281 (*en banc*).  The *en banc* panel noted that "[i]n an attempt to make out a prima facie case during an actual trial, the plaintiff and its lawyers would have every incentive to probe as close to the core secrets as the trial judge would permit.  Such probing in open court would inevitably be revealing." *Id.*; *see also Fitzgerald v. Penthouse Int'l, Ltd*., 776 F.2d 1236, 1240 (4th Cir. 1985) ("In *Farnsworth Cannon, Inc. v. Grimes,* 635 F.2d 268 (4th Cir.1980) (en banc), this court affirmed the district court's dismissal of an action for tortious interference with reasonably expected future contract rights due to an assertion of the state secrets privilege by the U.S. Navy.").  *Farnsworth Cannon* is instructive, but for the very opposite reason that Plaintiffs' claim.

Courts have repeatedly held that dismissal is appropriate when "the defendant will be deprived of a valid defense based on the privileged materials." *In re Sealed Case,* 494 F.3d 139, 149 (D.C. Cir. 2007); *Gen. Dynamics Corp.,* 935 F.2d at 547 ("[I]f the court determines that the privilege so hampers the defendant in establishing a valid defense that the trier is likely to reach an erroneous conclusion, then dismissal is also proper."); *Tenenbaum v. Simonini,* 372 F.3d 776, 777 (6th Cir. 2004) (finding that the district court properly dismissed the claims "[b]ecause the state secrets doctrine . . . deprives Defendants of a valid defense to the [plaintiff's] claims"); *Kasza v. Browner,* 133 F.3d 1159, 1166 (9th Cir. 1998) ("[I]f the privilege deprives the *defendant* of information that would otherwise give the defendant a valid defense to the claim, then the court may grant summary judgment to the defendant.") (emphasis in original) (internal citation omitted).  Indeed, "it would be a mockery of justice for the court" to allow a case to go

forward knowing that a verdict for the plaintiff would be an "erroneous conclusion." *Molerio v. F.B.I.*, 749 F.2d 815, 825 (D.C. Cir. 1984).

Plaintiffs' and Amici's suggestion that the valid defense doctrine should not apply to non-government defendants is refuted by case law.  In *Bentzlin v. Hughes Aircraft Co.,* 833 F. Supp. 1486 (C.D. Cal. 1993), the court dismissed a suit by family members of U.S. Marines killed in combat against a private military contractor.  Upon the invocation of the state secrets privilege by the Secretary of the Air Force, the court held the suit could not go forward, among other reasons, because the "state secrets privilege seriously prejudices Hughes' ability to defend against plaintiffs' case." *Id.* at 1496; *see also Mounsey v. Allied-Signal et al*., No. CV95-4309SVW, 2000 WL 34017116, at *14 (C.D. Cal. Apr. 10, 2000) ("In short, the government's invocation of the state secrets privilege materially prejudices the ability of Defendants McDonnell Douglas, Sikorsky Aircraft, and United Technologies to establish a government contractor defense. Plaintiffs' claims against these defendants must therefore be dismissed.").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' proposed remedies seeking that:  (1) the Court retain jurisdiction over this case after dismissal; (2) the Court require Defendants to disclose privileged or non-privileged information; (3) the Court grant Plaintiffs access to privileged information; and (4) the Court allow this case to go forward even if privileged materials would deny Defendants a valid defense.

Dated: November 19, 2014                                 Respectfully Submitted,

                                                         BOIES, SCHILLER & FLEXNER LLP
                                                         By:____/s/Lee S. Wolosky____
                                                         Lee S. Wolosky
                                                         575 Lexington Ave.

New York, NY 10022
Tel: (212) 446-2300
Email: lwolosky@bsfllp.com

Amy L. Neuhardt
5301 Wisconsin Ave, N.W.
Washington, D.C. 20015
Tel: (202) 237-2727
Email: aneuhardt@bsfllp.com

Douglass A. Mitchell
300 South Fourth St.
Suite 800
Las Vegas, NV 89101
Tel: (702) 382-7300
Email: dmitchell@bsfllp.com

STACK FERNANDEZ ANDERSON &
HARRIS, P.A.
Brian J. Stack, Esq.
E-mail:  bstack@stackfernandez.com
Brickell Bay Office Tower
1001 Brickell Bay Drive, Suite 2650
Miami, Florida  33131-4940
Tel. 305-371-0001
Fax. 305-371-0002

*Attorneys for Defendants American
Coalition Against Nuclear Iran, Inc. a/k/a
United Against Nuclear Iran, Mark D.
Wallace, David Ibsen, Nathan Carleton,
Daniel Roth, Martin House, Molly Lukash,
and Lara Pham*