**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VICTOR RESTIS and ENTERPRISES SHIPPING AND TRADING S.A. | Case No. **13-civ-5032 (ER)(KNF)** |
| Plaintiffs, | |
| - v. - | |
| AMERICAN COALITION AGAINST NUCLEAR IRAN, INC. a/k/a UNITED AGAINST NUCLEAR IRAN, MARK D. WALLACE, DAVID IBSEN, NATHAN CARLETON, DANIEL ROTH, MARTIN HOUSE, MATAN SHAMIR, MOLLY LUKASH, LARA PHAM, and DOES 1-10, | |
| Defendants | |
| UNITED STATES OF AMERICA, | |
| Intervenor. | |

**REPLY TO GOVERNMENT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE UNITED STATES AND DEFENDANTS TO PROVIDE ADDITIONAL INFORMATION RELATING TO THE ASSERTION OF THE STATE SECRETS PRIVILEGE AND OPPOSING DISMISSAL OF THE CASE**

The latest pleadings filed by the Government and Defendants are proof that the type of adversarial proceedings Plaintiffs have sought and the Court said it favored can actually sharpen the issues.  The Government intervened in this case out of the concern that allowing the case to go forward would cause the disclosure of state secrets.  Plaintiffs have known all along that they do not possess any classified information or state secrets that they would be introducing to press their claims.  With their recent filings, Defendants have conclusively demonstrated that the Government's concerns are misplaced because Defendants concede they too can mount a full

defense of the case without relying on any classified information or state secrets.  Consequently, even assuming state secrets exist that could somehow be relevant to this case, both parties have shown they can fairly litigate their positions and move forward without any state secrets.  With these confirmations by the parties themselves, if any theoretical state secrets do exist, the Court can simply set up guard rails where necessary to keep the litigation from entering a state secret territory that the parties seemingly agree the litigation does not need to enter.  In light of the parties' ability to litigate the case without involving state secrets, if the Government still insists on asserting the privilege, it certainly has to present a stronger basis before being able to scuttle a case both parties affirm can be presented without the Government's interest being affected.

I.   **THERE IS LITTLE DISAGREEMENT REGARDING THE APPLICABLE LAW FOR EVALUATING STATE SECRETS CLAIMS.**

The parties have submitted charts of cases and have gone tit-for-tat in arguing the scope of dozens of cases, but the disagreements are far narrower than they may appear.  The parties agree that in state secrets cases:

- "[T]he amount of information the Government can publicly reveal regarding the state secrets it is protecting varies from case to case."  (Gov't Br. at 4.)

- "[I]n the normal course, the Government often is able to file public declarations in support of its assertion of the state secrets privilege that provide some information regarding the nature of the privileged information."  (*Id.* at 5.)

- "The government's public statement need be no more (and no less) specific than is practicable under the circumstances."  (*Id.* at 5 (quoting *Ellsberg v. Mitchell*, 709 F.2d 51, 64 (D.C. Cir. 1983).)

- In many instances, the context for the assertion of state secrets can readily be understood because there are "publicly known circumstances (such as a military accident), or activities and programs that the Government has publicly acknowledged." (*Id.* at 5.)

- The instances where the "Government's state secrets assertion has been entirely under seal" – as is the case here – are "extremely rare." (*Id.* at 8.)

- The Court has a number of potential remedies it can impose when state secrets are relevant to a case, including dismissal – but "dismissal is a drastic remedy." (*Id.* at 2.)[1]

The disagreement is not about the governing law, but whether this case falls in the "extremely rare" category where no public (or even private) disclosures can be made. After all this time, the Government finally has identified only one other case – from more than a decade

---

[1]   Defendants chide Plaintiffs' counsel for "misleadingly" citing the panel opinion in *Farnsworth Cannon* that the loss of evidence due to the invocation of a privilege, like the state secrets privilege, is ordinarily a neutral consideration because the panel decision was overturned by the Fourth Circuit *en banc*. (Defs' Br. at 23.) The quoted language from the panel opinion remains good law: "The unavailability of the evidence is a neutral consideration, and, whenever it falls upon a party, that party must accept the unhappy consequences." *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 271 (4th Cir. 1980) (panel opinion). The *Farnsworth Cannon* decision is recorded in a somewhat unusual manner, with the panel decision and the *en banc* decision joined under the same citation. Plaintiffs' counsel acknowledge that for the sake of clarity it would have been better to clarify this quote was from the panel opinion, but assure the Court there was no intent to mislead. The *en banc* court did not cast doubt on the quoted proposition, but merely found the facts of that case differently than the panel had applying the same rule. In reversing the district court, the panel noted "we have no difference of law – only a relatively narrow one of fact" with the district court as to whether the plaintiff could make out a prima facie case without privileged information. *Id.* at 273. The district court had concluded the plaintiff could not make out a *prima facie* case, the panel then reversed and remanded to flesh out whether the litigation could proceed, but the *en banc* court affirmed because it believed "any attempt on the part of the plaintiff to establish a *prima facie* case would so threaten disclosure of state secrets" that further litigation should be precluded. *Id.* at 281 (*en banc*). In other words, the *en banc* court followed the same principle, but simply found the burden fell on the plaintiff because the plaintiff could not prove its case without jeopardizing state secrets.

ago and with far more disclosures than here – where so little was disclosed.[2]  It is difficult to understand why the Government believes no more can be disclosed here.

It also should not be contested that "to ensure that the state secrets privilege is asserted no more frequently and sweepingly than necessary, it is essential that the courts continue critically to examine instances of its invocation." *Ellsberg*, 709 F.2d at 58.  The Court has considerable latitude in how it conducts that examination.  In some instances, it may be sufficient to decide the case without the Court reviewing the underlying state secrets evidence *in camera* or such a review may be necessary – as was the case in *Terex*, which the Government seems to believe is analogous.  (Dkt. 298-3 at 16 n.1 (*Terex* Court explaining it reviewed the classified submission in chambers).)  The Government acknowledged the Supreme Court set up a sliding scale as to how much scrutiny is warranted, but claims that "scale measures how much information the Government must disclose *to the court*" and not disclose publicly.  (Gov't Br. at 12.)  The Government's attempt to cabin this Court's discretion on how best to proceed is mistaken.

_____

[2]     The Government cites *Terex Corp. v. Fuisz*, No. 92-0941 (D.D.C. 1993), and attaches a Memorandum the Government filed in that case as Exhibit 1 of the Coppolino Declaration.  (Dkt 298-3.)  That case and Memorandum actually prove <u>Plaintiffs'</u> point.  In *Terex Corp.*, a defendant, Dr. Fuisz, claimed he was "aware of certain classified national security information based on his past contact with the government," and he refused to answer certain questions from Plaintiffs' counsel at a deposition because it would require the disclosure of that very information.  (Dkt. 298-3 at 1.)  As we understand the case, the plaintiff there wanted the names and/or identities of sources.  Putting aside that Defendants in this case are asserting their allegations are made from non-state secret information, in *Terex*, the Government did disclose who possessed national security information and how it was obtained, and the plaintiff knew which of its questions would call for the disclosure of that information.  Here, the Government has not disclosed what (if any) witness poses a threat of the disclosure of state secrets or the nature of that information.  If such information were disclosed, the parties could explore using special procedures for handling such witnesses or addressing sensitive topics well short of dismissal.  Most important, while protecting the state secrets in *Terex*, the court there did <u>not</u> dismiss the case and after the discovery battles, the case settled.  This is hardly precedent for the Government's request here.

The issue for the Court is whether the Government has appropriately invoked the state secrets privilege and, if so, what the appropriate remedy should be. To answer those questions, the Court needs information and needs to understand its remedial options. Certainly, one way of enhancing the Court's understanding of the facts and its options is for the Government to increase the amount of information it discloses only to the Court. But the Government is at best naïve in suggesting that disclosure to the parties, so that the adversarial process can function, would not benefit the Court in analyzing these issues. The Court has acknowledged that Plaintiffs' counsel can assist in understanding the issues: "from what I have seen, plaintiffs' lawyers are rather imaginative folks. They've come up with some wonderful hypotheticals. I have no doubt that if given an opportunity and some greater information they can further tailor those arguments and perhaps even make compelling arguments that would cause me to consider the information that [the Government has] provided." (Pls' Br., Ex. A at 27:10-15.)

The recent pleadings, again, demonstrate the value of the Court hearing from all the parties – not just taking the Government's word for it. Nothing prevents the Court from involving counsel for the parties to the extent possible to be of assistance. Nor is there anything exceptional about this. Indeed, the very purpose of the typical public declarations, being as forthcoming as possible, is to encourage the truth-seeking function of the adversarial process. *See, e.g.*, *Ellsberg*, 709 F.2d at 63-64. As part of this process, the Court may search for a middle ground where information is not disclosed publicly, but is provided to counsel who obtain a security clearance. It is a merely a truism that this involvement of private, cleared counsel is not always done, but this is not the typical case. Here, the Government is not a party, its interests are hard to discern, and the Government's lack of any public disclosure makes it impossible to address its concerns beyond the most abstract level.

5

The Government overplays its hand in arguing that it cannot be compelled by the Court to grant access to classified material to cleared counsel because that is done only "in furtherance of a governmental function."  (Gov't Br. at 15.)  The fact that Plaintiffs stand opposed to the Government on this issue does not mean that granting Plaintiffs' counsel access does not serve a "governmental function."  That function is to assist the Court, as a co-equal arm of the government, in assessing the Government's invocation of the state secrets privilege.  That is no different or less worthy a government function than the Court determining the proper procedures in a criminal case, where opposing counsel are routinely granted access to classified information to assist the court pursuant to the Classified Information Procedures Act ("CIPA").

The Government also loses sight of the key point in arguing that there are special needs to grant counsel access to classified information in criminal cases and "the unique and sensitive circumstances" involving the civil *habeas* Guantanamo cases.  Yes, they arise in different contexts, but they illustrate that there are times when it is appropriate to grant opposing counsel access to classified information and that established procedures for doing so are in place.  There is no reason they cannot be utilized here.  As the Government acknowledges – while noting its disagreement – other courts have suggested it is appropriate in this very context.  (Gov't Br. at 19-20 & n.10-11.)  Even Judge Lamberth, who the Government applauds for his handling of the *Terex* case, ordered the use of these procedures in a similar context prior to the Government settling that case and asking that the order be vacated.  *See Horn v. Huddle*, 636 F. Supp. 2d 10, 18-19 (D.D.C. 2009).  The Government can either try to distinguish or state its disagreement with every case in which private counsel was given the access suggested by the Court here, but this remedy has been used and this is a good case for its application now.

## II.   THE PARTIES AGREE THE CASE CAN BE FAIRLY LITIGATED WITHOUT STATE SECRETS.

It is now clear the Government's concern that this litigation could disclose state secrets is overblown.  Plaintiffs do not possess any classified information or state secrets and cannot imagine introducing any such evidence as part of their case.  While the Government may have a concern in other cases that "plaintiffs will have every incentive to probe dangerously close to the edge (if not beyond) what may be at issue in the privilege assertion" (Gov't Br. at 11), that would not be the case here.  Plaintiffs in this case need to prove they were not violating the sanctions against Iran and that Defendants' claims to the contrary were made with malice.  Perhaps the Government does have evidence that would help Plaintiffs prove these points, but Plaintiffs can make their case without such evidence, and it is difficult to imagine how that evidence could be a state secret (if it even exits).

Whatever theoretical concern the Government may have had that Defendants would raise state secrets in their defense should be easily dispelled by Defendants' brief here.  Defendants' brief is another extended hit piece against Plaintiffs, which sets out the alleged "facts" that Defendants believe establishes the truth of the claims they have made against Plaintiffs.  In doing so, Defendants made a concession that should dispose of the Government's need to assert privilege when they state they have "carefully relied only on information that could not be subject to the Government's state secrets privilege" and that all the evidence they reference is "non-privileged."  (Defs' Br. at 8 n.7.)  To be sure, as a factual matter, Plaintiffs vigorously dispute the allegations Defendants have made (and these wild accusations are addressed in the separate response to Defendants' brief).  But whether the facts are as Plaintiffs claim or as Defendants claim is the very point of a trial.  For the purposes of the state secrets privilege analysis, Defendants have set forth what would appear to be a full and complete defense of the

case at trial – while noting that no state secrets would be disclosed in presenting that evidence. Given all the non-privileged evidence upon which Defendants intend to rely, it is difficult to imagine what more Defendants would want to introduce.

Nor is it clear how Defendants could introduce state secrets into the case in any event. Defendants "categorically deny" they even "had the capacity to 'graymail' the Government into invoking the state secrets privilege," or that they either "mishandled properly obtained classified information" or "improperly and 'potentially criminally' obtained classified information," or conspired with the Government to harm Plaintiffs.  (Defs' Br. at 22.)  If Defendants can introduce all the evidence it summarizes in its brief without disclosing state secrets, and Defendants can attest that they did not improperly obtain any classified information, mishandle classified information entrusted to them by making it public in their accusations against Plaintiffs, or conspire with the Government to injure Plaintiffs, then it is difficult to imagine what relevance state secrets could have to this case at all, let alone be sufficient to support non-party Government's motion to dismiss.

Defendants do claim that dismissal would be warranted <u>if</u> state secrets deprive them of a valid defense, but Defendants demonstrate they can make their defense without such evidence. (Defs' Br. at 23.)  Moreover, as Plaintiffs previously demonstrated, even if Defendants were to claim a need to prove a defense with state secrets, they would bear the burden to show that defense is meritorious and not just "merely plausible."  (Pls' Br. at 19-23.)  Defendants notably make no claim they have a defense that depends on state secrets, let alone a meritorious one.

The Government does not seriously contend that state secrets would have to be introduced as part of either Plaintiffs' case or Defendants' case, but claims dismissal is warranted under a third category of cases in which "privileged information is so at risk of disclosure that

8

any attempt to proceed will risk harm to national security."  (Gov't Br. at 30.)   Under that nebulous theory, every case would have to be dismissed on the Government's "trust us, we are right" word.  But if the evidence is not introduced by Plaintiffs or by Defendants, it is difficult to imagine how such state secrets would otherwise be disclosed.  Perhaps there is a category of cases where, despite the parties' best efforts to exclude state secrets, the risk of disclosure may be too great given the context of the case, such as a case involving the design of nuclear weapons or the propriety of a military strategy being employed.  Given the nature of the parties and the claims, this is not such a case.  This is a private defamation action between purely private parties, with no obvious connection to the Government whatsoever.

The Government concedes cases should go forward where "the privileged material is tangential to and thus clearly segregable from litigation of the parties' claims and valid defenses."  (*Id.* at 32.)  Given the representations by both Plaintiffs and Defendants, it should be clear that no party needs to introduce state secrets into this case.  By definition, that should mean that any state secrets are tangential and segregable.  Now that the Court is aware of the Government's concern, the Court also can take appropriate steps to ensure the case does not stray into state secrets territory, and any state secrets remain tangential and segregated from the trial. For example, where the Government or Court has concerns about evidence that may be introduced, that evidence could be previewed in sealed proceedings before it is introduced in a public trial.  The Court could then hear any objections on whatever terms it deems appropriate, even *ex parte* if necessary.

## III.   THE COURT CAN FASHION AN APPROPRIATE REMEDY.

The parties have agreed that this case can be pursued without disclosure of state secrets. If the Government has a real concern despite these assurances, it has to disclose more to

9

overcome the normal obstacles to *ex parte* proceedings and seek the draconian remedy of dismissal.  If there is some remote chance that continuing the case without state secrets or requiring more disclosure is still a problem, there is still another way to proceed.

Plaintiffs have posited that, even if the loss of state secrets evidence harmed Defendants' ability to make their case, the Court should place the burden of litigating without that evidence upon them.  (Pls' Br. at 21-22.)  It would be inequitable to allow Defendants to defame Plaintiffs with what might be protected as state secrets and then preclude Plaintiffs from vindicating themselves based on the same state secrets, particularly if Defendants engaged in inequitable conduct with respect to such state secrets.  Given that Defendants do not appear hampered in any way by litigating without state secrets, this issue may be moot.

Plaintiffs also suggested that wherever the Court strikes the balance as to who should suffer for the inability to introduce state secrets with respect to prior claims, that burden should fall on Defendants going forward.  (*Id.* at 22-24.)  The reason for that is, even if the Court were to excuse Defendants' prior defamation because the course of this litigation could not have then been predicted, it is known now and the Court should not grant Defendants a continued license to defame.  This remedy would mean only that Defendants would be required to defend any future defamation claims, without relying on any state secrets.  Defendants' unsolicited statements making allegations of wrongdoing against Plaintiffs at the last hearing and their using recent filings to do the same thing prove the inequity of allowing Defendants to proceed with name and shame campaigns without ever being held accountable for the things they allege.

Nevertheless, Defendants mistakenly claim "Plaintiffs want the Court to bar UANI from saying anything about Restis going forward," and the proposed remedy "would have the same effect as a prior restraint."  (Defs' Br. at 20, 14.)  That is not true.  Plaintiffs do not seek to

muzzle Defendants or prevent them from speaking – they can say what they like, wherever they like, subject only to the normal "chill" provided by remedies for unprotected speech. *See, e.g.*, *Nebraska Press Ass'n. v. Stuart*, 427 U.S. 539, 559 (1976) (distinguishing constitutionally valid sanctions for improper speech, including defamation claims, from unconstitutional prior restraints designed to prevent speech before words are ever uttered). The remedy proposed by Plaintiffs is that the ordinary process be followed – if you defame someone you must be prepared to defend yourself in a defamation action. The remedy Plaintiffs seek would mean Defendants would have to defend what they say, even if their ability to do so would be hampered by not relying on state secrets. If, as their pleading suggests, they make their allegations against Plaintiffs or anyone else without resort to state secrets, they should have no complaint or concerns about Plaintiffs' suggestion. If, on the other hand, they use state secrets in the future, they have to understand that they must defend themselves without the benefit of those state secrets or the Government trying to protect that information by asserting their privilege to shield what Defendants have used as a sword. The Government cannot have any real issue with this remedy either. It can protect its state secrets carefully by not disclosing them to Defendants or be assured that, if they do, those secrets will not be exposed if Defendants abuse them because Defendants will not be able to rely on them in litigation.[3]

---

[3]    Defendants incorrectly characterize Plaintiffs' request for this court to hear future defamation claims between Restis and UANI as a request for "ancillary" jurisdiction, which they claim would be impermissible post-dismissal. (Defs' Br. at 10, 15 & n.9.)  Rather, Plaintiffs request is for either (1) this Court to stay the existing case and grant Plaintiffs leave to amend the Complaint should Defendants make additional defamatory statements (while making clear that it is Defendants' burden to prove the truth of their allegations without relying on states secrets) or (2) at the very least, for new defamation claims brought by Plaintiffs against Defendants to be heard by this Court as a related case pursuant to Local Rule 13(b)(2).

## CONCLUSION

Now that it is clear that neither party needs to rely upon state secrets in litigating the case, Plaintiffs request that the Court permit the case to proceed without state secrets evidence.  If state secrets are potentially relevant to the case, the Government and Defendants should be required to make adequate disclosures so that the validity and scope of any state secrets can be determined. Doing so will assist the Court in taking any steps necessary to prevent state secrets from being disclosed, while permitting justice to be done in this case following a full adjudication on the merits.

Dated:  December 5, 2014

Respectfully submitted,

CHADBOURNE & PARKE LLP

By:  _/s/ Abbe David Lowell_

| | |
|---|---|
| Benjamin D. Bleiberg | Abbe David Lowell |
| Serine Consolino | Michael Bhargava |
| 1301 Avenue of the Americas | Christopher Man |
| New York, NY 10019 | Jeremy Siegel |
| (212) 408-5100 | 1200 New Hampshire Avenue, N.W. |
| bbleiberg@chadbourne.com | Washington, DC 20036 |
| sconsolino@chadbourne.com | (202) 974-5600 |
| | adlowell@chadbourne.com |
| *Counsel for Plaintiffs Victor Restis and* | mbhargava@chadbourne.com |
| *Enterprises Shipping and Trading S.A.* | cman@chadbourne.com |
| | jsiegel@chadbourne.com |