UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

VICTOR RESTIS and ENTERPRISES SHIPPING AND          :
TRADING S.A.,                                        :
                                                     :          **OPINION AND ORDER**
                    Plaintiffs,                      :
                                                     :          13 Civ. 5032 (ER)
            v.                                        :
                                                     :
AMERICAN COALITION AGAINST NUCLEAR IRAN, :
INC. a/k/a UNITED AGAINST NUCLEAR IRAN,               :
MARK D. WALLACE, DAVID IBSEN, NATHAN                 :
CARLETON, DANIEL ROTH, MARTIN HOUSE,                 :
MATAN SHAMIR, MOLLY LUKASH, LARA PHAM,               :
and DOES 1-10,                                        :
                                                     :
                    Defendants.                       :
---------------------------------------------------------------------:
                                                     :
UNITED STATES OF AMERICA,                             :
                                                     :
                    Intervenor.                       :
------------------------------------------------------------------------x

Ramos, D.J.:

        This is a defamation action concerning accusations that Victor Restis and Enterprises

Shipping and Trading S.A. (collectively, "Plaintiffs") have engaged in prohibited business

transactions with Iran.  Plaintiffs bring this action against American Coalition Against Nuclear

Iran Inc., a/k/a United Against Nuclear Iran ("UANI"), and certain of its officers and employees

(collectively, "Defendants"), alleging defamation as a result of UANI's "name and shame"

campaign to destroy Plaintiffs' reputations.[1]  Pending before the Court are the Government's

---

[1] By Opinion and Order dated September 30, 2014, the Court granted in part and denied in part Defendants' motion
to dismiss the Second Amended Complaint.  Doc. 267.  Therein, the Court granted Defendants' motion to dismiss
Plaintiffs' claims for tortious interference with prospective economic advantage, tortious interference with contract,
intentional infliction of emotional distress, and *prima facie* tort, and denied Defendants' motion to dismiss the
defamation claim.  The facts and procedural history of this case are discussed in the Opinion and Order, familiarity
with which is presumed.

motion to dismiss the Second Amended Complaint ("SAC") in its entirety on the basis of the state secrets privilege and Plaintiffs' motion to compel the Government and Defendants to provide additional information relating to the assertion of the privilege.[2]  For the reasons discussed below, Plaintiffs' motion to compel is DENIED, and the Government's motion to dismiss is GRANTED.

## I.   Background

Plaintiffs allege that UANI, a not-for-profit corporation that seeks to prevent Iran from obtaining nuclear weapons, engages in private sanctions campaigns and legislative initiatives focused on ending corporate support for the Iranian regime.  SAC ¶ 25.  According to the SAC, UANI launched a "Shipping Campaign" to target, *inter alia*, international cargo shippers in order to ensure that Iran's shipping and port sectors were isolated from international markets.  *Id.* ¶ 39.  In particular, in March 2013, UANI called on United States port authorities to deny docking privileges to any shipping company that continues to do business with Iran and pressured international shipping companies to pull out of Iran.  *Id.*

Plaintiff Victor Restis, a citizen and resident of Greece, is an entrepreneur in the shipping industry.  *Id.* ¶ 23.  Plaintiff Enterprises Shipping and Trading S.A. is an independent off-shore shipping company and the flagship company of Mr. Restis' family's shipping businesses.  *Id.* ¶ 24.

According to the SAC, UANI initiated a "name and shame" campaign against Plaintiffs on May 13, 2013, by sending a public letter to Mr. Restis regarding, *inter alia*, their purported involvement in the illegal exportation of Iranian oil in violation of international sanctions.  *Id.* ¶

---

[2] The following organizations have submitted a brief in support of Plaintiffs' motion to compel as *amici curiae*:  the American Civil Liberties Union Foundation; the Brennan Center for Justice; the Center for Constitutional Rights; the Constitution Project; the Electronic Frontier Foundation; and the Sunlight Foundation.  *See* Doc. 294.

40.  Plaintiffs allege that UANI continued its "name and shame" campaign against them in May 2013, July 2013, and February 2014, through a series of press releases and postings on social media and on UANI's website.  *Id.* ¶¶ 44-54, 82-106.  Plaintiffs seek compensatory and punitive damages, as well as an order requiring the removal of the allegedly defamatory postings from UANI's website and Facebook page.

Plaintiffs' original complaint was filed on July 19, 2013.  Doc. 1.  On December 11, 2013, Plaintiffs filed the Amended Complaint.  Doc. 34.  Then, on May 13, 2014, Plaintiffs moved for leave to file a Second Amended Complaint.  Doc. 146.  By Opinion and Order dated September 30, 2014, the Court granted Plaintiffs' request for leave to amend and granted in part and denied in part Defendants' motion to dismiss the Second Amended Complaint.  Doc. 266, 267.[3]

On September 12, 2014, the Government filed a motion, *inter alia*, to intervene in the instant action on the basis of the state secrets privilege.  Doc. 257.  At a conference held on October 8, 2014, counsel for Plaintiffs and Defendants indicated that they did not object to the Government's motion to intervene.  Accordingly, on October 9, 2014, the Court entered an order granting the Government's motion.  Doc. 272.  The Government has asserted the state secrets privilege and contends that application of the privilege requires the dismissal of the instant action.  The Government has submitted classified declarations and documents in support of its assertion of the privilege *ex parte* for the Court's *in camera* review.

---

[3] On October 17, 2014, Plaintiffs filed a revised Second Amended Complaint, which omitted the claims dismissed by the Court.  Doc. 285.

II.    **Discussion**

a.  **The State Secrets Privilege**

The state secrets privilege is a common law evidentiary rule that allows the government

to withhold information from discovery when disclosure would be inimical to national security.

*Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 546 (2d Cir. 1991).  In *United States v.*

*Reynolds*, 345 U.S. 1 (1953), the Supreme Court "set forth various 'principles which control the

application of the privilege'" and established the procedure by which federal courts review the

government's invocation of the privilege.  *Doe v. C.I.A.*, 576 F.3d 95, 102 (2d Cir. 2009)

(quoting *id.* at 7).  First, the Court made clear that the privilege belongs to the government and

must be asserted by it; it can neither be claimed nor waived by a private party.  *Reynolds*, 345

U.S. at 7.  Second, the privilege "is not to be lightly invoked."  *Id.*  "'[T]he head of the

department which has control over the matter' must assert it only 'after [his or her] personal

consideration.'"  *Doe*, 576 F.3d at 102 (quoting *id.* at 8).  Third, the district court must determine

whether the circumstances are appropriate for the claim of privilege, with the caveat that it must

do so "without forcing a disclosure of the very thing the privilege is designed to protect."

*Reynolds*, 345 U.S. at 8.  The Court concluded in *Reynolds* that the district court must be

satisfied from all the circumstances of the case that there is a reasonable danger that compulsion

of the evidence will expose military matters which, in the interest of national security, should not

be divulged.  *Id.* at 10.[4]  The Court also stated that it would "not go so far as to say that the court

may automatically require a complete disclosure to the judge before the claim of privilege will

---

[4] Despite the language used in *Reynolds*, the state secrets privilege is not limited to strictly "military matters."  *See, e.g.*, *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983) ("The various harms, against which protection is sought by invocation of the privilege, include impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments." (footnotes omitted)), *cert. denied*, 465 U.S. 1038 (1984).

be accepted in any [state secrets] case." *Id.*  Instead, when it is possible to satisfy the court from all the circumstances of the case that the assertion of the privilege is appropriate, "the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, *even by the judge alone*, in chambers." *Id.* (emphasis added).[5]

The leading Second Circuit cases on the state secrets privilege are *Zuckerbraun* and *Doe*. In *Zuckerbraun*, the court affirmed the district court's dismissal of a wrongful death action against the manufacturers of a missile defense system that allegedly failed to repel a missile attack on a United States Navy frigate.  935 F.2d at 545.  The Second Circuit concluded that the Government properly invoked the state secrets privilege and thereby effectively prevented the plaintiff from establishing a *prima facie* case because the factual questions concerning liability could not be resolved without access to classified information regarding the system's design and manufacture.  *Id.* at 545, 547.  In reaching this conclusion, the court noted that although the privilege is not to be lightly invoked, the district court "must accord the 'utmost deference' to the executive's determination of the impact of disclosure on military or diplomatic security." *Id.* at 547 (quoting *Halkin v. Helms*, 598 F.2d 1, 9 (D.C. Cir. 1978)).  Indeed, even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake.  *Id.* (quoting *Reynolds*, 345 U.S. at 11).

In *Doe*, the Second Circuit considered the government's assertion of the state secrets privilege in an action brought by the family of a former covert-status Central Intelligence Agency ("CIA") employee relating to the former employee's termination.  576 F.3d at 97.  The district court dismissed the action based on its *ex parte*, *in camera* review of an un-redacted

---

[5] However, as the Second Circuit recognized in *Doe*, "at the other extreme, [the district court] may not undertake an insufficient investigation of the assertion to satisfy itself that actual military secrets are at stake and the danger of their disclosure is reasonably likely."  576 F.3d at 104 (citing *Reynolds*, 345 U.S. at 10).

complaint and a classified declaration by the then-director of the CIA. *Id.* The Second Circuit upheld the decision, holding that the Government did not unconstitutionally violate the plaintiffs' right of access to the courts by invoking the state secrets privilege. *Id.* at 106.[6] The court found that the proceedings at issue in *Doe* "were held *ex parte* and *in camera* for good and sufficient reason": "to ensure that legitimate state secrets were not lost in the process." *Id.* at 108.[7] Significantly, the Second Circuit affirmed the district court's decision to deny plaintiffs' counsel access to the un-redacted classified version of the complaint counsel himself had drafted.[8]

---

[6] In *Doe*, the plaintiffs did not dispute the procedural sufficiency of the Government's invocation of the privilege, proffer any arguments as to why the privilege should not apply, or challenge the Government's assertion that the case could not be litigated if the claim of privilege was upheld. *Doe v. C.I.A.*, No. 05 Civ. 7939 (LTS), 2007 WL 30099, at *2 (S.D.N.Y. Jan. 4, 2007), *aff'd*, 576 F.3d 95 (2d Cir. 2009). Instead, the plaintiffs—who resided in an unidentified foreign country—complained that the Government had not facilitated their attorney-client communications concerning classified matters, and asserted that they had a right to submit classified material to the court in connection with the Government's claim of privilege, and that the privilege claim could not be ripe for adjudication in the absence of such a submission. *Id.*

[7] Consistent with the Second Circuit's decisions in *Zuckerbraun* and *Doe*, courts outside of this Circuit have repeatedly applied *Reynolds* to dismiss civil actions based on the Government's assertion of the state secrets privilege. *See, e.g., Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1092 (9th Cir. 2010) (en banc), *cert. denied*, 131 S. Ct. 2442 (2011) (affirming district court's dismissal of Alien Tort Statute action brought by foreign nationals allegedly subject to the CIA's extraordinary rendition program against corporation that allegedly provided flight planning and logistical support services for the program); *El-Masri v. United States*, 479 F.3d 296, 300 (4th Cir. 2007), *cert. denied*, 552 U.S. 947 (2007) (affirming dismissal of civil action against the former director of the CIA and other defendants relating to the extraordinary rendition program); *Sterling v. Tenet*, 416 F.3d 338, 341 (4th Cir. 2005), *cert. denied*, *Sterling v. Goss*, 546 U.S. 1093 (2006) (affirming dismissal of former covert agent's Title VII racial discrimination suit against the director of the CIA and ten unnamed CIA employees); *Trulock v. Lee*, 66 F. App'x 472, 473 (4th Cir. 2003) (per curiam) (affirming dismissal of former Department of Energy official's defamation action against other DOE officials involving statements about an investigation into the mishandling of sensitive nuclear weapons documents); *Bareford v. Gen. Dynamics Corp.*, 973 F.2d 1138, 1140 (5th Cir. 1992), *cert. denied*, 507 U.S. 1029 (1993) (affirming dismissal of manufacturing and design defect suit against manufacturer of a military weapons system that allegedly caused death and injury to sailors in missile attack); *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1237 (4th Cir. 1985) (affirming dismissal of defamation action brought against publisher of article accusing plaintiff scientist of espionage); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 281 (4th Cir. 1980) (en banc) (affirming dismissal of government contractor's wrongful interference with prospective contractual relations action against Department of the Navy employee); *Terkel v. AT & T Corp.*, 441 F. Supp. 2d 899, 901 (N.D. Ill. 2006) (dismissing action against telephone company based on alleged illegal disclosure of telephone records to the National Security Agency); *Tilden v. Tenet*, 140 F. Supp. 2d 623, 628 (E.D. Va. 2000) (dismissing CIA employee's gender discrimination action against the director of the CIA); *see also Clift v. United States*, 808 F. Supp. 101, 111 (D. Conn. 1991) (dismissing Invention Secrecy Act suit concerning the government's alleged use of plaintiff's patented cryptographic encoding technology).

[8] In *Doe*, the factual assertions in the publicly-filed version of the complaint were substantially redacted by the CIA as classified. 2007 WL 30099, at *1.

**b.   The Government's Assertion of the State Secrets Privilege**

The Court finds that the Government has properly invoked the state secrets privilege in this action.  The Government has made a formal assertion of the privilege by submitting a classified declaration by the head of the department which has control over the matter.[9]  It is evident to the Court that the declarant asserted the state secrets privilege after careful personal consideration of the matter.  The classified declaration describes in great detail the information subject to the state secrets privilege and explains how disclosure of that information could reasonably result in harm to national security.  The Court has also held two *ex parte*, *in camera* meetings with the Government prior to its assertion of the privilege, during which the information as to which the privilege was being asserted was initially disclosed and discussed.  During these meetings, Government attorneys also responded to numerous questions put to them by the Court concerning the substance of the information, the reasons the information constituted state secrets, and the harm to national security if the information were disclosed.  Having carefully reviewed the classified declarations and documents submitted by the Government *ex parte*, and being cognizant of a district court's obligation to grant "utmost deference" to the executive's determination of the likely import of disclosure of the information on military or diplomatic security, the Court is satisfied that there is a reasonable danger that disclosure of the facts underlying the Government's assertion would in fact jeopardize national security.  The Court therefore upholds the Government's assertion of the state secrets privilege.

**c.   Plaintiffs' Motion to Compel**

Plaintiffs contend that the Government's assertion of the state secrets privilege in this action is unprecedented because, unlike every other state secrets case, this case is a dispute

---

[9] The Government has asserted that disclosing even the identity of the agency involved creates an unwarranted risk of exposing the information it seeks to protect.  *See* Govt. Opp. Mem. L. 10.

between private parties with no apparent connection to the Government or to traditionally protected classified information. Pls. Mem. L. 1. According to Plaintiffs and *Amici*, the Government should not be permitted to rely solely on *ex parte* submissions for its assertion of the privilege. *Id.* at 7. Instead, they argue that the Court should order the Government to make "much greater" public disclosure to ensure maximum adherence to the adversarial system, or grant Plaintiffs' counsel access to the Government's classified declarations, subject to appropriate clearances. *Id.* at 7, 11.[10] Plaintiffs alternatively suggest that this case could be litigated in an *in camera* trial. *Id.* at 15.

The Government, however, argues that public disclosure in state secrets cases concerning the nature of the privilege should be made only to the extent, if at all, practicable under the circumstances without risking disclosure of the information to be protected. Govt. Opp. Mem. L. 1. Accordingly, given the nature of the state secrets at issue here, the Government contends that no information can safely be disclosed on the public record, and that the Court cannot and should not grant access to that information to Plaintiffs' counsel.[11] *Id.* at 2. Finally, the Government asserts that the need to prevent a significant risk of harm to national security requires dismissal here. *Id.*[12]

---

[10] According to Plaintiffs, no controlling authority in the Second Circuit or Supreme Court categorically bars granting to properly cleared counsel access to classified information to assist the court in its analysis of the state secrets privilege. Pls. Mem. L. 14-15.

[11] At the conference held on October 8, 2014, the Government advised that while counsel may be granted clearance to review classified documents in Classified Information Procedures Act ("CIPA") cases, a similar procedure does not exist in state secrets cases. Oct. 8, 2014 Conf. Tr. 30:6-9. After the Court questioned whether this prohibition was a matter of policy or statute, the Government stated that "[t]he answer is it's not done in these types of civil cases. It's not done under justification of the state secrets case law as a matter of common law." *Id.* 30:22-24.

[12] Defendants contend that they have not seen the Government's *ex parte* submission and do not know the extent of the information over which the Government has claimed privilege. Defs. Opp. Mem. L. 21. Defendants also oppose any further disclosure of the Government's *ex parte* submission to Plaintiffs, but argue that any such disclosure should be equally provided to Plaintiffs and Defendants. *Id.* at 22, 23 n.13.

The nature of the information here requires that counsel not be granted access.  In *Doe*, the court stated that *even if the plaintiffs knew some of the information subject to the Government's assertion*, "permitting the plaintiffs, through counsel, to use the information to oppose the assertion of privilege may present a danger of '[i]nadvertent disclosure,'" including through over-disclosure to the district court *in camera*.  *Doe*, 576 F.3d at 106 (quoting *Sterling*, 416 F.3d at 348).  Accordingly, the Second Circuit determined that the district court did not have an obligation to increase the risk of disclosure by permitting the plaintiffs to discuss or file information asserted to be a state secret by the government.  *Id.*  Significantly, the court concluded that the district court did not violate the plaintiffs' constitutional rights by refusing to require that the CIA facilitate their use of purportedly privileged information in order to challenge the Government's assertion of privilege.  *Id.* at 108.

Courts outside the Second Circuit have also repeatedly denied requests for cleared counsel's review of the Government's classified submissions in state secrets cases.  In *El-Masri*, for example, the Fourth Circuit stated that such a proposal was "expressly foreclosed by *Reynolds*."  *El-Masri*, 479 F.3d at 311.  The court noted that the Supreme Court's caution with respect to even the judge's examination of the evidence alone in chambers compelled this conclusion.  *Id.*

In *Halkin*, the D.C. Circuit upheld a claim of privilege by the Secretary of Defense and held that the National Security Agency was not required to disclose in discovery whether it had intercepted any of the plaintiff Vietnam War protestors' communications.  598 F.2d at 1.  There, the court rejected the plaintiffs' proposal of allowing their counsel to review classified affidavits and hear testimony *in camera*.  *Id.* at 7.  The court noted the importance of the privilege and observed that "[h]owever helpful to the court the informed advocacy of the plaintiffs' counsel

may be, we must be especially careful not to order any dissemination of information asserted to be privileged state secrets." *Id.*; *cf. Jabara v. Kelley*, 75 F.R.D. 475, 486-87 (E.D. Mich. 1977) ("In the case of claims of military or state secrets' privilege [as opposed to claims of executive privilege], the superiority of well-informed advocacy becomes less justifiable in view of the substantial risk of unauthorized disclosure of privileged information."); *see also Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1369 (4th Cir. 1975) ("It is not to slight judges, lawyers or anyone else to suggest that any . . . disclosure [of sensitive information in a classified document] carries with it serious risk that highly sensitive information may be compromised."), *cert. denied*, 421 U.S. 992 (1975).  The court in *Halkin* went on to note that protective orders cannot prevent inadvertent disclosure or reduce any resultant damage to national security.  598 F.2d at 7.

Similarly, in *Ellsberg*, the court upheld the Government's assertion of privilege even though the affidavits and supporting exhibits submitted by the director of the CIA and the Secretary of Defense were seen only by the trial judge.  709 F.2d at 60.  The D.C. Circuit stated that it could summarily reject plaintiffs' request for cleared counsel's review of the classified material because it was well settled that a district court should not permit counsel in state secrets cases to participate in the *in camera* examination of putatively privileged material.  *Id.* at 61. The court observed that the rationale for this rule is that the nation's security is "too important to be entrusted to the good faith and circumspection of a litigant's lawyer (whose sense of obligation to his client is likely to strain his fidelity to his pledge of secrecy) or to the coercive power of a protective order."  *Id.*; *see also Terkel*, 441 F. Supp. 2d at 917 (rejecting plaintiffs' proposal for the maintenance of the action through the participation of cleared counsel); *Tilden*, 140 F. Supp. 2d at 626 (noting that courts have routinely denied attorneys' requests to review classified submissions *in camera* in state secrets cases even where they have security

10

clearances); *cf. Sterling*, 416 F.3d at 348 (rejecting plaintiff's request for special procedures that would allow employment discrimination suit to proceed because such special accommodations would, at best, give rise to added opportunity for leaked information, and at worst, allow such information to become public, placing covert agents and intelligence sources at grave personal risk).

In sum, then, neither the circumstances of this action nor case law supports Plaintiffs' counsel's request to be granted access to the Government's classified declarations here.[13] Plaintiffs' motion to compel the disclosure of additional information relating to the assertion of the state secrets privilege is therefore DENIED.[14]

---

[13] *Amici*'s reliance on *Loral Corp. v. McDonnell Douglas Corporation*, 558 F.2d 1130, 1133 (2d Cir. 1977), is unavailing. There, the subcontractor designer of classified equipment for the Air Force brought suit against the prime contractor. *Id.* at 1131. The Second Circuit observed that a jury trial was inappropriate based on the large amount of confidential material that must be submitted to the trier of fact, and noted that the Department of Defense had cleared or would clear the judge and magistrate assigned to the case, the lawyers and any supporting personnel whose access to the material is necessary. *Id.* at 1132. *Loral* is easily distinguishable based on the fact that it was not a state secrets case. Moreover, clearance was provided there by the Department of Defense, and the classified material was known to the parties before the litigation. *Id.* at 1131.

Relatedly, Plaintiffs rely on *N.S.N. International Industry v. E.I. Dupont de Nemours & Co.*, 140 F.R.D. 275 (S.D.N.Y. 1991), for the proposition that the Government has cleared counsel and experts in civil state secrets cases in this District. Pls. Mem. L. 12. There, however, *before* the Government asserted the privilege, the plaintiff retained an expert with a security clearance who was permitted to examine documents withheld by the defendant and determine which classified documents were relevant to the plaintiff's case. *N.S.N. Int'l Indus.*, 140 F.R.D. at 276. *N.S.N.* does not support Plaintiffs' motion because the court upheld the Government's subsequent assertion of privilege. *Id.*

Plaintiffs further rely on, *inter alia*, CIPA and Guantanamo *habeas* cases where clearances have been provided to counsel and claim that there is no reason such procedures cannot be utilized here. Pls. Reply. Mem. L. 6. The Court, however, is persuaded by the clear line of cases denying such requests where the Government has asserted the state secrets privilege.

[14] In *Doe*, the Second Circuit stated in a footnote that there may be cases in which a district judge would act within his or her permissible discretion by permitting plaintiff's counsel to take a greater role in the court's state secrets deliberations where, in the circumstances, doing so would not endanger the state secrets. 576 F.3d at 106 n.8. In light of the case law discussed above, as well as the state secrets at risk of disclosure here, the Court is not convinced that this is such a case.

11

**d. The Government's Motion to Dismiss**

Once properly invoked, the effect of the state secrets privilege is to exclude the evidence from the case. *Zuckerbraun*, 935 F.2d at 546. The court must then address the effect of the invocation of the privilege on the plaintiff's claim or defendant's defense. *Doe*, 576 F.3d at 104 (quoting *id.* at 547). In some cases, the effect of the invocation of the privilege "may be so drastic as to require dismissal." *Zuckerbraun*, 935 F.2d at 547. Indeed, courts have held that the privilege warrants dismissal in three circumstances. First, if proper assertion of the privilege precludes access to evidence necessary for the plaintiff to state a *prima facie* claim. *Id.*; *see also Farnsworth Cannon*, 635 F.2d at 281. Second, dismissal is proper if the court determines that the privilege so hampers the defendant in establishing a valid defense that the trier is likely to reach an erroneous conclusion. *Zuckerbraun*, 935 F.2d at 547; *see also, e.g.*, *El-Masri*, 479 F.3d at 309 (observing that even if the plaintiff were able to make out a *prima facie* case despite the unavailability of state secrets, the defendants could not properly defend themselves without using privileged evidence). Finally, courts have ordered dismissal where the claims and defenses might theoretically be established without relying on privileged evidence but "it may be impossible to proceed with the litigation because—privileged evidence being inseparable from nonprivileged information that will be necessary to the claims or defenses—litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets." *Mohamed*, 614 F.3d at 1088; *see also El-Masri*, 479 F.3d at 308 (stating that an action must be dismissed if it is clear that the privileged information is so central to the litigation that any attempt to proceed will threaten its disclosure).

Having carefully reviewed *in camera* the classified declarations and documents submitted by the Government *ex parte*, the Court concludes that dismissal is appropriate here. "Under New

12

York law, the elements of a defamation claim are 'a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute defamation per se." *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (1st Dep't 1999)) (internal quotation marks omitted).  Even if Plaintiffs could meet the first circumstance in *Zuckerbraun* and—as they claim—make their case without the excluded evidence, Pls. Reply Mem. L. 7, the Court is convinced that further litigation of this action would impose an unjustifiable risk of disclosing state secrets.  As the Ninth Circuit recognized in *Mohamed*, adversarial litigation, including pretrial discovery, is inherently complex and unpredictable.  614 F.3d at 1089.  Though the Court is, of course, unaware of the privileged information that was at issue in that case, the challenge to "wall off isolated secrets from disclosure" would be similarly present here because "the relevant secrets are difficult or impossible to isolate and even efforts to define a boundary between privileged and unprivileged evidence would risk disclosure by implication."  *Id.*; *cf. Farnsworth Cannon*, 635 F.2d at 281 (stating that if the action were not dismissed, the plaintiff and its lawyers, in an attempt to make out a *prima facie* case during trial, would have every incentive to probe as close to the core secrets as the trial judge would permit).

   That challenge would be similarly present even under Plaintiffs' alternative proposal of an *in camera* trial.  Plaintiffs cite *Halpern v. United States*, 258 F.2d 36 (2d Cir. 1958), for the proposition that the Second Circuit has explicitly endorsed *in camera* trials when state secrets are at issue.  Pls. Mem. L. 15.  There, an inventor brought suit to recover compensation for alleged damages resulting from an order of secrecy involving his application for a patent pursuant to the Invention Secrecy Act.  *Halpern*, 258 F.2d at 37.  The Second Circuit observed that *under the circumstances of that case*, it was not convinced that a trial *in camera* was either undesirable or

unfeasible.  *Id.* at 43.  Accordingly, the court held that an *in camera* trial was permissible, if, in

the judgment of the district court, such a trial could be carried out without substantial risk that

secret information will be publicly divulged.  *Id.* at 44.  *Halpern* is inapposite, however.  First, as

the Government recognizes, the Second Circuit's holding was dependent on the nature of the

Invention Secrecy Act.  Indeed, the court observed that that statute "must be viewed as waiving

the [state secrets] privilege," but that this waiver would be dependent upon the availability and

adequacy of other methods of protecting the overriding interest of national security during the

course of a trial.  *Id.* at 43.  Second, the court distinguished *Reynolds* on the basis that the

appellant in *Halpern* was "not seeking to obtain secret information which he does not possess"—

the secret information was already known to him through his role as the inventor.  *Id.* at 44.

*Halpern* therefore provides no support to Plaintiffs.

Moreover, as the Government notes, the Second Circuit expressly declined to follow

*Halpern* in *Clift v. United States*, 597 F.2d 826, 829 (2d Cir. 1979).  In that case, which also

involved the Invention Secrecy Act, the plaintiff sought damages from the Government for its

use of his invention, a cryptographic system.  *Id.* at 827.  The plaintiff claimed that the district

court, which denied his motion to compel production of requested documents and dismissed the

case, should have instead directed the relevant documents be produced *in camera*, an argument

he claimed was supported by *Halpern*.  *Id.* at 829.  The Second Circuit affirmed the district

court's denial of discovery on the basis that *in camera* discovery would "do no good" unless any

favorable results could be communicated to the appellant, who no longer held security

clearances.  *Id.*  The court vacated the dismissal and remanded the case based on the fact that the

Government had not moved for such relief, and observed that future developments might make

relevant information available to litigate the case.  *Id.* at 830.  Twelve years later, because that

14

information was still publicly unavailable, the district court upheld the Government's assertion of privilege and dismissed the case. *Clift*, 808 F. Supp. at 111.

In *Sterling*, the Fourth Circuit observed that, "[t]o be sure, dismissal is appropriate '[o]nly when no amount of effort and care on the part of the court and the parties will safeguard privileged material.'" 416 F.3d at 348 (quoting *Fitzgerald*, 776 F.2d at 1244). The court noted, however, that dismissal is the proper remedy where the very question on which a case turns is itself a state secret, or the circumstances make clear that sensitive military secrets will be so central to the subject matter of the litigation that any attempt to proceed will threaten disclosure of the privileged matters. *Id.* (quoting *DTM Research, LLC v. AT & T Corp.*, 245 F.3d 327, 334 (4th Cir. 2001)). Because the litigation in *Sterling* centered around a covert agent's assignments, evaluations, and colleagues, the Fourth Circuit found that action to decidedly meet that test. *Id.*; *see also Fitzgerald*, 776 F.2d at 1244 (dismissing libel action because it fell within the "narrow category" of cases that must be dismissed based on the "centrality of the privileged material to the very question upon which a decision must be rendered"). Here too, the Court is satisfied that allowing the litigation to proceed would inevitably risk the disclosure of state secrets.

Additionally, at the conference held on October 8, 2014, the Court specifically requested that the parties brief whether the Court could grant Plaintiffs injunctive relief in the event it determines that the state secrets privilege applies. Doc. 273. Plaintiffs, however, have made clear that they do not seek such a remedy. Pls. Mem. L. 24 n.11. According to them, Defendants do not need to be enjoined from speaking, but should instead be subject to the "defamation laws that apply to everyone." *Id.* Defendants, for their part, claim that such a remedy would be an impermissible prior restraint on their First Amendment right to make the public aware of Plaintiffs' alleged business activities in Iran. Defs. Opp. Mem. L. 13. And both Defendants and

15

the Government correctly note that dismissal on state secrets grounds is *not* a disposition on the merits that would permit injunctive relief as if liability were found. *Id.* at 10; Govt. Opp. Mem. L. 34. For this same reason—that this disposition is not a determination on the merits—the Court is unwilling to grant Plaintiffs' request to either stay the instant action and grant them leave to amend the SAC should Defendants make further defamatory statements, or retain jurisdiction over any future defamatory actions brought by Plaintiffs as a related case. *See* Pls. Reply Mem. L. 11 n.3.

Plaintiffs also object that "[t]his is a private defamation action between purely private parties, with no obvious connection to the Government whatsoever." *Id.* at 9. While the outcome here is admittedly rare, it is not as unique as Plaintiffs claim.[15] For example, *Terex Corp., et al. v. Fuisz et al.*, No. 92-0941 (D.D.C.)—also a defamation action between private parties—related to statements accusing the plaintiff corporation of illegally supplying military equipment to Iraq during the Persian Gulf War. In that case, the Government moved for a protective order after one of the defendants refused to answer several questions during a deposition which he believed required the disclosure of classified national security information. *See* Declaration of Anthony J. Coppolino ("Coppolino Decl."), Ex. 1. In *Terex*, as here, the Government submitted its supporting declaration *ex parte* and *in camera* and did not publicly disclose which agency asserted the privilege. Govt. Opp. Mem. L. 8. The court upheld the

---

[15] Indeed, several of the above-cited cases—including *Zuckerbraun*, *Bareford*, *Mohamed*, and *Fitzgerald*—were dismissed on the basis of state secrets privilege even though they too were civil actions involving private parties. Plaintiffs distinguish these cases on the grounds that (i) the private parties there were closely related to the Government either as employees or contractors, and (ii) the presence of classified information was obvious from the claims alleged. Such distinctions, while accurate, neither compel the disclosure of additional information relating to the assertion of privilege nor save the instant action from dismissal.

Government's assertion of the privilege and granted its motion for a protective order.[16]  *See*

Coppolino Decl., Ex. 2.

## III.     Conclusion

The Court recognizes that dismissal is a "harsh sanction."  *Bareford*, 973 F.2d at 1144;

*see also Clift*, 808 F. Supp. at 111 (dismissing action despite noting that it is a "draconian

result").  It is particularly so in this case because Plaintiffs not only do not get their day in court,

but cannot be told why.  However, dismissal is nonetheless appropriate.  Simply put, there is no

intermediate solution that would allow this litigation to proceed while also safeguarding the

secrets at issue.  *Cf. Bareford*, 973 F.2d at 1144 (noting that "the results are harsh in either

direction and the state secret doctrine finds the greater public good—ultimately the less harsh

remedy—to be dismissal"); *Trulock*, 66 F. App'x at 477 (stating that while the court did not take

the plaintiff's alleged reputational damage in defamation action lightly, "[i]n this instance, the

public interest in national security must take precedence over allowing [the plaintiff's] case to

proceed"); *see also El-Masri*, 479 F.3d at 313 (observing that dismissal in state secrets cases

occurs because the plaintiff's personal interest in pursuing his civil claim is subordinated to the

collective interest in national security).  In any event, while it may be that this case is rare

because it involves purely private litigants, it is the nature of the information at issue that guides

the state secrets analysis, not the nature or status of the litigants.

---

[16] Based on *Terex*, as well as the Government's offer to provide the Court with additional information *ex parte* and *in camera* regarding sealed cases that involved a state secrets privilege assertion, Govt. Opp. Mem. L. 8 n.4, Plaintiffs acknowledge that there is an "extremely rare" category of cases where no public disclosures can be made. Pls. Reply Mem. L. 3, 4.  Still, Plaintiffs contend that *Terex* nonetheless supports their arguments because the Government did disclose in that case who possessed the national security information and how it was obtained, and the plaintiff knew which of its questions would call for disclosure of that information.  *Id.* at 4 n.2.

For the reasons set forth above, Plaintiffs' motion to compel is DENIED, and the Government's motion to dismiss is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motions and close the case.  Doc. 257, 291.


It is SO ORDERED.

Dated:      March 23, 2015
            New York, New York

                                                    Edgardo Ramos, U.S.D.J.